THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

GREGORY ALLEN,

    Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF
CORRECTIONS,

    Defendant.

No. 3:23-cv-05746-BHS

**DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**NOTED FOR**: October 1, 2025

Without oral argument

## I.   INTRODUCTION

This matter arises from Plaintiff Gregory Allen's action against the Washington State Department of Corrections (DOC). Allen alleges that while he was incarcerated, DOC failed to accommodate his physical and mental disabilities in violation of the Americans with Disabilities Act (ADA). Dkt. 21. He also alleges that a former DOC Sergeant Jason Kaehler "utilized his position of authority" to "wrongfully deprive him of medical equipment for a protracted period of time" in violation of the Eighth Amendment. Dkt. 21 at ¶ 3.3. Allen thus brought claims under the ADA and 42 U.S.C. § 1983. Dkt. 21.[1]

Allen's ADA claims against DOC should be dismissed. Since Allen has been released, any claim for injunctive relief is moot. *See Aholelei v. Hawaii, Dept. of Pub. Safety*, 220 Fed. Appx. 670, 672 (9th

---

[1] Allen's original compliant included pendant state law claims for false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence. Dkt. 1-3. These claims were previously dismissed on the pleadings, leaving only Allen's ADA claim against DOC and his § 1983 claim against Sgt. Kaehler. Dkt. 9; Dkt. 13; Dkt. 40.

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 1
Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Cir. 2007) (quoting *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) in noting "[a]n inmate's release from prison while his claims are pending generally will moot any claim for injunctive relief").

To the extent Allen seeks damages[2] based on alleged ADA violations, his claim also fails. Title II of the ADA prohibits discrimination against qualified individuals with disabilities. *Pierce v. Cty. of Orange*, 761 F.Supp.2d 915, 945 (C.D. Cal. 2011) (citing 42 U.S.C. § 12132). But Allen identifies no service that DOC denied him, nor does he provide any facts showing that DOC intentionally discriminated against him on the basis of a disability. Because discriminatory intent is required to recover damages under the ADA, DOC is entitled to dismissal of Allen's ADA claim. *See Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) (quoting *Feguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998) in holding "compensatory damages are not available under Title II absent a showing of discriminatory intent").

Allen's § 1983 claim against Sgt. Kaehler should also be dismissed. Allen offers no evidence of deliberate indifference on the part of Sgt. Kaehler, so he fails to show that his constitutional rights were violated. Even if he had, Allen cites no clearly established law placing Sgt. Kaehler on notice that, by merely reporting his observations of Allen to a member of the prison medical staff, he would be violating Allen's well-established rights. Allen's § 1983 claim is therefore barred by qualified immunity.

## II.   ISSUES

**A.   Since He Has Now Been Released from Prison, Should Allen's Claims for Injunctive Relief be Dismissed as Moot?**

**B.   Should Allen's ADA Claim Be Dismissed Where He Provides No Evidence of Disparate Treatment or Intentional Discrimination on the Basis of Disability?**

**C.   Is Allen's § 1983 Claim Barred by Qualified Immunity Where He Neither Offers Evidence of Deliberate Indifference Resulting in a Constitutional Violation Nor Does He Cite to Any Clearly Established Law Supporting His Claim?**

---

[2] Allen's Amended Complaint purports to seek "punitive and exemplary" damages. Dkt. 21 at 8. Punitive damages, however, are categorically unavailable for alleged violations of Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189, 122 S. Ct. 2097, 153 L.Ed.2d 230 (2002). Accordingly, Allen is limited to seeking only compensatory damages on his ADA claim.

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 2**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

### III.     EVIDENCE RELIED UPON

This motion is based on the accompanying declarations of undersigned counsel, DOC records, the report and opinions of Dr. Mario Paparozzi, and the arguments and authorities cited herein.

### IV.     STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir. 1975). The moving party is entitled to summary judgment if the evidence permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). The party seeking summary judgment may show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law by showing there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). To determine if summary judgment is appropriate, courts consider whether a fact is material and whether a genuine dispute as to that fact is left to be resolved. Factual disputes that do not affect the outcome under governing law are not considered. *Id*. Where there is a complete failure of proof on an essential element of a non-moving party's case, all other facts are immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 324; *see also Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990).

Once the moving party has carried its burden, an opposing party must do more than simply show some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). As a result, "[n]o longer can it be

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 3**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). Genuine issues of material fact are not raised by conclusory or speculative allegations. *Lujan*, 497 U.S. at 871. The purpose of summary judgment is not to replace conclusory allegations in pleading form with conclusory allegations in an affidavit. *Id*. at 888; *Anderson*, 477 U.S. at 249.

## V.    FACTS

In 2000, Plaintiff Gregory Allen was sentenced to 240 months in prison under the Washington Offender Accountability Act (OAA). Throgmorton Decl. ¶ 2, Ex. A at 30.[3] Following his sentence, the longest period of time that Allen was able to successfully remain in the community was 19 months. Throgmorton Decl. ¶ 2, Ex. A at 30. He repeatedly violated the terms and conditions of his supervision, committed new crimes,[4] and was returned to prison. Throgmorton Decl. ¶ 2, Ex. A 30-31. While incarcerated at various times between 2000 and 2023, Allen accumulated 130 serious disciplinary infractions and was moved between prison facilities more than 500 times in an effort to find the best pathway to accommodate his defiant behavior. Throgmorton Decl. ¶ 2, Ex. A at 31.

### A.    DOC Considered and Denied Allen's Repeated Demands for Single Cell Housing.

Single cell assignment requests are reviewed by DOC's Single Cell Committee, which considers such requests at the facility and headquarters levels. Throgmorton Decl. ¶ 3, Ex. B at 37:21-38:13; 42:3-22. The Single Cell Committee is a multidisciplinary panel consisting of custody staff, medical and mental health providers, and ADA coordinators who consider single cell requests and make a recommendation.

---

[3] The facts surrounding Allen's criminal history and his decades-long incarceration with the Department of Corrections are so voluminous that they are provided to the Court in summary form through the report of Defendant's expert, Dr. Mario Paparozzi. *See* Fed. R. Evid. 1006(a) (providing for proof of voluminous materials via summary). The relevant portions of Dr. Paparozzi's report are highlighted for the Court's ease of reference.

[4] Allen's crimes included intimidating a judge, assaulting prison staff, theft, resisting arrest, and eluding police, among others. Throgmorton Decl. ¶ 2, Ex. A at 33; Throgmorton Decl. ¶ 9, Ex. H at 34:14-35:23.

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 4**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

Throgmorton Decl. ¶ 3, Ex. B at 38:15-39:7. The ultimate determination as to which inmates are assigned to single cell housing is made at the headquarters review level by the Senior Director for Comprehensive Case Management. Throgmorton Decl. ¶ 3, Ex. B at 71:13-17.

At Coyote Ridge Correctional Center (CRCC) in May 2010, Allen began refusing to occupy the same cell with other inmates. Throgmorton Decl. ¶ 2, Ex. A at 33. He was repeatedly infracted for refusing housing assignments and assigned to the Intensive Management Unit (IMU). Throgmorton Decl. ¶ 2, Ex. A at 33-34; 37-49. Nearly a year later, Allen alleged – without evidence – that he had been the victim of a prison rape at the Washington Corrections Center (WCC) during the early years of his incarceration. Throgmorton Decl. ¶ 2, Ex. A at 34-35. Because he refused to accept anything other than a single cell housing assignment in the prison general population – and because CRCC did not have general population single cells – Allen was infracted and assigned to the Intensive Management Unit (IMU), where he had a single cell but was on 23-hour per day lockdown. Throgmorton Decl. ¶ 2, Ex. A at 33-34.

After a transfer to Stafford Creek Corrections Center (SCCC), in November 2011, Allen submitted a letter requesting that he be transferred to the Twin Rivers Unit at the Monroe Correctional Complex (MCC) as a reasonable accommodation under the ADA. Throgmorton Decl. ¶ 2, Ex. A at 35. In December 2011, DOC declined, noting he did not qualify for the accommodation requested as there was no documentation supporting his request under the ADA. Throgmorton Decl. ¶ 2, Ex. A at 35. In January 2012, Allen was informed that he would have 60 days in which to find a suitable cellmate. Throgmorton Decl. ¶ 2, Ex. A at 36. In response, Allen continued to refuse any cell assignment other than a single cell, and he threatened to kill anyone with whom he was housed. Throgmorton Decl. ¶ 2, Ex. A at 36. Allen received an infraction for this threat. Throgmorton Decl. ¶ 2, Ex. A at 36.

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 5**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Over the next decade, Allen repeatedly demanded single cell assignment to accommodate his alleged mental health conditions, but his demands were consistently rejected by custody classification staff, facility superintendents, medical staff, mental health treatment providers, multidisciplinary teams, and facility ADA coordinators. Throgmorton Decl. ¶ 2, Ex. A at 38-49.

In August 2020, Allen's mental health providers recommended that he be assigned to a single cell. Throgmorton Decl. ¶ 4, Ex. C. Despite their recommendation, Allen's request for a single cell housing assignment was reviewed at the headquarters level and was again denied. Throgmorton Decl. ¶ 4, Ex. C. Following his February 2025 release from custody, Allen filed the instant action alleging DOC violated his rights under the ADA by failing to accommodate him with a single cell housing assignment.

**B.    Allen's Medical Provider Changed His HSR, Limiting His Possession of a Wheelchair.**

Allen also alleges that in December 2020, Sgt. Jason Kaehler was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. He claims Sgt. Kaehler "took steps to … cause [his] medical equipment requirements to be revised to remove his required leg brace and wheelchair" after he "observed [him] being able to walk short distances." Dkt. 21 at ¶ 2.13. Following this observation, Allen alleges Sgt. Kaehler "ran to a physician assistant located next to [his] cell and directed a change of his equipment needs … then walked into [his] cell laughing at [him] as he threw the 'revised' list of equipment at [Allen] and exited [Allen's] cell with his leg brace and wheelchair." Dkt. 21 at ¶ 2.14.

DOC records indicate that in August 2020, one of Allen's medical providers, Jennifer Meyers, PA, provided him with an HSR[5] restricting his standing time to 10 minutes and authorizing him to possess compression stockings and a wheelchair. Throgmorton Decl. ¶ 6, Ex. E. On December 30, 2020, however, PA Meyers directed a change in Allen's HSR by removing the physical restrictions and limiting Allen's

---

[5] "HSR" stands for Health Services Report, "a modality that medical uses with custody to help communicate, like, a durable medical appointment." Throgmorton Decl. ¶ 5, Ex. D at 27:13-17.

STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 6
Cause No.: 3:23-cv-05746-BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

possession and use of a wheelchair to long distances only. Throgmorton Decl. ¶ 7, Ex. F. PA Meyers testified that although she sometimes relied on the observations of other staff members in deciding what restrictions to place on an inmate's HSR, she exercises her own independent medical judgment in placing, removing, or modifying restrictions. Throgmorton Decl. ¶ 5, Ex. D at 33:6-12; 45:4-12; 52:17-53:5. This is consistent with DOC policy, under which medical equipment previously prescribed under an HSR may be removed only by order of a healthcare practitioner. Throgmorton Decl. ¶ 5, Ex. D at 65:17-21. PA Meyers also testified that HSRs change frequently, noting that "nothing on these HSRs are solidified. It's not a permanent decision by any means." Throgmorton Decl. ¶ 5, Ex. D at 45:4-12. As she put it, "[w]e're changing the medical equipment all the time." Throgmorton Decl. ¶ 5, Ex. D at 88:4-5.

Only medical staff can create or alter HSRs; custody staff have no such authority. Throgmorton Decl. ¶ 5, Ex. D at 29:12-17; 65:17-21; Throgmorton Decl. ¶ 8, Ex. G at 48:12-13; 77:13-19. Neither PA Meyers nor Sgt. Kaehler could recall ever having a conversation about Allen or his HSR. Throgmorton Decl. ¶ 5, Ex. D at 74:5-7; Throgmorton Decl. ¶ 8, Ex. G at 44:16-45:6; 48:1-4; 54:14-24; 79:16-23.

PA Meyers' office is in a different unit than the one in which Allen was housed. Throgmorton Decl. ¶ 5, Ex. D at 83:16-19. Allen admits that because he was locked in his cell, he never saw Sgt. Kaehler talk to PA Meyers, nor was he privy to any conversations between them. Throgmorton Decl. ¶ 7, Ex. H at 97:21-98:8. Nevertheless, based solely on the alleged hearsay statements of unidentified DOC staff members and his own idle speculation, Allen alleges PA Meyers changed his HSR at the direct request of Sgt. Kaehler. Throgmorton Decl. ¶ 7, Ex. H at 98:9-100:24.[6] He offers no admissible evidence whatsoever of the veracity of this allegation.

---

[6] The hearsay statements Allen purports to have received from unidentified DOC staff members are insufficient to defeat summary judgment, as they may not be considered in ruling upon the motion. *See* CR 56(e); *Diemert v. City of Seattle*, 776 F.Supp.3d 922, 935 (W.D. Wash. 2025) (citing *Scosche Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (Fed. Cir. 1997) in noting that hearsay evidence is "entitled to no weight" in ruling upon a motion for summary judgment).

STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 7
Cause No.: 3:23-cv-05746-BHS

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Allen cites no program or service he was denied due to his medical provider's decision to limit his wheelchair to long distances only, nor does he offer any evidence that PA Meyers decision to modify his HSR was motivated by discriminatory intent. He does not name PA Meyers as a defendant, he offers no testimony that her decision to modify his HSR to limit his use of the wheelchair to long distances was deliberately indifferent or fell below the standard of care for a reasonable medical provider, and he offers no evidence that Sgt. Kaehler's actions fell below the standard of care for a reasonable custody officer. He merely argues the removal of his wheelchair was wrongful and that Sgt. Kaehler bears responsibility for PA Meyers' medical decision.

## C.    Dr. Paparozzi's Report and Opinions.

The totality of Allen's extensive DOC records regarding all of the foregoing – comprising tens of thousands of pages – were reviewed by Dr. Mario Paparozzi, a renowned, nationwide criminologist with over half a century of experience and expertise. Based on his review of Allen's medical records, as well as his knowledge, experience, and training, Dr. Paparozzi concluded as follows:

1. DOC did not ignore Allen's claims that he qualified for reasonable accommodations under the Americans with Disabilities Act (ADA).
2. DOC frequently and appropriately evaluated Allen's housing assignment needs as well as [his] personal and ongoing desire to be housed in a general population single cell.
3. DOC's policies regarding inmate classification, cell assignment, and use of discipline in response to infractions were consistent with best practices in corrections. With regard to its treatment of Allen during his periods of incarceration, DOC was at all times fastidious about reviewing and assessing the totality of information presented during classification reviews, cell assignments, and issuance of disciplinary actions.
4. Throughout Allen's term of imprisonment, DOC complied with its own policies and national best practices regarding Allen's security and housing requirements.
5. DOC was vigilant in its attempts to assure that Allen received appropriate reviews, assessments, and housing assignments during his several terms of confinement.

Throgmorton Decl. ¶ 2, Ex. A at 31. Against these opinions, Allen offers no expert testimony at all – and no evidence of any kind – beyond his own uninformed, conclusory opinions to the contrary.

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 8
Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

## VI.   ARGUMENT

**A.   Allen Fails to Establish a Colorable Claim Under the ADA.**

**1.   Allen's Claim for Injunctive Relief is Moot.**

At the time he filed his original complaint in August 2023, Allen was in DOC custody. During the pendency of this action, however, he was released in February 2025. Throgmorton Decl. ¶ 9, Ex. H at 41:23-42:1. As a result, Allen's request for injunctive relief in the form of his assignment to a single cell is now moot. *See*, *e.g.*, *Alvarez v. Hill*, 667 F.3d 1061, 1064 (quoting *Dilley*, 64 F.3d at 1368 in holding that "[a]n inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies"); *Nelson v. Heiss*, 27 F.3d 891, 897 (9th Cir. 2001) (noting that "when a prisoner is moved from a prison, his action will usually become moot as to conditions at a particular facility").

Federal jurisdiction is limited to cases and controversies. *Pub. Util. Comm'n of State of Cal. v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). When there is "no reasonable expectation nor demonstrated probability that [an inmate] will again be subjected to the same prison conditions from which he seeks injunctive relief, the claim for injunctive relief should be dismissed as moot." *Flowers v. Ahern*, 650 F.Supp.2d 988 (N.D. Cal. 2009). Courts determine mootness based on present circumstances, not when the complaint was filed. *Dow Jones & Co., Inc. v. Kaye*, 256 F.3d 1251, 1254 (11th Cir. 2001).

Here, even if Allen identified some sort of illegal conduct – and he has not – past exposure to such conduct is insufficient to show an ongoing case or controversy in a claim for injunctive relief. *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985). Instead, "a continuing, present injury or real and immediate threat of repeated injury" is necessary for a live controversy. *Id* (citing *Dudley v. Stewart*, 724 F.2d 1493, 1494 (11th Cir.1984) and *Holland v. Purdy*, 457 F.2d 802 (5th Cir.1972)). Future injury must also be

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 9**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

immediate and real, not merely speculative. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L.Ed.2d 675 (1983). Allen's claim for injunctive relief should therefore be dismissed as moot.

### 2. Allen Fails to Establish the Intentional Discrimination Necessary to Recover Compensatory Damages Under Title II of the ADA.

"Title II of the ADA … prohibit[s] discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The ADA defines "public entity" as including state and local governments and their departments, agencies, and instrumentalities, but it does not include individuals. 42 U.S.C. § 12131. Thus, though the ADA applies to inmates in state prisons,[7] it does not create a private right of action against defendants in their individual capacities.[8] *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002); *Becker v. Oregon*, 170 F.Supp.2d 1061, 1066 (D. Or. 2001); *Thomas v. Nakatani*, 128 F.Supp.2d 684 (D. Hawaii 2000).

To establish an ADA claim against the State, Allen must show he was "improperly excluded from participation in, and denied the benefit of, a prison service, program, or activity on the basis of his physical handicap." *Coleman v. Virga*, 2019 WL 2866724 at *10 (E.D. Cal. 2019) (quoting *Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997)). To recover damages against the State under Title II of the ADA, he "must prove intentional discrimination on the part of the defendant" under the deliberate indifference standard. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Deliberate indifference requires conduct that is more than negligent and "involves an element of deliberateness." *Id*. at 1139.

---

[7] *Pennsylvania Dept. of Corr. v. Yeskey*, 524 U.S. 206, 118 S. Ct. 1952, 141 L.Ed.2d 215 (1998).

[8] Accordingly, to the extent Allen argues that Sgt. Kaehler's alleged violation of his rights under the ADA supports an individual-capacity claim against him under § 1983, he fails to state a claim. *See Vinson*, 288 F.3d at 1156 (joining the Fifth, Eighth, and Eleventh Circuits in holding that "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA").

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 10**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Here, Allen fails to identify any prison service, program, or activity he was denied due to his claimed disability. Dkt. 21 at 6-7. Instead, he merely parrots the elements of an ADA claim and alleges, in wholly conclusory fashion, that he was "denied the benefits" of some unidentified "service, program, or activity" by reason of his disability. Dkt. 21 at 7. That is not sufficient to establish a claim under the ADA. *See, e.g., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986) in holding "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (holding that "an unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient, as is a complaint that offers nothing more than "naked assertions devoid of further factual enhancement"). As this Court has observed, a plaintiff's failure to articulate "what benefit, service, or activity Defendants denied [him] by virtue of his disabilities… is fatal to any claim predicated on an ADA Title II … violation." *Wright v. State of Wash., Dept. of Corr.*, No. C20-1452-JCC, 2022 WL 575701 (W.D. Wash. Feb. 25, 2022) (citing *Lovell*, 303 F.3d at 1052). *See also Atkins v. Cty. of Orange*, 251 F.Supp.2d 1225, 1232 (S.D.N.Y. 2003) (noting that the failure to allege the denial of a particular benefit, program, or service is a "'fundamental defect' that may lead to the dismissal of the claim").

To the extent Allen premises his ADA claim on the removal of his wheelchair or the denial of his request for a single-cell environment, his claim still fails. "The ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled in part on other grounds* by *Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Stated differently, "[i]nadequate medical care does not provide a basis for an ADA claim

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 11**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

unless medical services are withheld by reason of a disability." *Marlor v. Madison Cty., Idaho*, 50 Fed. Appx. 872, 873 (9th Cir. 2002). A medical decision to remove a wheelchair or other durable medical equipment does not state a colorable claim under the ADA. *Id*. (holding that denial of crutch tips sought by inmate did not state a claim under the ADA). *See also Moore v. Prison Health Servs.*, 24 F.Supp.2d 1164, 1167 (D. Kan. 1998) (granting summary judgment on amputee inmate's Title II claim that he was not provided adequate wheelchair). The same is true of denying an inmate single cell housing assignment based on alleged mental illness. *See*, *e.g.*, *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of disabled prisoners" and that it does not create a cause of action where a prisoner merely complains that he "was not given special accommodation"). *Coleman*, 2019 WL 2866724 at * 10 (granting summary judgment on inmate's claim that he was not accommodated with single-cell status).

Here, Allen offers no evidence in support of his claim that PA Meyers' decision to restrict his use of a wheelchair to long distances violated his rights under the ADA. The only evidence he cites in support of his ADA claim with regard to his demand to be housed in a single cell environment is the opinion of a mental health counselor who recommended that he be given a single cell assignment; a recommendation that was ultimately rejected by the Single Cell Committee. Throgmorton Decl. ¶ 4, Ex. C.

At most, these allegations establish a claim for medical negligence, not an ADA violation. *See Bryant*, 84 F.3d at 249 (holding that "[t]he ADA does not create a remedy for medical malpractice"). But determining whether an ADA violation has occurred requires comparing the services provided to a disabled person with the services provided to non-disabled persons and determining whether equal opportunity to access the benefit was provided. *Segal v. Metro. Council*, 29 F.4th 399, 404 (8th Cir. 2002) (citing *Childress v. Fox Assoc., LLC*, 932 F.3d 1165, 1171 (8th Cir. 2019)).

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 12**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

In this case, Allen does not allege that non-disabled inmates were provided single cell living accommodations, nor does he offer any evidence that he was denied access to any specific service, program, or activity on the basis of his disability to which other non-disabled inmates were given access. *See Marlor*, 50 Fed. Appx. At 873 (affirming summary judgment where the plaintiff "offered no comparison with other inmates medical care to demonstrate that he was denied access to medical supplies or treated differently *by reason of* his disability") (emphasis in original). Absent some evidence of intentional discrimination, Allen fails to establish a claim for damages under the ADA.

Moreover, the ADA creates a private cause of action for damages against states only for conduct that *actually* violates the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 163 L.Ed.2d 650 (2006) (emphasis in original). But the Constitution does not guarantee inmates a right to specific types of medical equipment or to single-cell housing, and the practice of double-celling inmates does not violate the Fourteenth or the Eighth Amendments. *Rhodes v. Chapman*, 452 U.S. 337, 347-48, 101 S. Ct. 2392, 69 L.Ed.2d 59 (1981). Because Allen does not establish a Fourteenth Amendment violation, his claim for damages is barred by the Eleventh Amendment. *Georgia*, 546 U.S. at 159.

## B.    Allen's § 1983 Claim Fails as a Matter of Law.

Allen's § 1983 claim against Sgt. Jason Kaehler fares no better. Allen offers no evidence in support of his § 1983 claim beyond his own allegations and self-serving testimony, which are insufficient to defeat summary judgment. *See Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) in noting that, to defeat summary judgment, a party must go "beyond the pleadings and offer admissible evidence demonstrating that a genuine issue of fact exists for trial"). Regardless, even if Allen's allegations are accepted at face value, they remain insufficient absent evidence of 1) medical necessity, and 2) deliberate indifference.

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Without evidence of a constitutional violation or clearly established law placing Sgt. Kaehler on notice that his actions would violate a well-established right, Allen's claim is barred by qualified immunity.

Qualified immunity shields officers from liability under § 1983 unless their conduct violates clearly established constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). The "central purpose of affording public officials qualified immunity is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'" *Elder v. Holloway*, 510 U.S. 540, 114 S. Ct. 1019 (1994). To that end, the "qualified immunity defense allows for mistaken judgments and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S. Ct. 534 (1991)). This accommodation exists because "officials should not err always on the side of caution because they fear being sued." *Id.* at 229. As long as an official could reasonably have thought his actions consistent with the rights he is alleged to have violated, he is entitled to immunity. *Anderson v. Creighton*, 483 U.S. 635, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Entitlement to qualified immunity is a question of law. *Elder*, 510 U.S. at 516.

In determining whether Sgt. Kaehler is entitled to qualified immunity, the Court engages in a two-part analysis, looking to whether the facts implicate a violation of a constitutional right, and whether the right at issue was "clearly established" at the time. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272 (2001). The Court may consider those factors in any order that it chooses. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L.Ed.2d 565 (2009).

1.    **Allen Fails to Demonstrate that Sgt. Kaehler Violated His Constitutional Rights.**

    a.    **Allen offers no evidence in support of his § 1983 claim against Sgt. Kaehler beyond own compliant and his self-serving testimony, which are insufficient to defeat summary judgment.**

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 14
Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA  98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511*

As the party who bears the burden of proving his allegations at trial, Allen must "produce at least some significant probative evidence tending to support" them. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). As this Court has repeatedly recognized, unilaterally ascribing actions or statements to an opposing party does not meet this burden. *See*, *e.g.*, *Bellue v. Dept. of Corr.*, 2019 WL 3431634 (W.D. Wash. 2019) (citing *Wallis v. JR Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994) in noting "to defeat defendant's motion for summary judgment, plaintiff must make more than conclusory allegations, speculations, or argumentative assertions that material facts are in dispute"); *Lahrichi v. Lumera Corp.*, 2006 WL 909991 (W.D. Wash. 2006) (same). As a result, courts "refuse to find a genuine issue [of material fact] where the only evidence presented is uncorroborated and self-serving statements." *Coleman v. UPS Supply Chain Logistics*, 2012 WL 6098276 at *2 (W.D. Wash. Dec. 6, 2012) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) and *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)).

Here, Allen offers no evidence in support of his claims against Sgt. Kaehler beyond the allegations in his complaint and his own self-serving testimony. Both are insufficient to defeat summary judgment. *Wright v. Grannis*, 2014 WL 4804762 at *8 (S.D. Cal. Sept. 26, 2014) (holding that "[u]ltimately … Plaintiff's self-serving statements, uncorroborated by other evidence, are insufficient to create a genuine issue of material fact"); *Hammonds v. Collins*, 2016 WL 1621986 at *3 (M.D. Pa. April 20, 2016) (declining to "accept unsupported, self-serving" testimony from plaintiff "as evidence sufficient to create a jury question"). Allen's claims against Sgt. Kaehler should therefore be dismissed.

> **b.     Even if accepted at face value, Allen's allegations do not establish a claim under the Eighth Amendment.**

Moreover, Allen's allegations do not rise to the level of an Eighth Amendment claim even if accepted as true. Allen does not allege that *Sgt. Kaehler* personally deprived him of anything. Instead, he

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 15**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

alleges Sgt. Kaehler "observed him walking short distances," then ran to an unidentified physician's assistant – whom he later identified as Jennifer Meyers – and provided his observations *to her*, who then made the medical decision to impose restrictions on Allen's use of a wheelchair equipment. That does not allege sufficient personal participation on the part of Sgt. Kaehler to state a claim against him under § 1983, nor does it identify any deliberate indifference on the part of Sgt. Kaehler.

> **i.     As custody staff, Sgt. Kaeher is not responsible for the decisions made by medical personnel.**

To state a claim under § 1983, Allen must show (1) that the defendant acted under color of state law, and (2) that the defendant's conduct deprived him of rights, privileges or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L.Ed.2d 420 (1981). Implicit in the second element is a third element of causation. *Mt. Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 286-87, 429 U.S. 274, 50 L.Ed.2d 471 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980). Failure to allege or establish one or more of these elements requires dismissal.

To maintain a § 1983 claim, Allen must demonstrate that Sgt. Kaehler caused or personally participated in causing the deprivation of a particular constitutional right. *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the deprivation of a constitutional right, Sgt. Kaehler must have committed an affirmative act, or omitted to perform an act, that he was legally required to do, and which causes Allen's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The court's inquiry into causation must be individualized and must focus on the duties and responsibilities of each defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). *See also Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976). Sweeping conclusory allegations are insufficient to state a claim for relief. Rather, Allen must set forth

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 16
Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA  98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511*

specific facts showing a causal connection between each defendant's actions and the harm he has allegedly suffered. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Rizzo*, 423 U.S. at 371.

Here, Allen alleges Sgt. Kaehler saw him walking without his medical equipment, then reported his observations to medical staff, who made the decision to revoke his authorization for said equipment. Accepting that allegation as true, Sgt. Kaehler's only action was to report his observations; he did not make a decision to revoke authorization for Allen's medical equipment, nor could he, since authorization for medical equipment is a decision made by medical staff, not custody staff. Throgmorton Decl. ¶ 5, Ex. D at 29:12-17; 65:17-21; Throgmorton Decl. ¶ 8, Ex. G at 48:12-13; 77:13-19. It is not deliberate indifference for prison custody officials to rely upon medical professionals to authorize or not authorize durable medical equipment. *Shipp v. Murphy*, 9 F.4th 964, 703 (8th Cir. 2021). By merely observing Allen and reporting his observations, Sgt. Kaehler did nothing more than perform one of the core functions of his job as a prison guard. Throgmorton Decl. ¶ 8, Ex. G at 78:20-25. That does not state a § 1983 claim.

It is the revocation of his authorization to possess medical equipment that forms the basis of Allen's § 1983 claim, not Sgt. Kaehler's reporting of his observations. Accordingly, the independent exercise of professional decision making by medical personnel breaks any chain of causation between Sgt. Kaehler's reporting and the deprivation Allen complains about. Allen's § 1983 claim should therefore be dismissed.

### ii.    Allen offers no evidence of deliberate indifference on the part of Sgt. Kaehler.

Moreover, to prevail on his § 1983 claim, Allen must also establish that limiting his use of the medical equipment at issue violated the Eighth Amendment. To do this, he must demonstrate that Sgt. Kaehler's actions constituted deliberate indifference to a serious medical need. He fails to do so.

Deliberate indifference to the serious medical need of an inmate violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 50

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 17**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

L.Ed.2d 251 (1976). It includes denial, delay, or intentional interference with a prisoner's medical treatment. *Id*. at 104-05; *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 459-60 (9th Cir. 1980). To succeed on a deliberate indifference claim, however, an inmate must demonstrate that the prison official had a sufficiently culpable state of mind. *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). A determination of deliberate indifference involves an examination of two elements: The seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35, 113 S. Ct. 2475, 125 L.Ed.2d 22 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison official must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834.

An official is deliberately indifferent to a serious medical need if he "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 835. Deliberate indifference thus requires more culpability than ordinary lack of due care for a prisoner's health. *Id*. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what he or she should have known. *Wallis v. Baldwin,* 70 F.3d 1074, 1077 (9th Cir 1995). In other words, an official must (1) be actually aware of facts from which an inference could be drawn that a substantial risk of harm exists, and (2) actually draws the inference, but (3) nevertheless disregards the risk to the inmate's health. *Farmer*, 511 U.S. at 837-38. It is well-established that a difference of opinion between the inmate and prison medical staff concerning the proper course of treatment does not rise to the level sufficient to meet this standard. *Estelle*, 429 U.S. at 105-07. *See also Franklin v. State of Or., State Welfare*

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 18**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

*Div.,* 662 F.2d 1337, 1344 (9th Cir. 1981) ("[a] difference of opinion between prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim").

Here, Allen offers no evidence – beyond his own allegations and testimony – that the equipment at issue was medically necessary to treat a serious medical issue. This alone constitutes sufficient grounds to dismiss his § 1983 claim against Sgt. Kaehler. *See Thomas v. Quintana*, 672 Fed. Appx. 657, 660 (9th Cir. 2016) (affirming dismissal of claim for failure to provide medical equipment where plaintiff offered no evidence of medical necessity). Even if he offered such evidence, however, Allen neither alleges nor shows that Sgt. Kaehler was (1) aware of facts from which he could have drawn an inference that reporting his observations of Allen walking without assistance to medical personnel would have resulted in in a substantial risk of harm to Allen, (2) that he actually drew any such inference, or (3) that he nevertheless disregarded the risk of harm to Allen. Absent any evidence that Sgt. Kaehler acted with a culpable state of mind, Allen's deliberate indifference claim fails as a matter of law. *Farmer*, 511 U.S. at 836.

Allen also offers no evidence of past interactions with Sgt. Kaehler from which Sgt. Kaehler allegedly learned of his medical history. He likewise offers no evidence that he was harmed by PA Meyers' decision to limit his use of a wheelchair to long distances or that she subjectively knew that by changing Allen's HSR, she would subject him to a risk of harm. Instead, Allen merely complains that Sgt. Kaehler observed him acting in a way that called into question the veracity of his medical status, reported his observations to prison medical staff, and delivered an updated HSR limiting his use of a piece of medical equipment that he felt he needed. That does not establish a claim for deliberate indifference.

**2.    Sgt. Kaehler is Entitled to Qualified Immunity.**

Even if Allen had evidence of a constitutional violation, he cites no case law clearly establishing that placing restrictions upon his use of medical equipment at the direction of prison medical staff under

**STATE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT – 19
Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

the circumstances would violate any clearly established constitutional rights. Absent such authority, Sgt. Kaehler is entitled to qualified immunity.

Qualified immunity analysis requires the Court to determine whether the right at issue was "clearly established" such that reasonable officers would be on notice that their conduct was unlawful. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). To be "clearly established," there must be existing case law that "squarely governs the case." *Mullenix v. Luna*, 136 S. Ct. 305, 309, 193 L. Ed. 2d 255 (2015). A right may also be clearly established if existing precedent "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011). Absent controlling authority or a "robust 'consensus of cases of persuasive authority,'" qualified immunity applies. *Id*.

Here, Allen cites no case law clearly establishing his right to unrestricted possession and use of the medical equipment he demanded under the circumstances, and what case law there was at the time is to the contrary. *See, e.g.*, *Marlor*, 50 Fed. Appx. at 873 (holding that denial of crutch tips sought by inmate did not state a claim under the ADA); *Moore*, 24 F.Supp.2d 1164, 1167 (D. Kan. 1998) (granting summary judgment on amputee inmate's Title II claim that he was not provided adequate wheelchair). Absent such case law, Sgt. Kaehler is entitled to qualified immunity.

## VII.   CONCLUSION

Allen's release from custody renders his claims for injunctive relief under the ADA moot. Since he offers no evidence of discriminatory intent on the part of DOC or its personnel, Allen cannot recover damages under the ADA either. Allen's ADA claims should therefore be dismissed.

Allen's § 1983 claim against Sgt. Kaehler similarly fails. As a member of DOC custody staff, Sgt. Kaehler is not answerable under § 1983 for the medical decision making of prison medical personnel, and

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 20**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

there is no evidence that he violated any well-established federal right held by Allen. Absent any authority for the notion that the Eighth Amendment clearly guaranteed Allen an unrestricted right to the medical equipment he demanded, Sgt. Kaehler is also entitled to qualified immunity from Allen's § 1983 claim.

Federal courts have consistently recognized that decisions regarding inmate housing and custody classifications fall within the expertise and discretion of state prison officials. *See*, *e.g.*, *Branham v. City of Lynchburg*, 644 F.Supp.3d 215, 220 (W.D. Va. 2022) (citing *Wetzel v. Edwards*, 635 F.2d 283, 288 (4th Cir. 1980) in noting that "the decision about where to house any particular inmate … is generally committed to the state's prison officials, and a federal court must show deference to such decisions"); *Kirby v. Johnson*, 243 Fed. Appx. 877, 879 (5th Cir. 2007) (inmate challenges to classification status and unit placement held meritless because "prison officials exercise sole discretion over inmate classification, and inmates do not have a constitutionally protected interest in housing in certain facilities"); *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997) (holding that prisoners "do not have a constitutional right to be housed at a particular facility … [or] to receive a particular security classification"). As a result, federal courts give deference to state prison officials "in day-to-day prison operations due to separation of powers and federalism concerns." *Bahrampour v. Lampert*, 356 F.3d 969, 973 (9th Cir. 2004). *See also Bolton v. Goord*, 992 F.Supp. 604, 626 (S.D.N.Y. 1998) (citing *Sandin v. Conner*, 515 U.S. 472, 482, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995) in observing that federal courts "must be mindful of the deference case authority requires to be given to prison officials"). They do not second-guess state prison officials' decisions in classifying inmates or in selecting their place of confinement without evidence to support a constitutional violation. *James v. Reno*, 39 F.Supp.2d 37, 42 (D. Col. 1999).

Here, Allen asks the Court to transgress that boundary based on nothing more than his personal disagreement with state prison officials. The Court should respectfully decline.

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 21**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

Accordingly, State Defendants ask the Court to dismiss Allen's claims with prejudice and without leave to amend. A proposed order is provided herewith.

Dated this 3rd day of September, 2025.

I certify that this memorandum contains 7,500 words, in compliance with the Local Civil Rules.

LAW, LYMAN, DANIEL, KAMERRER
& BOGDANOVICH, P.S.

MICHAEL J. THROGMORTON, WSBA #44263
Special Assistant Attorney General
Attorney for Washington Dept. of Corrections
   and Sergeant Jason Kaehler
2674 RW Johnson Rd., Tumwater, WA 98512
P.O. Box 11880 Olympia, WA 98508-1880
Phone: (360) 754-3480 Fax: (360) 357-3511
E-mail: mthrogmorton@lldkb.com

## CERTIFICATE OF FILING & SERVICE

I certify, under penalty of perjury under the laws of the United States, that on this date, I caused to be electronically filed the foregoing document, and this Certificate of ECF Filing & Service, with the Clerk of the Court using the CM/ECF system as follows:

**Plaintiff's Attorney:**
John R. Bonin
Bonin Law, P.S.
P.O. Box 783
Shelton, WA 98584
johnbonin@johnbonin.com

DATED this 3rd day of September 2025, at Tumwater, WA.

   /s/ Tam Truong
Tam Truong, Legal Assistant

**STATE DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT – 22**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*