THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

GREGORY ALLEN,

Plaintiff,

v.

WASHINGTON STATE DEPARTMENT OF
CORRECTIONS,

Defendant.

No. 3:23-cv-05746-BHS

**DECLARATION OF MICHAEL J. THROGMORTON IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**NOTED FOR**: October 1, 2025

Without oral argument

I, MICHAEL J. THROGMORTON, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. I am counsel to Defendants Washington State Department of Corrections (DOC) and Jason Kaehler in the above captioned action. I am over the age of eighteen and am competent to testify to the following based on personal knowledge.

2. Attached as Exhibit A is a true and accurate copy of the report of Dr. Mario Paparozzi, who reviewed the totality of Plaintiff's DOC records and provided the opinions noted therein.

3. On January 24, 2025, I attended the deposition of DOC Medical Director Dr. Maryann Curl. Attached as Exhibit B are the relevant portions of the transcript of Dr. Curl's testimony. Highlights have been added for the Court's ease of reference.

**DECLARATION OF MICHAEL J. THROGMORTON IN SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 1**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA 98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480   FAX: (360) 357-3511*

4.      Attached as Exhibit C is a true and accurate copy of the Primary Encounter Report from August 3, 2020 documenting the multidisciplinary team's recommendation to grant Allen a single cell assignment, as well as DOC's rejection of that recommendation at the headquarters level of review.

5.      On June 12, 2025, I attended the deposition of Jennifer Meyers, PA. Attached as Exhibit D are the relevant portions of PA Meyers' testimony. Highlights have been added for ease of reference.

6.      Attached as Exhibit E is a true and accurate copy of the Health Status Report generated by Jennifer Meyers, PA regarding Gregory Allen on August 24, 2020. This document was admitted as Exhibit 1 to the deposition of Ms. Meyers on June 12, 2025.

7.      Attached as Exhibit F is a true and accurate copy of the Health Status Report generated by Jennifer Meyers, PA regarding Gregory Allen on December 30, 2020. This document was admitted as Exhibit 3 to the deposition of Ms. Meyers on June 12, 2025.

8.      On April 17, 2025, I attended the deposition of Jason Kaehler. Attached as Exhibit G are the relevant portions of Mr. Kaehler's testimony. Highlights have been added for ease of reference.

9.      On August 1, 2025, I attended the deposition of Gregory Allen. Attached as Exhibit H are the relevant portions of Mr. Allen's testimony. Highlights have been added for ease of reference.

Dated this 3rd day of September, 2025.

LAW, LYMAN, DANIEL, KAMERRER
& BOGDANOVICH, P.S.

MICHAEL J. THROGMORTON, WSBA #44263
Special Assistant Attorney General
Attorney for Washington Dept. of Corrections
2674 RW Johnson Rd. Tumwater, WA 98512
P.O. Box 11880 Olympia, WA 98508-1880
Phone: (360) 754-3480
Fax: (360) 357-3511
E-mail: mthrogmorton@lldkb.com

DECLARATION OF MICHAEL J. THROGMORTON IN
SUPPORT OF STATE DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT – 2
Cause No.: 3:23-cv-05746-BHS

LAW, LYMAN, DANIEL,
KAMERRER & BOGDANOVICH, P.S.
ATTORNEYS AT LAW
2674 R.W. JOHNSON RD. TUMWATER, WA 98512
P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880
(360) 754-3480  FAX: (360) 357-3511

## CERTIFICATE OF FILING & SERVICE

I certify, under penalty of perjury under the laws of the United States, that on this date, I caused to be electronically filed the foregoing document, and this Certificate of ECF Filing & Service, with the Clerk of the Court using the CM/ECF system as follows:

**<u>Plaintiff's Attorney:</u>**
John R. Bonin
Bonin Law, P.S.
P.O. Box 783
Shelton, WA 98584
johnbonin@johnbonin.com

DATED this 3rd day of September, 2025, at Tumwater, WA.

    */s/ Tam Truong*
Tam Truong, Legal Assistant

**DECLARATION OF MICHAEL J. THROGMORTON IN SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 3**
**Cause No.: 3:23-cv-05746-BHS**

*LAW, LYMAN, DANIEL,*
*KAMERRER & BOGDANOVICH, P.S.*
*ATTORNEYS AT LAW*
*2674 R.W. JOHNSON RD. TUMWATER, WA  98512*
*P.O. BOX 11880 OLYMPIA, WASHINGTON 98508-1880*
*(360) 754-3480  FAX: (360) 357-3511*

Exhibit A

**Report of Opinions of Mario A. Paparozzi, Ph.D.**
**Gregory Allen v. Washington DOC; SGT. Jason Kaehler; and**
**DOES 1-10**
**United States District Court**
**for the Western District of Washington**
**Civil Action No. 3:23-cv-5746**

**Qualifications Summary (C.V. Attached)**

- Ph.D. from Rutgers University.
- Certified Public Manager, Rutgers University.
- Employed by the New Jersey Department of Corrections for approximately 30 years. Highest titles were Assistant Corrections Commissioner, Interstate Compact Administrator, and New Jersey State Parole Board Chairman.
- Reviewed thousands of inmate institutional files including disciplinary reports, psychological and medical reports, programming reports, and classification documents.
- Participated in classification meetings.
- Conducted and oversaw offender risk and need assessments for individuals under correctional control.
- Supervised individuals conditionally released on parole.
- Supervised inmates transitioning to community settings.
- Conducted arrests and transports to and from county jail and state prison facilities.
- Conducted probable cause and parole revocation hearings.
- Performed expert witness work related to corrections for approximately 30 years in state and federal courts.
- Subcommittee co-chair of the North Carolina Sentencing Commission and North Carolina Division of Delinquency Prevention Youth Accountability Planning Task Force Systems Costs Working Group.
- Employed full-time at The College of New Jersey for two years. Highest titles were Assistant Professor and Associate Director, Criminal Justice Center for Research and Program Evaluation.
- Employed by the University of North Carolina – Pembroke for 20 years (2003 – 2023). Highest titles were Professor and Chair of the Department of Sociology and Criminal Justice, and Coordinator of the Master of Public Administration graduate track in criminal justice.
- Professor Emeritus, University of North Carolina – Pembroke, Department of Sociology and Criminal Justice, 2024 - Present.
- Employed for approximately 21 years as a part-time (evenings from 1977 to 1998) adjunct professor of criminal justice, criminology, and sociology at various colleges and universities including the following: The College of New Jersey; Rutgers University; Montclair State University; Rider University, Brookdale Community College; Kean University, and Bloomfield College.
- Developed and taught courses at the undergraduate and graduate levels on contemporary corrections, the history and philosophy of corrections, probation and parole, public administration, use of force, public administration, constitutional rights of prisoners, statistics, research methods, as well as other criminal justice and sociology courses.

1

- Provided numerous keynote addresses, seminars, and professional training and consulting services in 46 states in the USA, the District of Columbia, Singapore, The United Kingdom, Ireland, Canada, Bermuda, Poland, Germany, Holland, Italy, and The Council of Europe's Council for Penological Cooperation in Strasbourg, France.
- Served as an international judge for the United Kingdom's International Community Justice Awards Conference hosted by Her Royal Highness Princess Anne and the British Home Office.
- Founding member of the New Jersey Chapter of the American Corrections Association.
- Current member of the American Corrections Association.
- Former instructor certified by the New Jersey Police Training Academy.
- Trained in use of force at the New Jersey Corrections Officer Training Academy.
- Taught at the National Academy of Corrections in Longmont, Colorado.
- Provided technical assistance to local governments under the auspices of the National Institute of Corrections.
- Developed policies for the use of force, arrest, transports, and the confinement of inmates and parole violators pending inmate disciplinary infraction hearings or parole violation hearings.
- Oversaw the management of parole violators housed in county jails.
- As an Assistant Corrections Commissioner, I routinely interacted with custody personnel. I attended regular meetings with senior staff and the Office of the Ombudsman regarding a variety of custody issues in the state prison system.
- As deputy interstate corrections compact administrator, I frequently dealt with matters related to inmate custody.
- I have visited/toured minimum, medium and maximum-security prisons in Tennessee, New Mexico, New Jersey, North Carolina, Michigan, Ohio, Pennsylvania, Bermuda, Singapore, and Poland.
- In my role as an Assistant Corrections Commissioner, I was involved in the preparation of a request for proposals to contract for healthcare services in state prison facilities. This included becoming familiar with healthcare policies concerning the delivery of services.
- I am familiar with inmate disciplinary records that involved custody matters. This required me to talk directly to staff of many prisons about policies, procedures, and practices within prisons and jails. I also reviewed numerous psychological reports prepared by psychological institutional staff.
- My education in the field of corrections includes corrections classes that I have taken, developed, and taught. The content of these classes included prison design since the advent of the penitentiary/prison systems in the United States.
- I completed mandatory staff training at the New Jersey Corrections Officer Training Academy. The majority of courses during this training were taught by corrections officer custodial staff.
- I am not only an academic scholar in the area of corrections; I am also a practitioner whose experiences have exposed me to all aspects of the criminal justice systems (e.g., police, courts, grand jury hearings, prosecutors, judges, secretaries/directors of corrections, wardens and superintendents of jails, program directors, custody staff, and more).

- I own a copy, and refer frequently to, American Correctional Association's <u>Performance-based Standards and Expected Practices for Adult Correctional Institutions</u>.

**Documents Reviewed**

000011-000012_Behavior_And_Programming_Plan_Formatted_Print 6.pdf
000013-000014_Behavior_And_Programming_Plan_Formatted_Print 7.pdf
13-400 - ADA DME.docx
13-508 ADA Status Report.docx
13-510 ASR Decision Notification.docx
13-584 Patient ASR Decision Appeal.pdf
13-585 ASR Appeal Result.docx
000015-000016_Behavior_And_Programming_Plan_Formatted_Print 8.pdf
000017-000018_Behavior_And_Programming_Plan_Formatted_Print 9.pdf
000019-000020_Behavior_And_Programming_Plan_Formatted_Print 10.pdf
000021-000022_Behavior_And_Programming_Plan_Formatted_Print 11.pdf
21. Amended Complaint.pdf
000023-000024_Behavior_And_Programming_Plan_Formatted_Print 12.pdf
000025-000026_Behavior_And_Programming_Plan_Formatted_Print 13.pdf
00000026-00000132_Allen 806649 AB King 00-1-08761-2 KNT.pdf
000027-000028_Behavior_And_Programming_Plan_Formatted_Print 14.pdf
000029-000030_Behavior_And_Programming_Plan_Formatted_Print 15.pdf
000031-000032_Behavior_And_Programming_Plan_Formatted_Print 16.pdf
000033-000034_Behavior_And_Programming_Plan_Formatted_Print 17.pdf
000035-000036_Behavior_And_Programming_Plan_Formatted_Print 18.pdf
000037-000038_Behavior_And_Programming_Plan_Formatted_Print 19.pdf
000039-000041_CFP 1.pdf
000042-000044_CFP 2.pdf
000045-000047_CFP 3.pdf
000048-000050_CFP 4.pdf
000051-000053_CFP 5.pdf
000054-000056_CFP 6.pdf
000057-000059_CFP 7.pdf
000060-000062_CFP 8.pdf
000063-000065_CFP 9.pdf
000066-000068_CFP 10.pdf
000069-000071_CFP 11.pdf
000072-000074_CFP 12.pdf
000075-000077_CFP 13.pdf
000078-000080_CFP 14.pdf
000081-000083_CFP 15.pdf
000084-000086_CFP 16.pdf
000087-000089_CFP 17_Redacted.pdf
000090-000093_CFP 18_Redacted.pdf
000094-000097_CFP 19_Redacted.pdf
000098-000101_CFP 20_Redacted.pdf

000102-000105_CFP 21_Redacted.pdf
000106-000109_CFP 22_Redacted.pdf
000110-000113_CFP 23_Redacted.pdf
000114-000117_CFP 24_Redacted.pdf
000118-000121_CFP 25_Redacted.pdf
000122-000125_CFP 26_Redacted.pdf
000126-000129_CFP 27_Redacted.pdf
000130-000133_CFP 28_Redacted.pdf
00000133-00000219_Allen 806649 AC Pierce 01-1-00032-4.pdf
000134-000137_CFP 29_Redacted.pdf
000138-000141_CFP 30_Redacted.pdf
000142-000145_CFP 31_Redacted.pdf
000146-000149_CFP 32_Redacted.pdf
000150-000154_CFP 33_Redacted.pdf
000155-000158_CFP 34_Redacted.pdf
000159-000162_CFP 35_Redacted.pdf
000163-000166_CFP 36_Redacted.pdf
000167-000170_CFP 37_Redacted.pdf
000171-000175_CFP 38_Redacted.pdf
000176-000179_CFP 39_Redacted.pdf
000180-000183_CFP 40_Redacted.pdf
000184-000187_CFP 41_Redacted.pdf
000188-000191_CFP 42_Redacted.pdf
000192-000195_CFP 43_Redacted.pdf
000196-000199_CFP 44_Redacted.pdf
000200-000203_CFP 45_Redacted.pdf
000204-000207_CFP 46_Redacted.pdf
000208-000211_CFP 47_Redacted.pdf
000212-000215_CFP 48_Redacted.pdf
000216-000219_CFP 49_Redacted.pdf
00000220-00000322_Allen 806649 AD King 99-1-08738-7 SEA.pdf
000220-000223_CFP 50_Redacted.pdf
000224-000227_CFP 51_Redacted.pdf
000228-000231_CFP 52_Redacted.pdf
000232-000235_CFP 53_Redacted.pdf
000236-000239_CFP 54_Redacted.pdf
000240-000243_CFP 55_Redacted.pdf
000244-000247_CFP 56_Redacted.pdf
000248-000251_CFP 57_Redacted.pdf
000252-000255_CFP 58_Redacted.pdf
000256_806649,-ALLEN,-GREGORY---AD01---Administrative-Segregation-Referral---6-16-2010.pdf
000257_806649,-ALLEN,-GREGORY---AD01---Administrative-Segregation-Referral---8-4-2014.pdf
000258_806649,-ALLEN,-GREGORY---AD01---Administrative-Segregation-Referral---10-28-2013.pdf

4

000259_806649,-ALLEN,-GREGORY---AD01---Administrative-Segregation-Referral---12-24-2013.pdf

000260_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---1-8-2012.pdf

000261_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---6-16-2010.pdf

000262_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---8-2-2014.pdf

000263_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---9-26-2013.pdf

000264_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---10-16-2013.pdf

000265_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---10-24-2013.pdf

000266_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---11-22-2013.pdf

000267_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---12-16-2013.pdf

000268_806649,-ALLEN,-GREGORY---AD02---Segregation-Authorization---12-24-2013.pdf

000269_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---1-12-2011.pdf

000270_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---6-16-2010.pdf

000271_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---6-22-2010.pdf

000272_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---6-28-2010.pdf

000273_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---7-6-2010.pdf

000274_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---7-12-2010.pdf

000275_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---7-20-2010.pdf

000276_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---7-28-2010.pdf

000277_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---8-24-2010.pdf

000278_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---10-20-2010.pdf

000279_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---11-14-2011.pdf

000280_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---11-16-2010.pdf

000281_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---11-20-2011.pdf

000282-000283_806649-ALLEN-GREGORY-AD03-Administrative-Segregation-Review-11-20-2011_296291.pdf

000284_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---11-28-2011.pdf

000285_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---12-4-2011.pdf

000286_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---12-12-2011.pdf

000287_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---12-14-2010.pdf

000288_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---12-20-2011.pdf

000289_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---12-30-2011.pdf

000290_806649,-ALLEN,-GREGORY-L.---AD01---Administrative-Segregation-Referral---3-9-2020.pdf

000291_806649,-ALLEN,-GREGORY-L.---AD01---Administrative-Segregation-Referral---6-10-2019.pdf

000292_806649,-ALLEN,-GREGORY-L.---AD01---Administrative-Segregation-Referral---10-8-2020.pdf

000293_806649,-ALLEN,-GREGORY-L.---AD01---Administrative-Segregation-Referral---11-14-2018.pdf

000294_806649,-ALLEN,-GREGORY-LEE---AD01---Administrative-Segregation-Referral---9-3-2017.pdf

000295_806649,-ALLEN,-GREGORY-LEE---AD01---Administrative-Segregation-Referral---10-6-2017.pdf

000296_806649,-ALLEN,-GREGORY-LEE---AD01---Administrative-Segregation-Referral---11-5-2020.pdf

000297_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---1-10-2014.pdf

000298_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---2-22-2012.pdf

000299-000300_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---2-28-2012.pdf

000301-000302_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---3-8-2012.pdf

000303-000304_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---3-14-2012.pdf

000305-000306_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---3-20-2012.pdf

000307-000308_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---3-28-2012.pdf

000309-000310_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---4-4-2012.pdf

000311-000312_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---4-12-2012.pdf

000313_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---6-12-2012.pdf

000314_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---8-8-2014.pdf

000315_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---8-8-2014_398896.pdf

000316-000317_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---9-3-2014.pdf

6

000318-000319_806649-ALLEN-GREGORY---AD03---Administrative-Segregation-Review---
12-10-2013.pdf

000320_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-Review---12-28-
2013.pdf

000321_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---2-21-
2020.pdf

000322-000323_806649-ALLEN-GREGORY-L.--AD03--Administrative-Segregation-Review---
3-6-2020.pdf

00000323-00000422_Allen 806649 AE Pierce 01-1-04016-4.pdf

000324-000325_806649-ALLEN-GREGORY-L.--AD03--Administrative-Segregation-Review-
3-6-2020_13567097.pdf

000326_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---7-21-
2021.pdf

000327-000328_06649-ALLEN-GREGORY-L.---AD03---Administrative-Segregation-Review--
-8-6-2021.pdf

000329-000330_806649-ALLEN-GREGORY-L--AD03---Administrative-Segregation-Review---
8-27-2021.pdf

000331-000332_806649-ALLEN-GREGORY-L--AD03---Administrative-Segregation-Review---
8-31-2021.pdf

000333_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---9-1-
2021.pdf

000334-000335_806649-ALLEN-GREGORY-L--AD03---Administrative-Segregation-Review---
9-10-2021.pdf

000336-000337_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
10-1-2021.pdf

000338-000339_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
10-15-2021.pdf

000340-000341_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
10-22-2020.pdf

000342-000343_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
10-25-2021.pdf

000344_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---10-
27-2020.pdf

000345-000346_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
10-29-2021.pdf

000347-000348_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
11-5-2021.pdf

000349-000350_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
11-15-2018.pdf

000351-000352_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
12-1-2020.pdf

000353-000354_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
12-6-2021.pdf

000355-000356_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---
12-6-2021_15076731.pdf

7

000357-000358_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---12-10-2021.pdf

000359-000360_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---12-14-2020.pdf

000361-000362_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---12-20-2021.pdf

000363-000364_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---12-29-2021.pdf

000365-000366_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---1-4-2022.pdf

000367-000368_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---1-7-2022.pdf

000369-000370_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---1-19-2022.pdf

000371-000372_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---2-8-2022.pdf

000373-000374_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---2-11-2022.pdf

000375-000376_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---2-17-2022.pdf

000377-000378_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---2-25-2022.pdf

000379-000380_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---3-3-2022.pdf

000381-000382_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---4-1-2022.pdf

000383_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---4-12-2022.pdf

000384-000385_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---4-18-2022.pdf

000386_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---4-24-2022.pdf

000387_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---5-2-2022.pdf

000388-000389_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---5-19-2022.pdf

000390-000391_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---5-27-2022.pdf

000392_806649,-ALLEN,-GREGORY-L.---AD03---Administrative-Segregation-Review---6-6-2022.pdf

000393-000394_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---6-10-2022.pdf

000395-000396_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---6-22-2022.pdf

000397-000398_806649-ALLEN-GREGORY-L-AD03---Administrative-Segregation-Review---6-27-2022.pdf

8

000399-000400_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---1-18-2018.pdf

000401-000402_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---1-24-2022.pdf

000403-000404_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---1-31-2022.pdf

000405-000406_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---2-1-2018.pdf

000407_806649,-ALLEN,-GREGORY-LEE---AD03---Administrative-Segregation-Review---2-15-2018.pdf

000408_806649,-ALLEN,-GREGORY-LEE---AD03---Administrative-Segregation-Review---2-15-2018_11376150.pdf

000409-000410_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---3-14-2022.pdf

000411-000412_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---3-21-2022.pdf

000413-000414_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---5-2-2022.pdf

000415-000416_806649-ALLEN-GREGORY-LEE-AD03---Administrative-Segregation-Review---5-6-2022.pdf

000417_806649,-ALLEN,-GREGORY-LEE---AD03---Administrative-Segregation-Review---9-21-2021.pdf

000418-000419_806649-ALLEN-GREGORY-LEE-AD03--Administrative-Segregation-Review---11-12-2020.pdf

000420-000421_806649-ALLEN-GREGORY-LEE-AD03--Administrative-Segregation-Review---11-13-2020.pdf

000422_806649,-ALLEN,-GREGORY-LEE---AD03---Administrative-Segregation-Review---12-7-2017.pdf

00000423-00000483_Allen 806649 AF King 01-1-08596-1 SEA.pdf

000423_806649,-ALLEN,-GREGORY-LEE---AD03---Administrative-Segregation-Review---12-21-2017.pdf

000424-000425_806649-ALLEN-GREGORY-LEE-AD03-Administrative-Segregation-Review---12-22-2020.pdf

000426-000427_806649,-ALLEN,-GREGORY---AD05---IMS-Referral---3-28-2006.pdf

000428-000429_806649,-ALLEN,-GREGORY---AD05---IMS-Referral---4-4-2006.pdf

000430_806649,-ALLEN,-GREGORY---AD06---IMS-Action-Request---12-17-2020.pdf

000431_806649,-ALLEN,-GREGORY---AD07---Administrative-Segregation-Minutes---8-18-2022.pdf

000432_806649,-ALLEN,-GREGORY---AD07---Administrative-Segregation-Minutes---10-14-2021.pdf

000433_806649-ALLEN-GREGORY-L-AD04-Classification-Referral-Administrative-Segregation-11-28-2018.pdf

000434_806649,-ALLEN,-GREGORY-L.---AD05---IMS-Referral---11-8-2018.pdf

000435_806649,-ALLEN,-GREGORY-L.---AD06---IMS-Action-Request---1-2-2020.pdf 1

000436_806649-ALLEN-GREGORY-L-AD09MaxCustodyIMU-Level-Step-Demotion-Review-Notification-7-28-2021.pdf

000437_806649-ALLEN-GREGORY-LAD09MaximumCustodyIMULevelStepDemotionReview-Notification-10-27-2021.pdf
000438_806649-ALLEN-GREGORY-LAD09MaximumCustodyIMULevelStepDemotion-Review-Notification-11-23-2021.pdf
000439_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---3-15-2020.pdf
000440_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---3-23-2022.pdf
000441_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---3-31-2022.pdf
000442_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---4-22-2022.pdf
000443_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---4-29-2022.pdf
000444_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---5-10-2022.pdf
000445_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---5-15-2021.pdf
000446_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---5-15-2022.pdf
000447_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---5-26-2022.pdf
000448_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---5-29-2022.pdf
000449_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---6-5-2022.pdf
000450_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---6-17-2021.pdf
000451_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---6-21-2021.pdf
000452_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---6-25-2021.pdf
000453_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---6-29-2021.pdf
000454_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---6-29-2022.pdf
000455_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---7-13-2021.pdf
000456_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---10-31-2021.pdf
000457_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---11-14-2021.pdf
000458_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---12-3-2021.pdf
000459_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---12-12-2021.pdf
000460_806649,-ALLEN,-GREGORY-L.---AD11---Search-Report---12-23-2021.pdf
000461_806649,-ALLEN,-GREGORY-LEE---AD05---IMS-Referral---3-2-2018.pdf
000462_806649,-ALLEN,-GREGORY-LEE---AD05---IMS-Referral---4-11-2012.pdf
000463_806649,-ALLEN,-GREGORY-LEE---AD06---IMS-Action-Request---1-21-2014.pdf
000464_806649,-ALLEN,-GREGORY-LEE---AD06---IMS-Action-Request---5-17-2018.pdf
000465_806649,-ALLEN,-GREGORY-LEE---AD06---IMS-Action-Request---7-3-2012.pdf
000466_806649,-ALLEN,-GREGORY-LEE---AD06---IMS-Action-Request---12-3-2013.pdf
000467_806649,-ALLEN,-GREGORY---AD14---IMU-Level-Review-Form---2-8-2012.pdf
000468_806649,-ALLEN,-GREGORY---AD14---IMU-Level-Review-Form---3-14-2012.pdf
000469_806649,-ALLEN,-GREGORY---AD14---IMU-Level-Review-Form---4-28-2012.pdf
000470_806649,-ALLEN,-GREGORY---AD14---IMU-Level-Review-Form---5-10-2012.pdf
000471_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---1-5-2021.pdf
000472_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---1-8-2014.pdf
000473_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---1-12-2012.pdf
000474_806649-ALLEN-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---1-12-2012_1472654.pdf
000475_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---1-12-2014.pdf

10

000476_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---1-20-2014.pdf

000477_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---1-28-2014.pdf

000478_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---2-12-2012.pdf

000479_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---2-16-2012.pdf

000480_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---2-20-2012.pdf

000481_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---2-26-2012.pdf

000482_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-1-2021.pdf

000483_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-4-2012.pdf

00000484-00000584_Allen 806649 Front Sections Misc Info.pdf

000484_806649-ALLEN-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-4-2012_1478910.pdf

000485_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-8-2012.pdf

000486_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-12-2012.pdf

000487_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-15-2020.pdf

000488_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-16-2012.pdf

000489_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-20-2012.pdf

000490_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-24-2012.pdf

000491_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-28-2012.pdf

000492_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---3-30-2012.pdf

000493_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-4-2012.pdf

000494_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-6-2012.pdf

000495_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-10-2012.pdf

000496_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-12-2012.pdf

000497_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-16-2012.pdf

000498_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-20-2012.pdf

000499_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-24-2012.pdf

000500_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-24-2021.pdf

000501_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---4-30-2012.pdf

000502_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-4-2012.pdf

000503_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-6-2012.pdf

000504_806649-ALLEN-GREGORY-AD17---Daily-Report-of-Segregated-Inmate---5-6-2012_1481234.pdf

000505_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-10-2012.pdf

000506_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-12-2012.pdf

000507_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-16-2012.pdf

000508_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-20-2012.pdf

000509_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-24-2012.pdf

000510_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---5-28-2012.pdf

000511_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-2-2018.pdf

000512_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-4-2012.pdf

000513_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-4-2018.pdf

000514_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-8-2012.pdf

000515_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-12-2012.pdf

000516_806649-ALLEN-GREGORY-AD17-Daily-Report-of-Segregated-Inmate---6-12-2012_1485370.pdf

000517_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-14-2012.pdf

000518_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-16-2012.pdf

000519_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-20-2012.pdf

000520_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-26-2012.pdf

000521_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---6-28-2012.pdf
000522_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---7-4-2012.pdf
000523_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---7-6-2012.pdf
000524_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---7-10-2012.pdf
000525_806649-ALLEN-GREGORY-AD17---Daily-Report-of-Segregated-Inmate---7-10-2012_1484773.pdf
000526_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---9-11-2014.pdf
000527_806649-ALLEN-GREGORY-AD17---Daily-Report-of-Segregated-Inmate---9-11-2014_1483798.pdf
000528_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---10-6-2013.pdf
000529_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---10-20-2013.pdf
000530_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---10-24-2013.pdf
000531_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---10-30-2013.pdf
000532_806649-ALLEN-GREGORY-AD17---Daily-Report-of-Segregated-Inmate---10-30-2013_1481447.pdf
000533_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---11-4-2013.pdf
000534_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---11-6-2013.pdf
000535_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---11-15-2017.pdf
000536_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---11-21-2017.pdf
000537_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---11-24-2013.pdf
000538_806649-ALLEN-GREGORY-AD17-Daily-Report-of-Segregated-Inmate---11-24-2013_1493157.pdf
000539_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---11-26-2017.pdf
000540_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---12-1-2017.pdf
000541_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---12-4-2013.pdf
000542_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---12-6-2017.pdf
000543_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---12-20-2013.pdf

13

000544_806649,-ALLEN,-GREGORY---AD17---Daily-Report-of-Segregated-Inmate---12-26-2013.pdf

000545_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---1-2-2023.pdf

000546_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---1-6-2023.pdf

000547_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---1-11-2023.pdf

000548_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---1-16-2023.pdf

000549_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---1-20-2023.pdf

000550_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---1-26-2023.pdf

000551_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---11-10-2022.pdf

000552_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---11-15-2022.pdf

000553_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---11-21-2022.pdf

000554_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---11-27-2022.pdf

000555_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-1-2022.pdf

000556_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-6-2022.pdf

000557_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-9-2022.pdf

000558_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-13-2022.pdf

000559_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-18-2022.pdf

000560_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-21-2022.pdf

000561_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-26-2022.pdf

000562_806649-ALLEN-GREGORY---AD17---Daily-Segregation-Report---12-26-2022_16160965.pdf

000563_806649,-ALLEN,-GREGORY---AD17---Daily-Segregation-Report---12-29-2022.pdf

000564_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---1-30-2022.pdf

000565_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---1-31-2022.pdf

000566_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---2-14-2022.pdf

000567_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---2-19-2020.pdf

000568_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---3-1-2020.pdf

000569_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---3-9-2020.pdf

000570_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---3-9-2022.pdf

000571_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---3-18-2020.pdf

000572_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---3-19-2021.pdf

000573_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---4-8-2021.pdf

000574-000575_806649-ALLEN-GREGORY-L-AD17-Daily-Report-of-Segregated-Inmate---5-9-2022.pdf

000576_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-9-2022_15460139.pdf

14

000577_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018.PDF

000578_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005169.PDF

000579_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005170.PDF

000580_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005171.PDF

000581_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005172.PDF

000582_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005173.PDF

000583_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005175.PDF

000584_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005179.PDF

000585_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005181.PDF

000586_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005183.PDF

000587_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005184.PDF

000588_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005187.PDF

000589_806649-ALLEN-GREGORY-L-AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_12005189.PDF

000590_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---6-3-2022.pdf

000591_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---6-15-2021.pdf

000592_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---6-18-2021.pdf

000593_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---6-20-2022.pdf

000594_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---7-28-2021.pdf

000595_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---8-28-2021.pdf

000596_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---8-28-2021_14711444.pdf

000597_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---9-18-2021.pdf

000598_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---10-9-2021.pdf

000599_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---10-11-2020.pdf

15

000600_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---10-13-2020.pdf

000601_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---11-9-2020.pdf

000602_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---11-15-2021.pdf

000603_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---11-16-2021.pdf

000604_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---11-17-2020.pdf

000605_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---11-17-2020_14026989.pdf

000606_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---11-18-2020.pdf

000607_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---12-14-2020.pdf

000608_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Report-of-Segregated-Inmate---12-18-2021.pdf

000609_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Segregation-Report---4-30-2022.pdf

000610_806649,-ALLEN,-GREGORY-L.---AD17---Daily-Segregation-Report---5-17-2022.pdf

000611_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---2-5-2021.pdf

000612_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-30-2018.pdf

000613_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018.pdf

000614_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767869.pdf

000615_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767871.pdf

000616_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767873.pdf

000617_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767875.pdf

000618_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767877.pdf

000619_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767878.pdf

000620_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767880.pdf

000621_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767882.pdf

000622_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767883.pdf

000623_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767884.pdf

16

000624_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---5-31-2018_11767889.pdf

000625_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---10-7-2017.pdf

000626_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---10-12-2017.pdf

000627_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---10-20-2017.pdf

000628_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---10-26-2017.pdf

000629_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---11-1-2017.pdf

000630_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---11-11-2017.pdf

000631_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---12-10-2017.pdf

000632_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---12-20-2017.pdf

000633_806649,-ALLEN,-GREGORY-LEE---AD17---Daily-Report-of-Segregated-Inmate---12-31-2017.pdf

000634_806649--AD19--AdSeg-IMU-Review-Notice-Appearance-Waiver--6-10-2019.pdf

000635_806649,-ALLEN,-GREG---CA01---Classification-Referral---7-28-2003.pdf

000636_806649,-ALLEN,-GREG---CA01---Classification-Referral---7-28-2003_3031886.pdf

000637_806649,-ALLEN,-GREG---CA01---Classification-Referral---8-6-2003.pdf

000638-000639_806649,-ALLEN,-GREG---CA01---Classification-Referral---9-4-2003.pdf

000640-000641_806649,-ALLEN,-GREG---CA01---Classification-Referral---11-4-2003.pdf

000642-000643_806649,-ALLEN,-GREG---CA01---Classification-Referral---12-12-2003.pdf

000644_806649,-ALLEN,-GREG---CA01---Classification-Referral---12-20-2002.pdf

000645-000648_806649,-ALLEN,-GREG---CA02---Facility-Plan---5-12-2003_Redacted.pdf

000649_806649,-ALLEN,-GREG---CA03---Criminal-History-Summary---12-20-2002.pdf

000650-000654_806649-ALLEN-GREG-CA10-DOC-Intake-Questionnaire-11-16-2002_Redacted.pdf

000655_806649-ALLEN-GREGORY-AD19---AdSeg-IMU-Review-Notice-Appearance-Waiver---2-20-2012.pdf

000656-000657_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver-4-4-2011.pdf

000658_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver-4-4-2011_395443.pdf

000659_806649-ALLEN-GREGORY-AD19---AdSeg-IMU-Review-Notice-Appearance-Waiver---6-8-2012.pdf

000660_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---6-16-2010.pdf

000661_806649-ALLEN-GREGORY-AD19AdSegIMUReview-Notice-Appearance-Waiver-6-16-2010_281471.pdf

000662_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver-7-23-2021.pdf

000663_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---8-2-2014.pdf

000664_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---9-21-2021.pdf

000665_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---10-24-2013.pdf

000666_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---11-12-2011.pdf

000667_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---11-22-2017.pdf

000668_806649-ALLEN-GREGORY-AD19AdSegIMUReviewNoticeAppearanceWaiver-11-22-2017_11144072.pdf

000669_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver-12-8-2011.pdf

000670_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---12-24-2013.pdf

000671_806649-ALLEN-GREGORY-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---12-30-2013.pdf

000672_806649,-ALLEN,-GREGORY---CA01---Classification-Referral---7-12-2005.pdf

000673-000675_806649,-ALLEN,-GREGORY---CA02---Facility-Plan---8-4-2005_Redacted.pdf

000676-000678_806649,-ALLEN,-GREGORY---CA02---Facility-Plan---10-4-2005_Redacted.pdf

000679-000681_806649,-ALLEN,-GREGORY---CA02---Facility-Plan---10-24-2006_Redacted.pdf

000682_806649,-ALLEN,-GREGORY---CA10---DOC-Intake-Questionnaire---7-6-2005.pdf

000683_806649,-ALLEN,-GREGORY---CA10---DOC-Intake-Questionnaire---7-12-2005.pdf

000684_806649-ALLEN-GREGORY-L-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---2-19-2020.pdf

000685_806649-ALLEN-GREGORY-L-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---3-9-2020.pdf

000686_806649-ALLEN-GREGORY-L-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---9-23-2019.pdf

000687_806649-ALLEN-GREGORY-L-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---10-16-2019.pdf

000688_806649-ALLEN-GREGORY-L-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---10-28-2020.pdf

000689_806649-ALLEN-GREGORY-L-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---11-17-2020.pdf

000690-000691_806649,-ALLEN,-GREGORY-L.---AD30---Segregation-Paperwork---6-12-2019.pdf

000692_806649,-ALLEN,-GREGORY-L.---AD30---Segregation-Paperwork---9-25-2019.pdf

000693_806649,-ALLEN,-GREGORY-L.---AD30---Segregation-Paperwork---11-9-2019.pdf

000694-000695_806649-ALLEN-GREGORY-L-AD30-Segregation-Paperwork---12-11-2019.pdf

000696_806649-ALLEN-GREGORY-LEE-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---9-6-2017.pdf

18

000697_806649-ALLEN-GREGORY-LEE-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---10-6-2017.pdf

000698_806649-ALLEN-GREGORY-LEE-AD19-AdSeg-IMU-Review-Notice-Appearance-Waiver---12-6-2017.pdf

000699-000701_806649ALLENGREGORYCA15ScreeningCommitteeIncomingTransportRevChecklist1-12-12.pdf

000702-000704_806649ALLENGREGORYCA15ScreeningCommitteeIncomingTransportRevChecklist1-26-12.pdf

000705-000709_806649,-ALLEN,-GREGORY---CA16---Job-Screening-Checklist---7-24-2012.pdf

000710-000711_806649ALLENGREGORYCA35ClassHearingNoticeAppearanceWaiver1-20-14.pdf

000712_806649-ALLEN-GREGORY-CA35-Classification-Hearing-Notice-Appearance-Waiver-4-4-2010.pdf

000713_806649-ALLEN-GREGORY-CA35-Classification-Hearing-Notice-Appearance-Waiver-4-20-2010.pdf

000714_806649-ALLEN-GREGORY-CA35-Classification-Hearing-Notice-Appearance-Waiver-8-4-2011.pdf

000715_806649-ALLEN-GREGORY-CA35-Classification-Hearing-Notice-Appearance-Waiver-9-19-2014.pdf

000716_806649-ALLENGREGORY-CA35-Classification-Hearing-Notice-Appearance-Waiver-11-26-2012.pdf

000717-000718_806649-ALLENGREGORY-L-CA35ClassificationHearingNoticeAppearanceWaiver4-15-21.pdf

000719-000720_806649ALLEN-GREGORY-L-CA35ClassificationHearingNoticeAppearanceWaiver6-18-21.pdf

000721_806649-ALLEN-GREGORY-L-CA35-Classification-Hearing-Notice-Appearance-Waiver-7-6-20.pdf

000722_806649-ALLEN-GREGORY-L-CA35ClassificationHearingNoticeAppearanceWaiver10-9-19.pdf

000723_806649-ALLEN-GREGORY-L-CA35ClassificationHearingNoticeAppearanceWaiver10-16-18.pdf

000724_806649-ALLEN-GREGORY-L-CA35ClassificationHearingNoticeAppearanceWaiver11-19-19.pdf

000725_806649-ALLENGREGORYL-CA35ClassHearingNoticeAppearanceWaiver11-19-19_13506324.pdf

000726-000728_806649,-ALLEN,-GREGORY-L.---CA36--Classification-Appeal---1-28-2020.pdf

000729-000730_806649,-ALLEN,-GREGORY-L.---CA36--Classification-Appeal---2-3-2021.pdf

000731_806649,-ALLEN,-GREGORY-L.---CA36---Classification-Appeal---8-2-2022.pdf

000732-000739_806649-ALLEN-GREGORY-L-CL01-Audit-Checklist-Central-File-12-12-2022.PDF

19

000740-000743_806649-ALLEN-GREGORY-L-CL01-Central-Field-File-Audit-Checklist-7-13-22.PDF

000744_806649-ALLEN-GREGORY-LEE-CA35ClassificationHearingNoticeAppearanceWaiver6-1-2016.pdf

000745-000748_806649-ALLEN-GREGORY-LEE-CA24OffenderProgressionCasePlan3-24-20_Redacted.pdf

000749_806649-ALLEN-GREGORY-LEE-CA35Classification-Hearing-Notice-Appearance-Waiver1-4-18.pdf

000750_806649-ALLEN-GREGORY-LEE-CA35-ClassificationHearingNoticeAppearanceWaiver2-6-17.pdf

000751_806649-ALLEN-GREGORY-LEE-CA35ClassificationHearingNoticeAppearanceWaiver-2-23-2016.pdf

000752_806649-ALLEN-GREGORY-LEE-CA35ClassificationHearingNoticeAppearanceWaiver7-27-22.pdf

000753_806649-ALLEN-GREGORY-LEE-CA35ClassificationHearingNoticeAppearanceWaiver9-8-17.pdf

000754_806649-ALLEN-GREGORY-LEE-CA35ClassificationHearingNoticeAppearanceWaiver10-17-17.pdf

000755_806649-ALLEN-GREGORY-LEE-CA35ClassificationHearingNoticeAppearanceWaiver10-26-17.pdf

000756_806649-ALLEN-GREGORY-LEE-CA35ClassificationHearingNoticeAppearanceWaiver11-30-16.pdf

000757-000812_806649-ALLEN,-GREGORY-LEE-CA80-CCR-Packets---10-21-2015_Redacted.pdf

000813-000817_806649-ALLEN-GREGORY-LEE-CL01-Central-Field-File-Audit-Checklist-6-29-2018.pdf

000818-000821_806649-ALLEN-GREGORY-LEE-CL01-Central-Field-File-Audit-Checklist-8-3-2021.pdf

000822-000823_806649,-ALLEN,-GREG---CO01---General-Correspondence---6-24-2003.pdf

000824-000826_806649,-ALLEN,-GREG---CO01---General-Correspondence---7-1-2003.pdf

000827-000828_806649,-ALLEN,-GREG---CO01---General-Correspondence---7-4-2003.pdf

000829-000830_806649,-ALLEN,-GREG---CO01---General-Correspondence---7-8-2003.pdf

000831-000832_806649,-ALLEN,-GREG---CO01---General-Correspondence---7-14-2003.pdf

000833-000834_806649-ALLEN-GREG-CO01-General-Correspondence-7-14-2003_3903134.pdf 2

000835-000836_806649,-ALLEN,-GREG---CO01---General-Correspondence---7-24-2003.pdf

000837-000838_806649,-ALLEN,-GREG---CO01---General-Correspondence---7-28-2003.pdf

000839-000842_806649,-ALLEN,-GREG---CO01---General-Correspondence---9-14-2012.pdf

000843-000846_806649,-ALLEN,-GREG---CO01---General-Correspondence---12-16-2003.pdf

000847_806649,-ALLEN,-GREGORY---CL04---Orientation-Checklist---8-2-2014.pdf    1

000848_806649,-ALLEN,-GREGORY---CL04---Orientation-Checklist---8-28-2009.pdf   1

000849_806649,-ALLEN,-GREGORY---CL04---Prison-Orientation-Checklist---12-21-2022.pdf

000850-000851_806649-ALLEN-GREGORY-CO01-General-Correspondence-1-24-2008_Redacted.pdf

000852-000907_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-30-2007.pdf

20

000908-000910_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-28-2005.pdf

000911-000912_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---10-4-2005.pdf

000913-000933_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---12-12-2011.pdf

000934_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---12-20-2011.pdf

000935_806649,-ALLEN,-GREGORY-LEE---CL04---Orientation-Checklist---1-5-2018.pdf

000936-000937_806649-ALLEN-GREGORY-LEE-CL04-Orientation-Checklist---6-19-2018.pdf

000938-000939_806649-ALLEN-GREGORY-LEE-CL04-Orientation-Checklist-10-3-2017.pdf

000940-000970_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---1-6-2012.pdf

000971-001045_806649-ALLEN-GREGORY-CO01-General-Correspondence-1-20-2014_Redacted.pdf

001046-001102_806649-ALLEN-GREGORY-CO01-General-Correspondence-1-22-2014_Redacted.pdf

001103-001153_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---2-4-2012.pdf

001154-001163_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---2-4-2014.pdf

001164-001171_806649-ALLEN-GREGORY-CO01-General-Correspondence-2-4-2014_4032709.pdf

001172_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---3-24-2012.pdf

001173-001178_806649-ALLEN-GREGORY-CO01-General-Correspondence-3-26-2012_Redacted.pdf

001179-001180_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---4-30-2015.pdf

001181-001182_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-19-2015.pdf

001183-001188_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-22-2012.pdf

001189-001194_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-24-2012.pdf

001195-001196_0806649-ALLENGREGORYCO01GeneralCorrespondence-5-24-2012_4017483.pdf

001197_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-28-2014.pdf

001198_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-28-2014_4036298.pdf

001199-001200_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---6-4-2012.pdf

001201-001232_806649-ALLEN-GREGORY-CO01-General-Correspondence-6-17-2015_Redacted.pdf

001233-001234_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-16-2012.pdf

001235_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-16-2012_4020592.pdf

21

001236-001237_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-21-2014.pdf

001238-001243_0806649-ALLEN-GREGORYCO01GeneralCorrespondence9-21-2014_4016911.pdf

001244-001247_806649-ALLEN-GREGORY-CO01GeneralCorrespondence9-21-2014_4018807.pdf

001248-001251_806649-ALLEN-GREGORY-CO01GeneralCorrespondence9-21-2014_4018808.pdf

001252-001319_806649-ALLEN-GREGORY-CO01GeneralCorrespondence12-18-2013_Redacted.pdf

001320-001322_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---3-31-2021.pdf

001323-001327_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---4-15-2021.pdf

001328-001331_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-12-2021.pdf

001332-001335_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-24-2021.pdf

001336-001339_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---5-26-2021.pdf

001340-001346_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---6-1-2021.pdf

001347-001379_806649-ALLEN-GREGORY-CO01GeneralCorrespondence6-1-2021_14435108_Redacted.pdf

001380-001391_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---6-2-2021.pdf

001392-001415_806649-ALLEN-GREGORY-CO01GeneralCorrespondence7-8-2021_Redacted.pdf

001416-001418_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---7-27-2021.pdf

001419-001422_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-9-2021.pdf

001423-001426_806649-ALLEN-GREGORY-CO01GeneralCorrespondence9-9-2021_14737720.pdf

001427-001429_806649-ALLEN-GREGORY-CO01GeneralCorrespondence9-9-2021_14737721.pdf

001430-001434_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-14-2021.pdf

001435-001441_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-20-2021.pdf

001442-001451_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---9-21-2021.pdf

001452-001456_806649,-ALLEN,-GREGORY---CO01---General-Correspondence---12-21-2020.pdf

001457_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---2-13-2020.pdf

22

001458-001472_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence2-13-
2020_Redacted.pdf
001473_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---3-14-2013.pdf
001474_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---4-15-2015.pdf
001475_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---6-13-2013.pdf
001476_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---8-27-2012.pdf
001477-001479_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence11-8-2018.pdf
001480-001484_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence11-19-
2018_Redacted.pdf
001485-001487_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence11-20-2019.pdf
001488-001517_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence11-25-
2019_Redacted.pdf
001518-001532_806649-ALLEN-GREGORY-L-CO01-General-Correspondence-12-16-
2019_Redacted.pdf
001533-001534_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence1-28-2021.pdf
001535-001540_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence2-3-2021.pdf
001541_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence2-3-2021_14128403.pdf
001542-001544_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence3-15-2021.pdf
001545_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---3-15-2022.pdf
001546-001553_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence3-15-
2022_Redacted.pdf
001554-001559_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence3-17-2022.pdf
001560_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---3-25-2021.pdf
001561-001564_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence3-30-2022.pdf
001565-001567_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence4-19-2021.pdf
001568-001572_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence4-19-
2021_14302840_Redacted.pdf
001573-001580_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence5-6-2022.pdf
001580-001584_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence5-24-2022.pdf
001585-001589_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence6-6-2022.pdf
001590-001599_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence6-9-2021.pdf
001600-001603_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence6-9-
2021_14452373.pdf
001604-001607_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence6-9-
2021_14452403.pdf
001608-001610_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence6-10-2022.pdf
001611-001628_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence6-21-2021.pdf
001629-001632_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence7-22-2022.pdf
001633-001641_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence8-3-2020.pdf
001642-001648_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence8-19-
2022_Redacted.pdf
001649-001653_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence9-12-2021.pdf
001654_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---10-23-2022.PDF
001655-001662_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence11-2-2021.pdf
001663-001668_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence12-14-2021.pdf
001669_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---12-29-20.pdf

23

001670-001673_806649-ALLEN-GREGORY-L-CO01GeneralCorrespondence12-29-2020.pdf

001674_806649,-ALLEN,-GREGORY-L.---CO01---General-Correspondence---12-29-2020_14055184.pdf

001675-001676_806649-ALLEN-GREGORY-L-CO02OffenderCorrespondence(Kite)2-26-2020.pdf

001677-001678_806649-ALLEN-GREGORY-L-CO02OffenderCorrespondence(Kite)6-5-2020.pdf

001679_806649,-ALLEN,-GREGORY-L.---CO02---Offender-Correspondence-(Kite)---6-9-2020.pdf

001680-001681_806649-ALLEN-GREGORY-L-CO02OffenderCorrespondence(Kite)7-19-2021.pdf

001682_806649,-ALLEN,-GREGORY-L.---CO02---Offender-Correspondence-(Kite)---10-16-2022.PDF

001683-001684_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---1-4-2023.pdf

001685-001688_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---3-3-2018.pdf

001689-001690_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---3-7-2018.pdf

001691-001693_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---3-17-2021.pdf

001694-001698_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---3-21-2018.pdf

001699-001701_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---4-23-2018.pdf

001702-001719_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---6-20-2017.pdf

001720-001721_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---8-4-2021.pdf

001722-001740_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---8-12-2015.pdf

001741-001744_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---9-15-2017.pdf

001745_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---11-8-2021.pdf

001746_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---11-8-2021_14996895.pdf

001747_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---11-8-2021_14996897.pdf

001748_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---11-8-2021_14996899.pdf

001749_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---11-8-2021_14996901.pdf

001750-001752_806649,-ALLEN,-GREGORY-LEE---CO01---General-Correspondence---12-23-2019.pdf

001753_806649,-ALLEN,-GREGORY-LEE---CO02---Offender-Correspondence-(Kite)---1-17-2018.pdf

24

001754_806649,-ALLEN,-GREGORY-LEE---CO02---Offender-Correspondence-(Kite)---6-29-2018.pdf

001755_806649,-ALLEN,-GREGORY-LEE---CO02---Offender-Correspondence-(Kite)---7-9-2018.pdf

001756_806649,-ALLEN,-GREGORY-LEE---CO02---Offender-Correspondence-(Kite)---7-17-2018.pdf

001757_806649,-ALLEN,-GREGORY-LEE---CO02---Offender-Correspondence-(Kite)---12-6-2022.pdf

001758-001764_806649,-HAMAJI,-LEO---CO01---General-Correspondence---2-8-2006.pdf

001765_806649,-PORTER,-MATTHEW---CO02---Offender-Correspondence-(Kite)---11-3-2022.PDF

001766-001770_806649,-RENINGER,-KATHY---CO01---General-Correspondence---3-24-2011.pdf

001771_806649,-ALLEN,-GREG---CO03---Memos-Email---1-14-2003.pdf

001772_806649,-ALLEN,-GREG---CO03---Memos-Email---2-28-2003.pdf

001773_806649,-ALLEN,-GREG---CO03---Memos-Email---7-12-2003.pdf

001774_806649,-ALLEN,-GREG---CO03---Memos-Email---7-12-2003_4038815.pdf

001775_806649,-ALLEN,-GREG---CO03---Memos-Email---7-12-2003_4161238.pdf

001776_806649,-ALLEN,-GREG---CO03---Memos-Email---8-20-2003.pdf

001777_806649,-ALLEN,-GREG---CO03---Memos-Email---11-6-2003.pdf

001778_806649,-ALLEN,-GREG---DM01---ORCSP-Committee-Packet---4-10-2003.pdf

001779_806649,-ALLEN,-GREGORY---CO03---Memos-Email---2-24-2001.pdf

001780-001781_806649,-ALLEN,-GREGORY---CO03---Memos-Email---3-30-2006.pdf

001782_806649,-ALLEN,-GREGORY---CO03---Memos-Email---4-4-2006.pdf

001783_806649,-ALLEN,-GREGORY---CO03---Memos-Email---8-28-2007.pdf

001784_806649,-ALLEN,-GREGORY---CO03---Memos-Email---8-28-2007_4264319.pdf

001785_806649,-ALLEN,-GREGORY---CO03---Memos-Email---9-22-2014.pdf

001786_806649,-ALLEN,-GREGORY---CO03---Memos-Email---9-22-2014_4199902.pdf

001787-001789_806649,-ALLEN,-GREGORY---CO03---Memos-Email---10-4-2005.pdf

001790-001794_806649ALLENGREGORYLEEDW12SecretarysWarrantFieldOffenders4-13-23_Redacted.pdf

001795-001799_806649ALLENGREGORYLDW12SecretarysWarrantFieldOff4-13-23_16771534_Redacted.pdf

001800-001804_806649-ALLENGREGORYLDW12SecretarysWarrantFieldOff6-22-23_Redacted.pdf

001805-001809_806649-ALLENGREGORYLDW12SecretarysWarrantFieldOff6-22-23_16873819_Redacted.pdf

001810-001814_806649-ALLENGREGORYLDW12SecretarysWarrantFieldOff9-1-2023_17239704_Redacted.pdf

001815-001819_806649-ALLENGREGORYLEEDW12SecretarysWarrantFieldOff9-1-23_Redacted.pdf

001820_806649,-ALLEN,-GREGORY---ED06---Personalized-Education-Plan---2-2-2010_Redacted.pdf

001821-001822_806649-ALLENGREGORYGM08SupervisionCompCreditEligibilityScreeningTool6-30-21.pdf

25

001823-001824_806649ALLENGREGORYGM08SuperCompCreditEligibilScreeningTool6-30-21_14520957.pdf
001825-001826_806649-ALLENGREGORYGM08SuperCompCreditEligibilScreeningTool6-30-21_14520958.pdf
001827-001829_806649,-ALLEN,-GREGORY---HR07---Hearing-Report---9-12-2000.pdf
001830-001842_806649-ALLEN-GREGORY-HR10HearingDecisionAppealForm9-2-2021.pdf
001843_806649,-ALLEN,-GREGORY-L.---GM80---Attorney-Call-Request-Form---4-19-2021.pdf
001844-001854_806649-ALLEN-GREGORY-L-HR10HearingDecisionAppealForm10-7-21.pdf
001855-001861_806649-ALLEN-GREGORY-IF01SeriousInfraction1-8-2012_Redacted.pdf
001862-001868_806649,-ALLEN,-GREGORY---IF01---Serious-Infraction---1-24-2012.pdf
001869-001877_806649-ALLEN-GREGORY-IF01SeriousInfraction11-27-2017_Redacted.pdf
001878-001885_806649-ALLEN-GREGORY-IF01SeriousInfraction12-30-2013_Redacted.pdf
001886-001945_806649-ALLEN-GREGORY-L-HR15AdministrativeHearingpacket7-3-2023_Redacted.pdf
001946-002014_806649-ALLEN-GREGORY-L-HR15AdministrativeHearingpacket10-12-2023_Redacted.pdf
002015-002019_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---3-6-2020.pdf
002020-002031_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---4-3-2020.pdf
002032-002042_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---6-10-2019.pdf
002043-002048_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---10-7-2020.pdf
002049-002053_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---11-1-2019.pdf
002054-002057_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---11-5-2020.pdf
002058-002071_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---11-6-2020.pdf
002072-002078_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---11-12-2020.pdf
002079-002089_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---11-19-2020.pdf
002090-002110_806649-ALLEN-GREGORY-L-IF01SeriousInfraction11-22-2019_Redacted.pdf
002111-002124_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---12-10-2020.pdf
002125-002137_806649-ALLEN-GREGORY-L-IF01SeriousInfraction12-16-2019_Redacted.pdf
002138-002202_806649-ALLEN-GREGORY-LEE-HR15AdministrativeHearingpacket6-14-2023_Redacted.pdf
002203-002209_806649,-ALLEN,-GREGORY-L---IF01---Serious-Infraction---11-12-2014.PDF
002210-002221_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---1-15-2021.pdf
002222-002226_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---7-8-2022.PDF
002227-002232_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---7-21-2021.pdf
002233-002237_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---7-28-2022.PDF
002238-002248_806649-ALLEN-GREGORY-L-IF01SeriousInfraction8-9-2022_Redacted.pdf
002249-002252_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---9-17-2021.pdf
002253-002257_806649,-ALLEN,-GREGORY-L.---IF01---Serious-Infraction---12-30-2020.pdf
002258-002263_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---2-8-2012.pdf
002264-002266_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---2-28-2012.pdf
002267-002276_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---4-17-2018.PDF

26

002277-002282_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---4-18-2018.PDF

002283-002287_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---4-28-2010.pdf

002288-002295_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---5-1-2017.pdf

002296-002300_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---5-19-2010.pdf

002301-002302_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---5-24-2010.pdf

002303-002309_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---6-8-2010.pdf

002310-002313_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---7-19-2011.pdf

002314-002318_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---7-27-2011.pdf

002319-002326_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---9-3-2017.pdf

002327-002335_806649-ALLEN-GREGORY-LEE-IF01SeriousInfraction10-6-2017_Redacted.pdf

002336-002342_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---10-12-2017.pdf

002343-002354_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---10-15-2013.pdf

002355-002361_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---10-20-2011.pdf

002362-002366_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---10-24-2011.pdf

002367-002371_806649,-ALLEN,-GREGORY-LEE---IF01---Serious-Infraction---12-16-2013.pdf

002372_806649,-ALLEN,-GREGORY---JT05---Jail-Good-Time-Review-Form---9-15-2014.pdf

002373_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---2-2-2021.pdf

002374_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---5-4-2021.pdf

002375_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---7-9-2021.pdf

002376_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---10-1-2021.pdf

002377_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---12-12-2022.PDF

002378_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---12-12-2022_16106608.PDF

002379_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---12-12-2022_16106609.PDF

002380_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---12-12-2022_16106610.PDF

002381_806649,-ALLEN,-GREGORY-L.---JT13---Earned-Time-Not-Earned---12-16-2022.PDF

002382_806649-ALLEN-GREGORY-L-JT17---50--Earned-Release-Time-Review---2-28-2019.pdf

002383_806649-ALLENGREGORYL-JV05JRAPsychosocialDiagnosticRecordofOfficialAction2-28-2019.pdf

002384-002392_806649-ALLEN-GREGORY-LEE-IF03RestorationofGoodConductTime3-7-2016_Redacted.pdf

002393-002394_806649-ALLEN-GREGORY-L-JT01JailTimeCertification8-13-2009.pdf

002395_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---1-5-2021.pdf

27

002396_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---3-1-2021.pdf
002397_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---3-24-2020.pdf
002398_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---4-1-2021.pdf
002399_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---6-7-2021.pdf
002400_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---9-1-2021.pdf
002401_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---11-13-2019.pdf
002402_806649,-ALLEN,-GREGORY-LEE---JT13---Earned-Time-Not-Earned---12-12-2022.PDF
002403-002405_806649-ALLEN-GREGORY-L-JT16RecordofEarnedReleaseTime2-6-2017.pdf
002406-002408_806649-ALLEN-GREGORY-LEE-JT16RecordofEarnedReleaseTime2-6-2017_10466965.pdf
002409-002411_806649-ALLEN-GREGORY-LEE-JT16RecordofEarnedReleaseTime2-6-2017_10466967.pdf
002412-002423_806649-ALLEN-GREGORY-LEE-JT1750EarnedReleaseTimeReview10-2-2014_Redacted.pdf
002424-002432_806649-ALLEN-GREGORY-L-JT16RecordofEarnedReleaseTime1-15-2015.pdf
002433_806649-ALLENGREGORYL-JV05JRAPsychosocialDiagnosticRecordofOfficialAction2-28-2019.pdf
002434-002436_806649-ALLENGREGORYL-LG01JudgmentSentenceWarrantCommitAppendices3-13-2002.pdf
002437-002455_806649-ALLENGREGORYL-LG01JudgmentSentenceWarrantCommitApp6-28-21_Redacted.pdf
002456-002472_806649-ALLENGREGORYLEELG01JudgSentenceWarrantCommitApp9-24-01_Redacted.pdf
002473-002476_806649-ALLENGREGORYLG01JudgSentenceWarrantCommitAppendices5-16-05.pdf
002477-002489_806649,-ALLEN,-GREGORY---LG07---Mandate---3-14-2012.PDF
002490_806649,-ALLEN,-GREGORY---LG28---General-Court-Order---7-12-2005.pdf
002491-002569_806649-ALLEN-GREGORY-LG28-General-Court-Order-8-18-1999_Redacted.pdf
002570-002575_806649,-ALLEN,-GREGORY---LG28---General-Court-Order---12-12-2013.PDF
002576-002589_806649-ALLENGREG-LG01JudgmentSentenceWarrantCommitApp9-28-14_Redacted.pdf
002590-002593_806649-ALLENGREGORYLEE-LG01JudgmentSentenceWarrantCommitApp12-4-00_Redacted.pdf
002594-002601_806649-ALLENGREGORY-LG01JudgmentSentenceWarrantCommitApp5-12-05_Redacted.pdf
002602-002610_806649-ALLENGREGORYLG01JudgSentenceWarrantCommitApp6-16-05_Redacted.pdf
002611-002621_806649-ALLENGREGORYLG01JudgSentenceWarrantCommitApp7-10-09_Redacted.pdf
002620-002648_Behavior Observations (BOE)_Redacted.pdf
002622-002624_Release Plan 1_Redacted.pdf

28

002625-002628_Release Plan 2_Redacted.pdf
002649-002720_Chrono 1_Redacted.pdf
002721-002792_Chrono 2_Redacted.pdf
002793-002833_Chrono 3_Redacted.pdf
002834-002843_Grievances_Redacted.pdf
002844-002845_Infraction Summary_Redacted.pdf
002846-002898_Legal Face Sheet_Redacted.pdf
002899-002924_Movement Schedule_Redacted.pdf
420140 - Housing and Room Assignment Policy.pdf
690400 - Individuals with Disabilities Policy.pdf
Allen 806649.pdf
Allen G Stip for Exam_signed.pdf
Allen, Greg Record Review Dr. Dechter.pdf
AnswerToAmendedComplaint.pdf
BOE records review - Curl 8-2024.xlsx
CoverLtrToDr.Paparozzi2-11-25.pdf
Curl, MaryAnn, M.D.  1-24-25_full_ex_CERTIFIED TRANSCRIPT.pdf
DefFirstRogsRFPsToPltf.pdf
Dkt 021 AmendedComplaint.pdf
Dkt 039 OrderSettingJuryTrialAndPretrialDates.pdf
Dkt 40 OrderGrantingDef's2ndMtnForJudmentonthePleadings.pdf
end000307-000308_806649,-ALLEN,-GREGORY---AD03---Administrative-Segregation-
    Review---3-28-2012.pdf
enhanced close custody unit.pdf
experts.docx
health screening policy.pdf
Pla. Ans. to Def 1st RROGs and RFPs 9.13.24.pdf
PltfExpWitDiscl.pdf
PltfRogsRFPsWithAnsObjThereto.pdf
Privileged - ADA and Single Cell  .msg
Privileged - Behavior Observations.msg
RFP 3.pdf
RFP 4.pdf
RFP 7.1.pdf
RFP 7.2.pdf
RFP 7.3.pdf
RFP 7.4.pdf
RFP 8.pdf
RFP 18.pdf
000001-000002_Behavior_And_Programming_Plan_Formatted_Print 1.pdf
000001-000025_MovementSchedule.pdf
02-028 - Single Cell Request.docx
000003-000004_Behavior_And_Programming_Plan_Formatted_Print 2.pdf
000005-000006_Behavior_And_Programming_Plan_Formatted_Print 3.pdf
000007-000008_Behavior_And_Programming_Plan_Formatted_Print 4.pdf
000009-000010_Behavior_And_Programming_Plan_Formatted_Print 5.pdf

29

Gmail - FW_ Allen v. DOC.pdf
Allen 806649 Correspondence FRMT Appeal 4.7.2018
Allen 806649 Correspondence 3.31.2021
Allen 806649 Correspondence 5.12.2021
Allen 806649 Correspondence 5.24.2021
Allen 806649 Correspondence 5.26.2021
Allen 806649 Correspondence 5.27.2014
Allen 806649 Correspondence 5.31.20123
Allen 806649 Correspondence 10.17.2012
Allen 806649 Correspondence 10.17.2012_2
Allen 806649 Correspondence 12.21.2011
Allen 806649 DEP Letter 2.4.2014
Allen 806649 DEP Letter 4.15.2021
Allen 806649 DEP Letter 12.18.2013
Allen 806649 DEP Letter 12.21.2020
Allen 806649 Max Correspondence 1.28.2021
Allen 806649 Message Correspondence 5.27.2014
Allen 806649 SEC Letter 2.4.2014

## Opinions

The opinions expressed in this report are based on the following: the documents reviewed; my professional career experiences; my academic training; consultations, conference presentations, and trainings in 44 states as well as in several other countries; and involvement in national and international professional associations.

## Factual Background - Context

- Since 2000, when Gregory Allen (Allen) (Allen was sentenced to 240 months under the Offender Accountability Act (OAA), Allen was in and out of prison several times as a result of his failures while supervised by the Department of Corrections (DOC), under community custody sentences and also for new crimes.
- Since his 240 month sentence under the OAA in 2000, the longest period of time that Allen was able to be successful remaining in the community, while under the jurisdiction of the DOC, was 19 months.
- Allen's comportment during his stints of community custody as well as his periods of prison confinement was stubbornly recalcitrant.
- Allen's behaviors both in and out of confinement demonstrate that Allen did not believe that rules and regulations that apply to other individuals under court and/or DOC jurisdiction did not apply to him.
- According to Allen's Community Corrections Officer (CCO), Allen was defiant during office visits, and he showed little regard for the conditions of his supervision. Allen was also disrespectful to office staff as well as his CCOs when he reported to the DOC office of his community custody supervision. **These behaviors are identical to Allen's behaviors during his periods of prison confinement.**
- **Allen's most recent release from prison to community custody was in January 2023. As in the past, Allen's adjustment to community supervision was extremely poor**

30

and resulted in ten violations up until March 6, 2025 when a DOC Secretary's Warrant was issued because Allen absconded from community custody supervision.

- As of the writing of this report, Allen is still missing and a DOC Secretary's Warrant remains outstanding.
- While incarcerated at various times between 2000 and 2023, Allen was charged with 130 serious disciplinary infractions.
  - Based on my 50 years of correctional practitioner, academic/scholarly experiences, as well as national and international professional involvement, Allen's disciplinary record is an extreme outlier – on the high side.
- The DOC moved Allen approximately 500 times across and within prisons during the course of his prison confinement in its efforts to find the best pathways to accommodate his defiant behavior as well as his needs and personal desires.
  - Based on my 50 years of correctional practitioner, academic/scholarly experiences, as well as national and international professional involvement, I have never countenanced anything close to 500 movements of an inmate – even for individuals serving life sentences.
  - The excessive number of disciplines and movements demonstrates that the DOC devoted significant time and attention to Allen.

## Opinions

**Opinion: The DOC did not fail to reasonably accommodate Gregory Allen's medical/mental health needs during his incarceration.**

**Opinion: The Doc did not ignore Allen's claims that he qualified for reasonable accommodations under American with Disability Act (ADA).**

**Opinion: The DOC frequently and appropriately evaluated Allen's housing assignment needs as well as Allen's personal and ongoing desire to be housed in a general population single cell.**

**Opinion: The DOC's policies regarding inmate classification, cell assignment, and use of discipline in response to infractions were consistent with best practices in corrections. With regard to its treatment of Allen during his periods of incarceration, the DOC was at all times fastidious about reviewing and assessing the totality of information presented during classification reviews, cell assignments, and issuance of disciplinary actions involving Allen.**

**Opinion: Throughout Allen's terms of imprisonment, the DOC complied with its own policies and national best practices regarding Allen's security and housing requirements.**

**Opinion: The DOC was vigilant in its attempts to assure that Allen received appropriate reviews, assessments, and housing assignments during his several terms of confinement.**

**Opinion: The DOC made numerous attempts to avoid custody assignments for Allen that affected his ability to earn Good Time Credits (GTCs). The DOC also made numerous attempts to provide Allen with plans for pathways to restore GTCs that were lost due to Allen's numerous infractions. Notwithstanding the DOCs efforts to provide Allen with**

31

**pathways for restoration of lost GTCs, Allen's ongoing non-compliant behavior made the DOC pathways for restoration of GTCs moot.**

**Opinion: Allen has an extensive history of making claims that he cannot support and/or that cannot be verified.**

**Opinion: Allen was intentionally disruptive during the periods of his prison confinement for the sole purpose of attempting to "do his time his way."**

- *Note: The classification reviews and decisions referred to below were conducted by DOC classification officers as well as Facility Management Review Teams (FMRT). The DOC's classification process involves participation of individuals with knowledge about an inmate's mental and physical health, programming and custody needs, and often the inmate being classified. As well, the DOC's classification review process involves additional reviews at the highest level of the DOC in certain circumstances. These high level reviews are conducted by at DOC headquarters by the HQ Max Custody Multi-Disciplinary Review Team. On several occasions during his incarceration, classification decision made about Allen at local prisons were reviewed by the HQ Max Custody Multi-Disciplinary Review Team.*

**Facts in support of the aforementioned opinions:**

Allen's inmate classification and administrative segregation reviews:

- In its ongoing efforts to balance Allen's needs with the effective administration and operational effectiveness of its prisons, the DOC tried assigning Allen to several different prisons (e.g., Washington Corrections Center (WCC); Stafford Creek Corrections Center (SCCC); Monroe Corrections Center (MCC); Coyote Ridge Corrections Center (CRCC), and other DOC locations, in its attempts to manage his behaviors and find a suitable housing assignments for him.
- The following facts are some examples (the files reviewed include many more examples) of the DOC's rigorous attentiveness to Allen's needs in the context of assuring appropriate assessment and responses to his claims as well as the operational effectiveness of the prisons in which he was housed during his various terms of incarceration:
    - 1/15/2003: Custody Review Full Version Initiated on 1/15/2003.
    - 2/10/2003: Review by Facility Management Review Team (FMRT) custody classification as Minimum – long term. Reason for override given – Medical.
    - 7/1/2003: Custody Review Full Version Initiated.
    - 7/9/2003 Classified Medium.
    - 8/6/2003: Custody Review Full Version Initiated. Classified Close Custody.
    - 9/4/2003: Custody Review Full Version Initiated. Classified Close Custody.
    - 11/5/2003: Custody Review Full Version Initiated. Classified Close Custody.
    - 7/11/2003: Custody Review Full Version Initiated. Classified Minimum Pre-release.

- 8/5/2003: Custody Review Full Version Initiated. Classified Minimum Custody Pre-release.
- 9/2/2005: Custody Review Full Version Initiated. Classified Minimum Pre-release.
- 10/2/2005: Custody Review Full Version Initiated, Classification override to Close Custody for institution security reasons.
- 10/31/2005: Custody Review Full Version Initiated. Classified Close Custody.
- 7/11/2005: Custody Review Full Version Initiated. Classified Minimum Custody Pre-release.
- 3/23/2006: Custody Review Full Version Initiated. Classified Close Custody.
- 8/8/2006: Custody Review Full Version Initiated. Classified Close Custody.
- 9/8/2006: Custody Review Full Version Initiated. Classified Medium Custody.
- 1/5/2007: Custody Review Full Version Initiated. Classified Minimum Custody long-term for medical reasons.
- 7/11/2007: Custody Review Full Version Initiated. Classified Medium Custody.
- 8/20/2007: Custody Review Full Version Initiated. Classified Close Custody.
- 8/26/2009: Custody Review Full Version initiated.
  - **Crime noted for intimidating a judge and infraction 704 for assault on staff 11/6/2007**; Classified Medium Custody.
- 8/29/2009: Allen attended classification meeting. Allen wants transfer to MCC for health reasons.
  - It is noted that Allen has several leg, mental health (MH), and mobility issues (Allen's leg injuries are the result of a motorcycle accident in the 1990s).
- 10/5/2009: Classification Review. Classified as Medium Custody.
  - Allen stated he went to court 2007; released from prison 2008; then back to prison.
- 4/29/2010: Custody Review Full Version initiated. Classified Minimum Custody – MI3.
  - Allen at MCC Washington State Reformatory Unit (MCC-WSRU). Allen wants to stay here.
- 5/10/2010: Allen attended the classification meeting at CRCC. The classification committee recommended max custody and place in Intensive Management Unit (IMU).
  - **Allen stated that he won't live with anyone.**
  - Allen refused to leave administrative segregation. Allen was infracted three times for refusing a housing directive.
  - CRCC does not have general population single cells.
  - **Mental Health and medical staff stated that there is no basis for a single cell housing assignment.**
  - Because Allen refused to be housed per the classification committee decision, he was housed in administrative segregation.
  - The classification committee recommended transfer to WSP Main.

- o 5/25/2010: Allen housed at CRCC.
  - ▪ Allen infracted for 724 – refusal of cell housing on 4/28/2010.
- o 6/15/2010:  Allen arrived at WSP from CRCC.
- o Allen placed in administration segregation for protective reasons (pending investigation). Allen fears for his safety (per Lt. Humphrey).
- o **Classification Committee wrote that Allen has a history of making statements for his benefit which cannot be verified.**
- o 6/17/2010: Allen housed at WSP. Retain in administrative segregation pending further review.
- o 6/22/2010: Allen housed at WSP. Retain in administrative segregation until further review.
  - ▪ Allen directed to provide a specific statement about any threat he may feel and the reasons therefore.
- o 6/29/2010: Allen housed at WSP. Retain in administrative segregation until further review.
- o 7/6/2010: Allen housed at WSP. Retain in administrative segregation until further review.
- o 7/13/2010: Allen housed at WSP. Retain in administrative segregation until further review.
- o 7/20/2010: Allen housed at WSP. Retain in administrative segregation until further review.
- o 7/27/2010: Allen housed at WSP. Classificaton Review recommends retain Allen in administrative segregation pending assignment to the Intensive Management Unit (IMU). Assign Max Custody and override Intensive Management Status (IMS).
  - ▪ *Note: The purpose of IMS is to address behaviors that pose a significant risk to others or the facility's operations. This can include chronic behavioral issues, the need for protective custody, or a history of violent or disruptive behavior.*
  - ▪ Allen refused to accept housing assignment at CRCC.
  - ▪ Allen was referred to IMS at CRCC but was denied and released to Close Custody at WSP.
  - ▪ At WSP, Allen continues to refuse housing assignment and states he has protection concerns.
  - ▪ **Allen "has a history of making up statements for his own benefit and the only information he can provide cannot be verified."**
- o 7/30/2010: Allen housed at WSP. Custody Review Initiated.
- o 8/24/2010. Allen housed at WSP. Retain in administrative segregation.
- o 10/15/2010. Allen housed at WSP. Retain in administrative segregation.
- o 12/14/2010. Allen housed at WSP.  30-day administrative segregation review. Decision: Retain in Administrative Segregation.
  - ▪ 4/6/2011: Allen attended classification meeting. Allen stated that he was victim of PREA (Prison Rape Elimination Act) assault during the early

34

years of his incarceration. Allen reported that the assault happened at WCC. Allen did not provide specific details about the assault. *Note: there was no documentation in the files reviewed that corroborated Allen's PREA assault claims.*

- Allen designated as Intensive Management Treatment/Status (IMS). The classification committee directed Allen to complete the DOC's Offender Change Program (OCP).

o 8/5/2011: Custody review initiated. Allen now housed at SCCC.

o 1/11/2011. Allen housed at WSP. 30-day administrative segregation review. Decision: Retain until completion of IMS expectations.

o 11/14/2011. Allen housed at SCCC. Decision: Retain in administrative segregation pending further review.

o 11/16/2011. Allen housed at WSP. Decision: Retain in administrative segregation pending further review.

o 11/21/2011. Allen housed at SCCC. Retain pending investigation.
  - Allen states that he feels threatened.

o 11/21/2011. Allen housed at SCCC.
  - Allen submitted a letter asking for reasonable accommodation – single cell. Allen wants transfer to MCC Twin Rivers Unit (TRU).

o 11/28/2011. Allen housed at SCCC. Decision: Retain in administrative segregation pending investigation about threat fears.

o 12/5/2011. Allen housed at SCCC. Retain in administrative segregation pending investigation about threat fears.

o 12/12/2011. Allen housed at SCCC. Retain pending new Custody Facility Plan (CFP) and transfer to suitable facility.

o 12/19/2011. Allen housed at SCCC. Custody Facility Plan by Facility Management Review Team (FMRT) complete. Transfer order requested.

o 12/21/2011**: Letter to Allen from Holly Delcambre (Delcambre), DOC ADA Compliance Manager (Re: response to letter from Allen sated November 23. 2011).**
  - Allen has claimed discrimination against him because he is not being accommodated with assignment to a single cell in general population for his medical/mental disability.
  - **Delcambre informs Allen that there is no documentation to support the ADA accommodation as requested by Allen.**
  - **Delcambre also reminds Allen that the ADA Coordinator at the facility where he is housed (CPM Jones at SCCC) previously informed Allen that he does not qualify for the accommodation requested by Allen.**

o 12/30/2011. Allen housed at SCCC. CFP and FMRT complete. Transfer order requested.

o 1/9/2012: Allen at WCC R4. Pre-hearing for placement in administrative segregation.

35

- Allen refused his cell assignment and a direct order to disperse (509).
  - o 2/12/2012: Allen housed at MCC TRU. This is an administrative review for continued placement in administrative segregation.
    - Allen is in administrative segregation for threatening staff (506).
    - In his defense, Allen refers to the following:
      - DOC Policy 400.020 Capacity/Bed Management,
      - Dr. Shoemaker's 2002 "warning" that Allen is likely to be victimized by others and that Allen is entitled to single a cell in general population (Dr. Shoemaker works at WCC).
      - Allen stated that Dr. Shoemaker recommended a general population single cell assignment because such a housing assignment would permit Allen to have social interaction with others.
      - The classification committee recommended placement in administrative segregation pending investigation ad recommendation of Correctional Unit Supervisor (CUS) Farrell.
  - o 2/29/2012: Allen housed at MCC TRU. This is an administrative segregation review. Classification Committee recommended that Allen be retained in administrative segregation.
    - Allen advises that in 2002 Dr. Shoemaker said he needs single cell because he is likely to be exploited/victimized. Allen says this was ignored and he was placed in a cell with another inmate. Allen stated that Dr. Shoemaker's report was ignored.
      *Note: Several medical/mental health and ADA accommodation reviews occurred subsequent to the review referenced by Allen with regard to Dr. Shoemaker. These subsequent reviews concluded that Allen did not need to be placed in a single cell for medical/mental health and/or ADA issues.*
    - Allen claims that he was physically assaulted and sexually victimized by another inmate. Allen did not provide specific details about this assault. *Note: there was no documentation in the files reviewed that corroborated Allen's claim.*
  - o 3/7/2012: Allen housed at MCC TRU. This is an administrative segregation review that was investigated by CUS Ferrell.
    - Correctional Unit Supervisor (CUS) Farrell is aware of Allen's claims about his need for a general population single cell assignment.
    - **CUS Farrell noted that Allen's claims were investigated and that they were no longer valid.**
    - Allen was advised in January 2012 that he would have a cell partner at MCC TRU after 60 days.
    - **Allen stated "…if they put someone in my cell, I will kill him."**
    - Allen was infracted and found guilty on 2/13/2012.
    - Allen stated he has mental health concerns and that he wanted to go to MCC SOU (Special Observation Unit).

36

- o 3/14/2012: Allen housed at MCC TRU. This is an administrative placement review. Recommendation was to retain Allen in administrative segregation.
- o 3/17/2012: Allen housed at MCC TRU. Classification review recommendation: Close Custody.
- o **May 31, 2012: Letter from HQ Classification Officer John Campbell (Campbell) to Allen. (Re: Allen's letters requesting single cell housing and other claims related to health and ADA claims) Campbell references correspondence to Allen on May 24 and May 31, 2012.**
    - **Campbell reminds Allen that the issues raised in Allen's letter have been addressed numerous times in the past.**
    - **Campbell reminds Allen that he (Campbell) made arrangements in the past for Allen to be placed in a single cell SCCC and MCC TRU until a suitable cellmate could be located by Allen.**
    - **Campbell reminds Allen that in the past he was offered a 60 day single cell assignment at MCC TRU and that he (Allen) refused this assignment. Allen's refusal caused him to be placed into Intensive Management Status (IMU).**
    - **Campbell also reminds Allen that HQ has responded to these same issues in correspondence dated as follows: 12/13/2011; 12/21/2011; 02/03/2012; 3/265/2012; and 5/22/2012.**
- o **9/17/2012: Letter to Allen from Holly Delcambre (Delcambre), DOC ADA Compliance Manager (Re: Allen's request to be housed in a unit with no stairs).**
    - **Delcambre reminds Allen of the procedure to follow to request an accommodation for being housed in a unit without stairs.**
    - **Delcambre provided Allen with the names of ADA coordinators at local prison facilities should Allen need further assistance with ADA accommodation requests.**
- o 9/25/2013: Allen housed at MCC IMU.
    - Refused cell assignment.
- o 9/25/2013: Allen housed at MCC/WSR (Washington State Reformatory).
    - Allen placed in administrative segregation for tampering with cell door. Infraction later downgraded to not following rules. Allen released from administrative segregation on 10/15/2013.
- o 10/15/2013: At the time of Allen's release from administrative segregation, Allen immediately refused a cell assignment.
    - Allen was infracted for infraction 724 and sanctioned 10 days in administrative segregation.
    - Allen was released from administrative segregation on 10/24/2013 and he again refused his cell assignment.
    - Allen was again charged with infraction 724 and placed in an Intensive Management Unit (IMU).
- o 11/7/2013: Classification Review. Allen currently classified Minimum Custody.

37

- CUS Miller reported on September, 13, 2013 that Allen was placed in administrative segregation pending disciplinary action for tampering with a locking device (charge later downgraded).
- After the disciplinary process was completed, Allen was slated to release to the IMU at WSR (Washington State Reformatory). Allen refused his housing assignment at WSR.
- As a result of his refusal, Allen was infracted.
- After completion of this disciplinary infraction time, Allen again refused to release from administrative segregation and is now being referred to MAX/IMS.
- Allen stated that he wanted to go to IMS because it is a level ground surface. Allen stated that he cannot do stairs.
- Allen stated that there is a difference between [refusing] to leave administrative segregation and asking for a reasonable accommodation.
- He stated that there is a minimum custody unit at MCC Tru and that he wants to go there.
- Allen stated that MCC medical staff are not professionals.
- **Allen had paperwork from 1997 from an orthopedic doctor and he (Allen) said that medical staff are "fucking clowns."**
- Allen stated that medical staff is not working with him and that he has used the grievance process.
- Allen wants his crutches and medications back.

o 12/3/2013 (Lisa Medlin): Deny max custody. Maintain Minimum. Transfer to CRCC General Population. **Allen should be housed where there are no stairs.**

o 12/16/2013: Allen housed at WCC. Allen refused housing assignment.

o 12/18/2013: Letter to Allen from HQ Classification Officer Joiann DeHaven (DeHaven).
   - **Allen complained about being placed in CRCC because CRCC cannot accommodate his disabilities**.
   - **DeHaven explained to Allen that he (Allen) does not meet the criteria for single cell assignment** (Policy 400.020). To satisfy the requirements of this policy, Allen would have to fit into one of the following categories: severe medical disability; serious mental illness; sexual predator; likely to be exploited or victimized by others; other special needs; and/or maximum custody. **DeHaven noted that a review of Allen's file indicates that Allen does not meet the criteria for single cell housing.**

o 12/24/2013: Allen housed at WCC IMU. Reclassification and transfer to more suitable facility.

o 12/30/2013: Multi-disciplinary Facility Management Review Team met regarding Allen.
   - **Inmate has established a pattern of disobedience and disregard for facility operations. Not just at this facility. Allen had incurred three more infractions for the same reasons/behaviors. Allen's demanding**

38

> **personae coupled with his unwillingness to work with staff, speaks of a purposeful attempt by him (Allen) to control his environment.**
>    - Recommend IMS/Max Custody and refer to HQ for review.
> - **1/23/2014:** Allen housed at WCC.  FMRT Custody Plan Review – addendum.
>    - Allen stated that he has disabilities and that he needs single cell housing.
>    - Allen demoted from Minimum to Medium Custody as a result of non-disciplinary infraction behaviors.
>    - Superintendent concurs with FMRT.
>    - HQ classification review team decision: Maintain Minimum Custody and transfer to SCCC.
> - **February 4, 2014: Letter to Allen from DOC Deputy Director Earl Wright (Wright) responding to Allen on behalf of the Secretary of the DOC.**
>    - **Wright responded to the following issues raised by Allen: preferred drugs; single man cell; ADA accommodations; mental health; and staff misconduct.**
>    - **Wright responded in detail to each of Allen's concerns/complaints.**
>    - **Wright noted specifically that mental health appraisals were conducted on Allen on 8/28/2013, 12/30/2013, and 1/20/2014, and none of these assessments indicated the need for ADA accommodations.**
>    - **Regarding Allen's request for the imminent need for psychotropic medications, Wright noted that Allen last took psychotropic medications five years ago (2009).**
>    - **Regarding Allen's request for a single cell, Wright stated that Allen, like most inmates, does not qualify for single cell placement.**
>    - **Regarding staff misconduct, Wright found no basis to concluded that Allen was mistreated by DOC staff.**
> - 2/20/2014**:** Stephanie Baltzell. This is Allen's 5th admission to prison. Allen believes his rights are being violated by DOC for not accomodating his ADA needs. Allen stated that he is not refusing cell assignments. He is asking for ADA accomodations. **Allen has consistently had behavioral concerns while incarcerated (see infraction history).** Recommendation: maintain Minimum Custody retain in appropriate housing at SCCC (per MDT).
> - 2/27/2014: Multi-disciplinary Review Team Review. Maintain Minimum and retain at SCCC.
>    - Allen has been working with mental health staff to get an HCR to live alone in a single cell.
>    - Mental Health Provider (MHP) Coplin, Correctional Program Manager (CPM) Bohon, and American with Disabilities Act (ADA) Coordinator Jones were present. All of these individuals informed Allen that he cannot be referred for a single cell at SCCC due to bed space. MHP Coplin informed Allen that he cannot refer Allen for a single cell because MH does not approve single cell assignments.

- Allen was informed that he needs to find a compatible cellmate and then request a move.
- **Allen stated that he will refuse to "cell in" and he demanded that the team take his mental health issues into account and give him a single cell assignment.**

- o 3/11/2014: CPM Bohon: Maintain Minimum Custody and retain at SCCC.
- o **May 27, 2014: Letter to Allen from SCCC** Superintendent Pat Glebe (Glebe) (this is a response to Kiosk message from Allen).
  - **Allen has again asked the DOC to address his ADA and mental health issues.**
  - **Glebe reminds Allen that his concerns have been addressed in the past.**
  - **Glebe informs Allen that mental health staff at SCCC has evaluated Allen and found him not to be eligible for the treatment that Allen is requesting this matter was also addressed in a letter from Glebe to Allen on May 23, 2014).**
  - **Glebe also reminded Allen that Allen's ADA concerns were addressed in letters from Glebe to Allen on April 14 and April 22, 2014.**
  - **Glebe informs Allen (again) that his claims for an ADA accommodation were reviewed by the SCCC ADA Coordinator (HSM Goodenough) and that it was decided that Allen did not need ADA accommodations.**

- o 2/3/2015: Allen housed at SCCC. Classification Review. Retain Minimum Custody at SCCC.
  - Last major infraction was 12/20/2013.
  - Allen in compliance with current facility plan.
  - Allen willing to work on pathway to restore GTCs.
  - If Allen's cellmate moves out, he wants time to identify another suitable cellmate.
  - Behavior improved during this review cycle.  Corrections Officer Hattell stated that "offender Allen keeps to himself, he is not a problem in the unit."
  - Internal Investigation Unit Investigator Blumber and Psychological Associate Coplin support pathway for restoration of GTCs.
  - 8/13/2015: Allen housed at SCCC.
  - Allen terminated from his food services job assignment for theft of food. Prior to this infraction, Allen had been complying with the requirements of his plan for restoration of GTCs that he lost for several infractions. This new charge, as well as additional infraction behaviors, necessitated another GTC pathway restoration plan.
  - Allen's pathway plan required him to live in a two person cell and not refuse any housing assignment.

- o 4/26/2016: Allen housed at SCCC H4.

40

- o 6/9/2016: Allen housed at SCCC. Classification Review.
    - Allen expressed concern that his medical needs were not being met.
    - Allen stated that his is pursuing legal action.
    - Allen wants 185 days of lost time restored.
    - Allen has concerns about housing due to past issues.
    - Allen does not want to move from his cell, and he is happy with his current cellmate.
    - Allen has done well during this review period. No major infractions have been incurred and he has been respectful to other inmates and staff.
    - There have been some housing compatibility concerns during this review period (well documented history of housing concerns).
    - Allen has worked diligently to find an appropriate cellmate.
    - PREA concerns are documented in the record.
    - Allen does not qualify for single cell assignment (per single cell screening format).
    - Allen was informed that he does not qualify for reductions of time to be served per 5990.
- o 6/9/2016: The FMRT at SCCC met to discuss CFP change and a new pathway for restoration of GTCs. Classification Decision: Maintain Minimum Custody and retain at SCCC.
    - **Allen informed that the FMRT will no longer discuss why Allen is not eligible for 5990 prison time reductions and why Allen's classification is High Violent (HV) since these issues have been addressed and explained to Allen numerous times by numerous staff.**
- o 6/14/2016: Jean Anderson reviewed and approved the FMRT decisions for custody classification and pathway for restoration of GTCs.
- o 1/30/2017: Allen housed at SCCC H4. Custody Review.
    - Allen continues to have issues with identifying a suitable cellmate.
    - Corrections Officer Willimas notes that Allen is needy.
- o 7/31/2017: Allen housed at SCCC H4. Custody Review.
- o 9/3/2017. SCCC IMU. Allen placed in administrative segregation for fighting with another inmate.
- o 9/12/2017: Allen housed at SCCC IMU. Classification Committee Review. Decision: maintain in Minimum Custody at SCCC and transfer to another minimum custody facility.
    - Allen wants to stay in SCCC IMU until he is released from prison.
    - Allen stated that he has issues with his cellmate and that he wants a single person cell.
    - Intelligence and Investigations Unit (IIU) Investigator Blumberg does not support Allen's transfer at this time.
    - Corrections Officer (CO) McKinney does not support a transfer. **CO McKinney stated that when he interacts with Allen, he (Allen) has "an attitude."**

41

- **It was noted that Allen's single person screening was reviewed and that the finding was accurate (Allen does not meet the criteria for single cell placement).**
        - Allen is currently housed in segregation for fighting with another inmate (infraction 505).
    - 10/6/2017. Allen housed at MCC IMU.
        - Allen refused cell assignment.
    - 10/26/2017: Allen is currently housed at MCC IMU.
        - Allen housed in administrative segregation pending transfer due to infraction behavior.
        - Allen does not want to attend his FMRT meeting.
        - Allen prefers being demoted to max custody for an IMS program.
        - Allen's facility preference is MCC IMU.
    - 12/1/2017: Allen housed at WCC IMU. Classification Review. Decision: Demote to Close Custody.
        - This review involved an extensive discussion about requirements for a new pathway for restoration of GTCs.
    - 1/5/2018 Allen is housed at WSP Main. Classification Review.
        - DOC Counselor Bradley Bowman met with Allen and reviewed intake materials.
        - Allen waived his appearance at his FMRT review hearing.
        - Allen currently housed in WSP/HSB (Health Services Building) for medical reasons.
        - **Allen is currently assigned to administrative segregation for "threat to orderliness of Facility."**
        - Allen has a GTC restoration pathway plan already in place (4/16/2016).
    - 1/17/2018: Correspondence (response to Allen's Kite of 3/2/2018) to Allen from Ann Adams (Adams), Unit Manager, WSP; CC to Kevin Bowen (Bowen), Classification Officer 3 (CC3); Central File. Appeal of FMRT Decision (3/2/2018).
        - Allen advises that Luke Wagoneer assessed Allen in the past and said that Allen should be placed in a single cell.
        - Allen states that CC 3 Bowen was made aware of Wagoneer's recommendation.
        - Allen was informed that his FMRT decision was made by the HQ Multi-Disciplinary Team and that decisions made by the HQ Multi-Disciplinary Team cannot be appealed.
    - 2/15/2018 Allen housed at WSP Main. Classification Review Committee. Decision: Maximum Custody.
        - **HCM Forss (DOC ADA Compliance Coordinator) sat on this classification committee.**
        - Allen wants a classification override so that he can be housed at MCC TRU.

42

- Allen states that he refused housing assignments because a two-person cell is not a reasonable accommodation for his medical issues.
- Counselor Bradley Bowman noted that Allen is currently housed at WSP/HSB due to refusal of housing assignment.
- Allen is currently on administrative segregation status.
- Allen has a GTC restoration pathway plan already in place (4/16/2016).
- **Allen has been infracted three times in the past six months for refusing a housing assignment. As well, one additional infraction for refusing a housing assignment was pending adjudication.**

- **2/16/2018: FMRT Review. This review team included HCM Karen Forss (DOC ADA Compliance Coordinator).**
  - Allen has continually refused all placement in general population.
  - Allen is attempting to manipulate placement/housing decisions.
  - **Refusal of housing assignments is a pattern for Allen.**
  - **Allen has received numerous custody overrides and then gets infracted and refuses housing unless he gets another override. Allen is currently demonstrating this same behavior by requesting an override to MCC TRU.**

- **3/17/2018: Letter to Allen from WSP Superintendent Donald Holbrook (Holbrook).**
  - Holbrook reviewed Allen's claims (Re: his appeal of an FMRT classification dated March 18, 2018) that Psychology Associate Luke Wagoneer (Wagoneer) advised placement of Allen in a single cell in general population and also that Classification Officer Kevin Bowman (Bowman) was informed of Wagoneer's decision.
  - **Holbrook informed Allen that the March 18, 2018 FMRT decision was reviewed by the HQ Max Custody Multi-Disciplinary Review team and the decision was to place Allen in Max custody.**
  - **Holbrook further states to Allen that Allen surely knows that the reason for his placement into Max custody was Allen's refusal to accept general population housing.**
  - Holbrook further advises Allen that decisions made by the HQ Max Custody Multi-Disciplinary Review Team cannot be appealed.
  - Holbrook advises Allen that he has been approved for transfer to SCCC IMU.
  - Holbrook urges Allen to work with his classification counselors at WSP and upon arrival at SCCC.

- 4/26/2018: Allen currently housed at WSP. Classification Review. Subsequently reviewed by HQ on May 4, 2018.
  - Allen currently housed at WSP/HSB.
  - Allen currently assigned to Maximum Custody.
  - Allen has been approved for transfer to SCCC IMU.

43

- HQ review (by Pfaff) of local classification committee decision overrode the local decision. HQ recommended retain at WSP in Maximum Custody status.

o 5/3/2018: FMRT Classification Review. Decision: Maintain Maximum Custody.
- Allen must complete all facility and Behavioral Performance Plans and accept placement in general population.
- Allen continues to accept placement in general population unless he is assigned to a single person cell.
- Allen does not meet the criteria for placement in a single person cell.
- Allen has a pathway for restoration of GTCs already in place.

o 5/4/2018: Classification Review by HQ. Decision: retain at WSP.
- In February 2018, Allen was assigned Maximum Custody for his refusal of placement in general population.
- Allen is attempting to manipulate placement/housing assignments.
- Allen has received numerous custody classification overrides.
- Since Allen's assignment to Maximum Custody, it was determined that Allen was more suitable for placement at WSP IMU for treatment.

o 6/25/2018 SCCC IMU.
- Allen arrived at SCCC IMU on June 4, 2018 for his fifth prison incarceration that started on June 20, 2000.
- Allen was encouraged to attend upcoming FMRT meeting. Allen agreed to attend. Allen stated that he understood all recommendations.
- **Allen was assigned to Maximum Custody on May 18, 2018 after receiving two serious infractions; one for throwing objects and another for failing to take medication.**
- Previous recommendation from HQ Maximum Custody Multi-Disciplinary Review Team was to maintain Maximum Custody, transfer to SCCC, and maintain current custody status until Allen accepts placement in general population or begins to engage with mental health staff.

o 9/15/2018. Allen housed at SCCC IMU.
- Allen refused cell assignment.

o 10/12/2018 Allen housed at SCCCC IMU. Classification Review. Decision: Release from Maximum Custody.

o 11/29/2018: Allen housed at SCCC IMU. Classification Review. Decision: Medium Custody and retain at SCCC.
- Allen declined to participate in his FMRT meeting because he understood all recommendations. (Note: a subsequent chronological entry indicates that Allen did participate).
- Allen requested a GB29 stating that it was justified because individuals with disabilities and special needs have priority access to cells that meet their needs.
- Allen stated that in 2011, HQ and the ADA prearranged for and he would feel safe in GB29. Allen cited "Institutional Needs."

44

- Allen was issued an override from Maximum to Medium Custody. Allen stated that there are several conditions that must be met before he agrees to medium custody in general population.
  - o 12/3/2018 & 12/6/2018: Pathway for restoration of GTC approved.
  - o 1/20/2019 Allen housed at SCCC.
  - o 6/10/2019. Allen housed at SCCC.
    - Allen refused to go back to assigned cell.
  - o 6/20/2019: Classification Review. Decision: Minimum Custody and retain at SCCC.
    - Allen was given 90 days to find a cellmate. Allen stated that 90 days was not enough time and he demanded six months.
    - Allen demanded immediate placement in a single cell in general population (H5 B Pod).
    - FMRT decision was to approve a new pathway for restoration of GTCs, promote Allen to Minimum Custody, retain at SCCC, and allow 90 days for Allen to find a suitable cellmate.
  - o 10/16/2019: Allen housed at SCCC. Classification Review. Decision Medium Custody and retain at SCCC.
    - Allen scores as Medium Custody due to recent infraction behavior.
    - Allen has been unsuccessful in Medium Custody status. He has resided in four of the six minimum units at SCCC.
    - Allen has been accommodated multiple times.
    - **Allen was provided with 90 days to choose a cellmate of his choice; he failed to do so.**
    - Allen has three segregation placements at SCCC for refusing bed assignments (since 11/14/2018).
  - o 11/27/2019: Allen housed at SCCC IMU. Classification review. Decision: Close Custody.
    - Allen chose not to participate in his FMRT review.
    - Allen recently received a serious infraction and his score places him in Close Custody.
  - o 12/23/2019: Allen housed at SCCC.
    - HQ Max Custody Multi-disciplinary Review Team (Ryan Pfaff) recommended that Allen be demoted to Maximum Custody due to his refusing housing in general population.
    - HQ Max Custody Multi-Disciplinary Review Team (Ryan Pfaff) directed that Allen be retained at SCCC IMU.
    - HQ Max Custody Multi-Disciplinary Review Team (Ryan Pfaff) directed that Allen should be considered for a custody promotion once Allen accepts placement in general population.
  - o 2/14/2020: Allen housed at WSP IMU (document signed 3/9/2020).
    - Allen refused housing assignment.
    - Allen needs go to Health Service Building (HSB) due to wheelchair issue.

45

- o 7/6/2020 Allen housed at WSP Main.
  - ▪ Allen has lost additional GTCs and his previously restoration is being terminated due to additional infractions.
- o **8/26/2020: Leg brace and crutches denied by Karen Foss, HSM1 (DOC ADA Compliance Coordinator).**
- o 10/8/2020: Allen housed at WSP MSC (Medium Security Complex).
  - ▪ Allen refused cell assignment.
- o 10/22/2020: Allen housed at WSP Main.
  - ▪ Recommendation: Retain Medium Custody and transfer to SCCC/Medium Custody facility.
  - ▪ On October 7, 2020, Allen received another infraction for refusing housing assignment.
  - ▪ Restoration pathway plan reviewed.
  - ▪ FMRT decision: retain in administrative segregation pending transfer, maintain Medium Custody and transfer to SCCC.
  - ▪ FMRT reviewed restoration pathway plan.
- o 11/2/2020: Allen housed at SCCC. Classification Review (Christine Brule).
  - ▪ Maintain Medium Custody and retain at SCCC.
  - ▪ Allen has a history of refusing to live in a cell with another inmate regardless of the facility he is assigned to.
  - ▪ Allen's current placement is appropriate at this time.
- o 11/5/2020. Allen housed at WSP IMU.
  - ▪ Allen refused to leave HSB (Health Services Building) and go to new housing.
- o 12/1/2020 Allen housed at WSP IMU.
  - ▪ Previous GTC restoration pathway voided due to Allen's infraction behaviors.
- o 12/3/2020: Allen housed at WSP IMU.
  - ▪ Counselor Ricardo Alaniz recommends Maximum Custody and transfer to a facility in the Western part of the State to facility Allen's transition out of prison upon the expiration of his sentence.
- o 12/4/2020: Allen housed at WSP IMU. Classification Review. Decision: Maximum Custody and retain in administrative segregation.
  - ▪ FMRT (Kevin Walker) recommends retaining Allen in administrative segregation pending Allen's assignment to Maximum Custody.
  - ▪ FMRT notes that Allen continues to refuse housing in general population uncles he is provided with a single person cell.
- o 12/16/2020: HQ Max Custody Multi-disciplinary Review Team (Ryan Pfaff).
  - ▪ Allen submitted a letter stating that he would accept a single cell at SCCC.
  - ▪ **ADA input was provided. Allen's needs can be met at either SCCC IMU or WSP IMU. Recommendation is to retain at WSP IMU. This decision is based on Allen's refusals to be housed as determined by the DOC.**

46

- **January 28, 2021: Letter to Allen from DOC Assistant Secretary, Robert Herzog (Herzog) (Re: Allen's appeal of the 12/17/2020 classification decision made by the HQ Max Custody Multi-Disciplinary Review Team).**
  - **Herzog reminds Allen that he has been given opportunities to be placed in a general population setting and has refused to do so.**
  - **Herzog informed Allen that he reviewed the decision of the HQ Max Custody Multi-Disciplinary Review Team and that he concurs with the Team's decision.**
  - **Allen's appeal is denied.**
- 3/25/2021: Correspondence from Allen to Shane Evans (Evans), DOC Classification Unit.
  - Allen claims cruel and unusual punishment for being placed in administrative segregation because he refuses single cell assignment based in need for ADA accommodation and his agoraphobia.
  - Allen claims that on 8/18/2020 an MDT was held that included Luke Wagoneer, Dr. Richard Baez and others. This MDT submitted a petition for permanent single cell housing.
  - Allen states that on 9/17/2020, Bowen denied the previous reasonable accommodation.
  - Allen states that on 12/17/2020, Tim Thrasher (Thrasher) assigned Allen to long-term solitary confinement.
- 4/28/2021: by Jo Phillips, PA.
  - Allen refused to come to medical in 4/28/2021 if security staff would be present (he had requested it for renewal of Health Service Requests HSRs).
  - Allen wanted renewal of past HSRs (Health Service Requests) for crutches, ankle brace/walking boot, compression stockings, two extra blankets, lifting limitation of two pounds, standing limitation of ten minutes, no stairs, low bunk, lower tier.
  - Phillips states that current HSRs are for shower chair while in IMU, wheelchair for long distances, low bunk, restricted standing – 10 minutes, compression stockings, low tier.
  - Phillips references Accomodation Review Committee notification dated 8/25/2020. Items previously approved at SCCC included two blankets, one pillow, walking boot and crutches. These items were discontinued at WSP as medical provider determined they were not medically necessary. Also, the crutches and boot brace are not under the purview of the ADA.
  - **Allen is advised that if he does not agree with the decision of the committee, he has the right to appeal through the appeals process. Current HSRs at WSP include: wheelchair, restriction on standing time, compression stockings, and lowere tier through 9/18/2020. Phillips also notes that Allen was non-compliant with treatment for a right talus dome fracture (1990). As a result, he has developed sclerosis and collapse of his talus dome. Per note dated 2/29/016, Allen**

47

**does not want to pursue fuson of ankle while incarcerated. Jo Phillips goes on to say based on chart review there is no medical necessity for the following HSRs: crutches – not allowed in IMU. Allen has been observed standing for greater than 15 minutes and ambulating without distress, walking boot – Allen has been observed standing for greater than 15 minutes and ambulating without distress, two extra blankets - not medically necessary, lifting restrictions – Allen does not have a job, this is not an issue while housed in IMU, no stairs- at WSP there are no stairs if Allen is on lower tier.**

- o 5/4/2021: Correspondence to Ryan Pfaff (Pfaff), DOC Classification Unit.
  - ▪ Allen claims that he is ADA qualified due to special needs related to mental health, physical disabilities, and high risk of victimization.
  - ▪ Allen asking for a reasonable accommodation.
- o 6/23/2021: Allen housed at WSP IMU. Classification Review. Decision: Maximum Custody.
  - ▪ For transition and release purposes, Allen requested a transfer to SCCC IMU and placement into single cell and counseling.
  - ▪ Allen requested single cell placement based on his need for an ADA accommodation.
  - ▪ Classification Counselor Kevin Walker, on behalf of the FMRT, wrote that Allen will be retained at Maximum Custody for refusing cell assignments. This matter to be referred to HQ Maximum Custody Multi-Disciplinary Review Team for approval.
  - ▪ Allen has not completed DOC expectations for his Maximum Custody status.
  - ▪ To date, Allen has not accepted placement in general population.
  - ▪ Allen not eligible for pathway for restoration of GTCs because he is nearing his release date. Allen's ERD is 10/23/2022.
  - ▪ Allen is assigned to Maximum Custody because he refuses cell assignments as directed by the DOC, which are not single cell assignments.
- o 9/30/2021: Allen housed at WSP IMU. Classification Review. Decision: Maximum Custody.
  - ▪ Allen requested transfer to SCCC to facilitate his release planning and also as an ADA accommodation.
  - ▪ Allen to be demoted from Medium Custody to Maximum Custody.
  - ▪ Recommend transfer to SCCC IMU after approval received from HQ Maximum Custody Multi-Disciplinary Review Team.
  - ▪ Allen has refused transfers to WSP on two previous occasions.
  - ▪ Allen will require special transport (T 5 Code).
  - ▪ Allen infracted for refusing cell assignments on July 21, 2021 and September 21, 2021.

- Allen not eligible for pathway for restoration of GTCs because he is nearing his release date. Allen's ERD is 10/23/2022.
- **Allen was approved for Medium Custody and single cell housing for 60 days, but he still refused to leave IMU.**

o 3/9/2022 & 3/10/2022: Allen housed at WSP IMU. Classification Review. Decision: Minimum Custody and Retain in Administrative Segregation.
- Continue with approved transfer to SCCC.
- Allow 30 days in general population single cell for identification of a suitable cellmate.
- Allen requesting transfer to SCCC and single cell assignment as ADA accommodations.
- Allen not eligible for pathway for restoration of GTCs because he is nearing his release date. Allen's ERD (Early Release Date) is 10/23/2022.
- Allen will require special transport (T 5 Code).
- HQ Maximum Custody Multi-disciplinary Team approval as follows: Retain in administrative segregation and Minimum Custody, and transfer to an appropriate general population setting.

o 8/2/2022 Allen housed at SCCC IMU. Classification Review. Decision: Maximum Custody.
- FMRT cannot develop an eligible for pathway for restoration of GTCs because Allen is nearing his release date. Allen's ERD is 10/23/2022.
- **Allen demoted to Maximum Custody because he continues to refuse housing as recommended by the DOC. Allen was recently infracted on two occasions for his refusals (since arriving at SCCC on July 1, 2022).**
- Allen was offered a single cell in general population. Allen refused saying that it would be too stressful for him to be in general population.

o 8/15/2022: Allen has multiple Maxim Custody placements for refusing housing assignments.
- Demote to Maximum Custody and retain in SCCC IMU.
- Custody promotion possible if/when Allen accepts housing in general population.

o 8/23/2022: Classification Review. Decision: Maximum Custody.
- FMRT consisted of 20 members (including mental health).
- Demote to Maximum Custody and transfer to MCC IMU.

o 10/29/2022: by Dr. Michael Furst.
- Antisocial personality disorder.

o 11/12/2022: by Dr. Michael Furst.
- Antisocial personality disorder.

o 11/16/2022: by Bruce Lanum, ARNP.
- Allen reports as follows: He is supposed to see internal medicine specialist to find out what is wrong with him. Four years ago, Allen claims to have

> > developed problems swallowing, vision, toenails receding; numb, cold, burning feet; neuropathy (etiology unknown); will research and refer.
>
> - o 12/16/2022: Allen targeted for Enhanced Close Custody Unit (ECCU) when it opens.
> - o 12/16/2022. Behavior Performance Plan (BPP).
>   - Allen release planning stalled because he won't sign housing voucher or provide release address.
>   - Allen believes he does not have supervision when released. DOC notes he does have supervision requirement for prior causes.
>   - 1/2/2023: Allen still refusing to work on release planning. Classification Counselor counselor Melton had to submit an Offender Release Plan (ORP) anyway because of the DOC's 35 day notification requirement for law enforcement and victims.

DOC Behavior Observation Reports during Allen's term of incarceration demonstrate that Allen's behaviors routinely inappropriate and disruptive to the operational effectiveness of the prisons in which he was housed. *Note: Behavior Observations do not rise to the level of an infraction, but they are noted in order to provide information about inmate behaviors and to inform other staff.*

The following facts drawn from Allen's behavior observation record are examples on Allen's ongoing negative behavior observations:

- Negative observation report 2/16/2015 at SCCC. Allen showed up for grievance hearing (in the living unit) not wearing khaki shirt. Required by offender handbook and also posting on entry window. Allen said no need per ADA. OAS Tatro explained to Allen need for ADA coordinator approval and HSR to waive. Allen became argumentation. Sent back to cell. Allen accused Tatro of discrimination (loudly).
- Negative observation report 10/21/2015.  SCCC. Allen pat searched by Sgt. Wright after mainline on10/19/2015. Allen had multiple unauthorized food items taken from kitchen.
- Negative 12/21/2016. SCCC living unit. By Jeannie Tole. Having issues with Allen. Comes in during count when count lights are on. Claims bladder issue. Asked Allen if he has HSR. Allen refused to answer. Called RN Gordon who confirmed Allen does not have HSR. For this and they do not give HSR for this reason. RN said Allen can get HSR for a urinal.  Dispose of urine after count. If Allen continues to come out during count will infract. This entry signed by Denzer but written by Tole.
- Negative 3/25/2016 1:05 pm SCCC living unit by Tera McElavy. Allen barged in no knocking. Standard is offenders knock on door and wait to be allowed in. Told knock in future. Told by other staff that he does this often and has been told not to.
- Negative 3/28/2016 by Denzer SCCC Living Unit. Told by officers Tole and Church Allen having difficulty following their directives to sit in upright position during count. Daily occurrence. Allen given copies of count procedures and offender instructions. When Allen came out of cell he was observed pushing the documents on ground with his foot.

- Negative 4/26/2016 SCCC LU by Denzer. Allen came to office morning. Asked if entire unit to become veteran's unit. Told have limited information. Allen does not want to move out of his unit. If he must move wants IMS program or have John Campbell contact MCC to give him single cell. Says tired of moving and ready to go back to administrative segregation. Explained these things take time. Allen wants contact HQ to address 5990 and housing. Told him already addressed and decisions are final.
- Neutral 4/27/2016 SCCC LU by Denzer. Allen continues decompensate when found out unit will be all veterans unit. Wants Denzer to contact head of classification to get him his 5990. (I believe 5990 is restrictive housing: A housing assignment for incarcerated people whose presence in general population is deemed to present a danger to self, others, or facility security. Restrictive housing uses enhanced security buildings with single-occupancy cells to separate those individuals from the general population.) Told issued addressed several times with class unit, associate superintendent, Denzer's supervisor, and CUS. Denzer will not pursue further. Allen given directive not pursue anymore. Allen says not acceptable and wants 5990 to get out of prison. Told not going to undermine directives of chain of command.
- Negative 5/11/2016 SCCC LU by Kendra Wakefield, entering H4 B pod. Allen exiting pod. Allen assigned to A pod. Asked why in wrong pod. Said had permission to speak to B pod officer – verified. Allen verbal warning for not wearing ID,
- Negative 5/11/2016 SCCC Lt. by Kevin Koski. On site adjustment using ice machine before count cleared.
- Negative 6/28/2016 SCCC by James Martin on 6/27 at 9:58 pm Martin was celling in few remaining offenders into pod for formal count. Allen had upper torso leaning into cell 034 – visiting. Told Allen no cell visiting especially when dayroom closed and everyone celling in for count. Told out of bounds for having torso leaning into cell. Allen said "I will do what I want, when I want, and how I want." Allen directed to cell for count. If happens again infraction for 210/103 or escorted to F-Unit.
- Negative 7/24/2016 SCCC by Dallas Hensley. Onsite adj using ice machine before count cleared.
- Negative 8/17/2016 SCCC by Brandy Howard. Allen had three people in the resource room at same time. Howard and CO Stewart told Allen only one at a time allowed. Allen said they worked there and that was exception. COs pointed to sign – one person no exceptions. Allen waved hand in air and said "move along move along" CO said "what" Allen said "Haven't you seen South Park?" Others directed to leave room. Allen told to watch how he speaks to me.
- Negative 8/17/2016 SCCC by Brandy Howard. Allen failing to perform work and failing to follow rules because he was on phone and leaving resource room unoccupied during his work hours.
- Negative 9/9/2016 SCCC by Tammy Nikula. Allen given numerous directives to make sure resource room door closed/secured. Today found door open and not secured. Addressed with Allen. He said he would walk out before he listened to me. Allen very disrespectful to staff and refuses to follow unit rules and job duties.
- Negative 9/22/2016 SCCC by Ryan Williams. Using hot shot.

51

- Negative 10/16/2016 SCCC by James Martin. On 10/15/2016 Allen issued onsite adjustment for getting angry and shouting at me for questioning him about why he was on crutches from medical when he clearly does not need any assistance from them to walk or even use them properly. Martin and other staff have observed Allen walking to/from mainline, cleaning cell, walking around dayroom. Told his behavior would not be tolerated as response to question.
- Negative 11/1/2016. SCCC David D'Urso. Place: Health Office. Allen attempted to insert records into his medical chart. He opened binder and attempted to insert – told stop. Became argumentative then calmed down.
- Negative 11/3/2016. SCCC by Ryan Williams Using hot shot during count.
- Negative 11/5/2016 SCCC by Patrick Collechi. Requested use microwave during count because slept until count. Argued that he should be allowed because only needed to heat something.
- Negative 11/6/2016 SCCC. By Mitchell Bolden. Cell search. Extra blankets extra mattresses found and taken. Came to office belligerent. Said ADA accommodations. No written documentation. His kite appears forged. Under investigation. HSR doesn't match HSR from medical and altered. Under investigation. Allen claims had meeting with Classification Counselor Andring and CPM Anderson and was being issued some sort of new ADA accommodation – not received yet. Let Allen keep mattress and he has three blankets. Refuse the 4th because not his pick. Allowed these items pending claims can be verified. Told not to come into office the way he did today.

**Conclusion**

Based on the documents reviewed, it is crystal clear that during his various terms of incarceration and community custody, Allen was intent on establishing his own terms of confinement and supervision.

In departments of corrections nationwide, including in the State of Washington, the availability of general population single cells is limited by budget allocations authorized by elected officials (i.e., legislators and governors). Therefore, all departments of corrections, including the DOC in the State of Washington, have policies that detail the requirements of and the review process for general population single cell housing assignments. Failure to carefully regulate the assignment of inmates to general population single cells would seriously dimmish the administration and operational effectiveness of any prison.

Allen committed himself to trying to disrupt to administrative and operational effectiveness of any prison in which he was confined. Had the DOC acquiesced to Allen's personal, but unjustified, desire for assignment to a single cell, other inmates desiring single cells would become aware of the DOC's acquiescence and follow Allen's path. The DOC appropriately stood firm and appropriately applied its policies for single cell assignment. Had it not done so, it is very likely that operational chaos would have resulted.

As just noted, during his periods of prison confinement, Allen was laser focused on being assigned to a general population single cell. To accomplish his objective, Allen continually

attempted to use unsupported claims that he feared for his safety and therefore could not be housed with any cellmate. Allen also made incessant and unsupported claims that he had medical problems as well as problems governed by the American with Disabilities Act (ADA) in order to justify placement in a single cell.

Allen's refusal to adhere to DOC rules and regulations and to accept the assessments and diagnoses made by DOC medical/mental health staff and ADA compliance staff was ongoing and his refusals in this regard resulted in numerous infractions, loss of GTCs, and the inability to restore GTCs in a meaningful way.

Allen's medical/mental health needs were comprehensively assessed during his terms of prison confinement. These assessments were conducted by mental health and medical staff as well as ADA compliance personnel. In addition to assessments of Allen's medical/mental health and ADA by medical/mental health personnel, the DOC constantly reviewed and re-reviewed Allen's custody classifications at the local level and also at the highest levels within the DOC. In short, Allen's needs and personal desires were never ignored or inappropriately responded to.

The documents reviewed provide abundant evidence to conclude that Allen was an intentionally disruptive inmate who consumed an inordinate amount of staff time and resources.

Allen was, and continues to be, an individual with a long history of defiant behaviors whenever he was involved in court proceedings and sentencing, community custody (aka probation), and prison confinement. As of the writing of this report, Allen is in violation of his community custody. Allen's whereabouts is unknown. On March 6, 2025, the DOC issued a DOC Secretary's Warrant for his arrest.

_____                    Date: May 13, 2025
Mario A. Paparozzi, Ph.D.

53

**Addendum**

**Addendum to the Report of Opinions by Mario A. Paparozzi, Ph.D.
Publications in the previous ten years:**

2023   Paparozzi, M. Improving client services in community corrections: unmasking and solving impediments to evidence-based practices. <u>Perspectives</u>, peer reviewed journal of the American Probation and Parole Association. In press.

2018   Paparozzi, M. and Guy, R. Everything that is Old is New Again-Old Again-New Again… <u>The Journal of Contemporary Criminal Justice</u>.

Paparozzi, M. Guest Editor, Journal of Contemporary Criminal Justice, Volume 34, Issue 1, February 2018. Applying 40 Years of "What Works" in Corrections: Losing or Gaining Ground.

2016   Gendreau, P. and Paparozzi, M. Two perspectives from North America on professional leadership in corrections. Advancing Corrections, The Journal of the International Corrections and Prisons Association.

2015   Mario Paparozzi and Roger Guy. "Turning the Ship Around: Values and Core Competencies as Critical Elements of Successful Parole and Reentry" in Martine Herzog-Evan, ed. Offender release and supervision: The Role of Courts and the use of Discretion, Oisterwijk, The Netherlands, Wolf Legal Publishers.

**To the best of my recollection, the cases listed below are the cases that I have been deposed on or testified at trial in the last four years:**

- Rogerson v. State of Washington Department of Corrections and City of Seattle 2022 – Deposition 2022
- Kelly v. Trial - State of Washington Department of Corrections 2022
- Durham v. State of Washington Department of Corrections – Deposition 2022
- Ford v. State of Washington Department of Corrections – Deposition 2022
- Wayne T. Anstrom v. State of Washington Department of Corrections – Deposition 2024
- Christie v. State of Washington Department of Corrections – Deposition 2024
- Wilkerson v. State of Washington Department of Corrections – Deposition 2025
- Munger v. State of Washington Department of Corrections – Deposition 2025
- Hilton v. State of Washington Department of Corrections – Deposition 2025

**A statement of the compensation to be paid for the document review and testimony in this matter:**

54

I will bill the State of Washington for 20 hours, at a rate of $300 per hour, for the report of my opinions. I have not provided testimony related to this matter. If I do provide testimony, my fee is $300 per hour.

Exhibit B

Allen vs Washington Dept. of Corrections, et al.
MaryAnn Curl, M.D. - January 24, 2025

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

GREGORY ALLEN,                          )
                                        )
                    Plaintiff,          )
                                        )
          vs.                           )        No. 3:23-cv-05746-BHS
                                        )
WASHINGTON STATE DEPARTMENT OF          )
CORRECTIONS, ET AL,                     )
                                        )
                    Defendants.         )

**CERTIFIED TRANSCRIPT**

DEPOSITION UPON ORAL EXAMINATION OF

MaryAnn Curl, M.D.

January 24, 2025

(VIA ZOOM)

Pages 1 through 79

Taken Before:

Connie Church, RPR, CRR, CRC, CCR #2555

Certified Stenographic Court Reporter

for

Capitol Pacific Reporting, Inc.

800.407.0148

www.capitolpacificreporting.com
scheduling@capitolpacificreporting.com


Capitol Pacific Reporting, Inc.

A   I'm not sure I understand.  We are a state agency with a budget, and so I'm sure that there are probably limits. We can't get people the space shuttle or a helicopter when --

You know, I -- I certainly try to -- in my current role and when I was the facility medical director at Washington State Penitentiary, for those kind of concerns not to be the primary concerns.  Are we bound to, you know, come in on budget by law?  Yes.  So I'm glad to be specific if you have a specific question.

Q   (BY MR. BONIN) Again I'm not trying to trick you.  I'm just trying to understand and I'm looking to see, "Well, okay.  So this person needs a private cell.  We can't afford to be putting him in a private cell so, therefore, we're not going to put him in a private cell."

Would that be something that you could do whether you were overbudget or underbudget?

MR. THROGMORTON:  Object to form.

A   So I don't -- at the time when I met with Mr. Allen, I didn't have this information.  But now I do because for the last three years, I've been the chief medical officer and I've sat on the Single Cell Committee, which is a statewide committee.  And so we do have a finite number of single cell opportunities in the -- just in the actual logistics of managing, just like an apartment house


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

would, where you -- you have only so many studio apartments.  It's the same kind of principle.

I don't see that as being necessarily a day-to-day financial kind of situation so much as it is a logistics situation.  I've never once in Single Cell had anyone say anything about the budget or money related to housing options.  It's much more pragmatic than that, that on the particular campus that someone's in, they just don't have available single cells.  And so what they do is they try to prioritize who needs them the very most and then kind of go on a needs basis.  And that's a weekly meeting and then ongoing meetings at the facilities to feed information to the headquarters single cell committee.

Q    How do you prioritize?

A    That's -- it's tough.  It's very tough.  I sit on the committee.  The director of behavioral health sits on the committee.  And then a number of people in classification and in custody sit on the committee.  And we talk about potential for violence.  You know.  We've had people who have committed violence against other people.  And to reduce the likelihood of someone being harmed, that is one of the high priorities.

People who have medical issues like having uncontrolled bowel movements or things that are very, very embarrassing for them, those are people who get

 Capitol Pacific Reporting, Inc.

Allen vs Washington Dept. of Corrections, et al.
MaryAnn Curl, M.D. - January 24, 2025

prioritized.  People -- there are people in the system who have -- are autism spectrum disorder where they have an absolute inability to house with someone else because it's just too stimulating for them, and those kind of cases are the cases that really get prioritized.

It's tough.  It's a very tough calculation of how to do it.

Q    If this is an unfair question, I apologize.  Do you know what policy 400.020 is?

A    Not off the top of my head.  But if you want to open it, I've probably read it.

Q    I wanted to see if you knew what it was.  You were sitting on a committee.  You were talking about the factors that you look at.  You've given me some examples.

So when you're making these decisions as a group about the priority of the people who need single cell housing, do you look at -- you talked about the violence.  Somebody who might be prone to victimization I think is one of them you said.  Having been a victim of prison rape, would that not be indicative that you have somebody who might be a victim in gen pop?

MR. THROGMORTON:  Object to form.

A    So let me answer your question not directly.  I'll try to get to the answer.  But I sit on the committee as the medical -- the chief medical officer.  And so my part on

Page 39



at the issue of a single cell assessment?

MR. THROGMORTON:  Object to form.

A   Yes.  The process for a single cell assessment is that the person who sees the need writes up their assessment and then sends it to the facility level multidisciplinary team to review single cell assignments.  And that is usually someone like the correctional unit supervisor and some counselors and a medical person, a mental health person, that are at -- they're functioning at the facility level.

And then what happens from that is they make a recommendation that goes into OMNI, which is our tracking system, and then is sent as a consult to the headquarters level Single Cell Committee.  And that's the committee I sit on.

And so the write-up -- if there's relevant information coming from say the primary care provider or the primary mental health provider, it'll be in that write-up as to what the justification for a single cell is.

So yes, there is an opportunity for the person to have that opinion carry through in their paperwork.

Q   (BY MR. BONIN) And you, as a doctor and as somebody who's sitting here today -- and we're differentiating the role that you had when you met with Mr. Allen versus the role

Page 42

 Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
MaryAnn Curl, M.D. - January 24, 2025

six months because it's the recovery period, they would know the beginning date and the end date.

I don't issue the letters, and I don't even know if they are letters.  I don't know if they go to electronic on their Securus tablets or how they go about doing that because that's not my part of -- I don't even do the minutes for the committee so I --

So let's see.  The Single Cell Screening and Assignment Form is form number DOC 02-028.  And then the Policy for Housing and Cell Room Assignment is DOC 420.140.  And it does prescribe the process and then the appeals route.

Q  The appeals route, where does it say the appeals would end?

A  Looks like the senior director for comprehensive case management services will make the final decision for single cell assessment -- assignment.

Q  Do you see anything in that policy that says if you continue to be aggrieved, you can file a lawsuit against DOC and sue for a writ of habeas corpus?

A  I might be missing it, but I don't see habeas corpus on here so I would assume not but . . .

Q  Do you know what a habeas corpus petition is?

A  No.  Sorry.

Q  And you have a high degree.  Do you know what

 Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
MaryAnn Curl, M.D. - January 24, 2025

C E R T I F I C A T E

I, CONNIE CHURCH, a Certified Stenographic Court Reporter in and for the State of Washington, residing at Montesano, do hereby certify:

That the foregoing proceedings were taken before me and thereafter reduced to a typed format under my direction; that the transcript is a full, true and complete transcript of said proceedings consisting of Pages 1 through 79;

That as a CCR in this state, I am bound by the Rules of Conduct as Codified in WAC 308-14-130; that court reporting arrangements and fees in this case are offered to all parties on equal terms;

That I am not a relative, employee, attorney or counsel of any party to this action, or relative or employee of any such attorney or counsel, and I am not financially interested in the said action or the outcome thereof;

That upon completion of signature, if required, the original transcript will be securely sealed and the same served the appropriate party.

In witness whereof, I have hereunto set my hand this 29th day of January, 2025.

_____
Connie Church, CCR No. 2555
Certified Stenographic Reporter

Page 79

 Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Exhibit C



Department of
**Corrections**
WASHINGTON STATE

PATIENT I.D. DATA:  **ALLEN, GREGORY**
(Name, DOC#, DOB)  **806649    09/01/1967**

**PRIMARY ENCOUNTER REPORT**

RECEIVED

AUG 17 2020

WSP MEDICAL RECOR

| DATE | TIME | FACILITY | UNIT (optional) |
|------|------|----------|-----------------|
| 08/03/2020 | 15:00 | WSP | |

**Subjective Complaint/Objective Findings/Assessment/Evaluation:**

ATTENDEES: Dr. Richard Baez, Psych 4; Dr. F. John Smith, FMD; Luke Waggoner, Psych Assoc.; Jennifer Meyers, PA-C; Cory McLaughlin,CC3 and Scribe Debra Gilbreth, AA3

SUMMARY: Gregory Allen, 806649, is a 52 year old Caucasian male who has returned to WSP. This MDT was held to discuss the consideration for a single person housing assignment. Dr. Baez introduced the purpose of MDT to discuss the pros and cons for a single person housing assignment for Mr. Allen. Seeking a coordinated response from MH, Medical, Custody, and PREA

MENTAL HEALTH: Dr. Baez thinks that in taking all perspectives together, Mr. Allen may significantly benefit from single-cell housing arrangement as he promotes to Medium custody and transfers to another facility. Psych Associate, Luke Waggoner, has been working with Mr. Allen, during his two stays at WSP. He shared that Mr. Allen has mental health problems which started in early childhood (age 5) and he sees himself as a victim. Mr. Allen views others as Predators. Mr. Waggoner confirmed that Mr. Allen has had significant complex trauma in his life. For instance, Mr. Allen had an abusive family, was seriously burned, has a wheelchair and numerous health issues and allegations that he was sexually assaulted in prison. His PREA Risk Assessment scores him as a potential victim. Mr. Allen has a history of staff seeing him as a negative manipulator because of his angry, aggressive, and persistent personality. He has frequently submitted many grievances/complaints including to headquarters and Disability Rights of Washington. Mr. Allen, primarily fixates on being in a single cell, and when temporarily accommodated, he has been able to promote in custody level as his mental health symptoms are moderated. Mr. Waggoner believes Mr. Allen would strongly benefit from a single cell assignment in order to continue to address his mental health issues, but MH wants to understand other viewpoints. Mr. Waggoner feels that general population would meet his needs better than the RTU and shared that from a mental health standpoint.

CUSTODY: Mr. McLaughlin shared that most of his interactions with Mr. Allen have not been positive. He's had to terminate special calls for abusing phone privileges. Most of Mr. Allen's infractions are from refusing housing assignments. Confirmed that Mr. Allen was just promoted to medium custody but feels that he will most likely demote soon after being promoted if we don't try to help him. Mr. McLaughlin feels that offering a single cell just may help Mr. Allen get through the levels of custody, but explained that after medium custody there will no longer be single cell housing options, so Mr. Allen is going to have to figure out how to share a cell at some point. Suggested adding a provision to the single cell housing approval in that if Mr. Allen demotes, his housing will be re-evaluated.

MEDICAL: PA-C Meyers explained that medically Mr. Allen does not meet the criteria for a single cell house. Mr. Allen has refused to be examined, but he requests special HSR's for specific needs. She is unable to write up HSR's without an evaluation to ensure criteria is met. Dr. Baez asked if there are any other medical issues that Mr. Allen may have that would warrant a single cell like snoring, insomnia, or his wheel chair? Ms. Meyers explained that at this point, she is unsure he really needs a wheelchair because he won't allow an exam and she's was not informed about any sleep issues. Dr. Smith confirmed that medically he cannot support a single cell, but also did not oppose it, if behavioral/clinical contingencies are appropriately addressed.

**Diagnosis/Plan/Rx:** (Diagnosis required for medication orders. Allergies required for new medication orders.)

PLAN: Group agreed to move forward with recommendation of a single cell housing assignment with the provision of continuing mental health therapy to deal with the trauma affecting his need for a single cell and re-evaluation of single-cell assignment if he demotes. Psych Associate Waggoner will include the expectations and objectives and will communicate with PREA Compliance Manager again to include her impressions before sending them to the classification counselor McLaughlin, who will submit the request.

Page 1 of 2

State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 320.255    DOC 410.430    DOC 420.250    DOC 420.255    DOC 420.312
DOC 490.850    DOC 610.010    DOC 610.025    DOC 610.600    DOC 670.020

DOC 13-435EP (07/24/2018)                                   OUTPATIENT/MENTAL HEALTH Progress Notes



**Department of Corrections**
WASHINGTON STATE

PATIENT I.D. DATA:    **ALLEN, GREGORY**
(Name, DOC#, DOB)    **806649    09/01/1967**

## PRIMARY ENCOUNTER REPORT

| DATE | TIME | FACILITY | UNIT (optional) |
|------|------|----------|-----------------|
| 08/03/2020 | 15:00 | WSP | |

Addendum: 8-13-2020 - Psych Associate Waggoner communicated with PREA Complaince Manager Bonnie Miller who supports single cell assignment.

Benefits include reducing risk of recidivism as Allen is approaching ERD date; being a potential victim; and improving mental health symptoms. Reduce risk of return to Maximum custody.

☒ Risks/benefits of recommended intervention explained; patient consents.

| Name and Title of Employee/Contract Staff Performing Encounter: Richard Bas?, ??? Psychologist 4 | Signature: |
|---|---|

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

**Inmate: ALLEN, Gregory Lee (806649)**

| | | | | |
|---|---|---|---|---|
| Gender: Male | DOB: 09/01/1967 | Age: 54 | Category: Regular Inmate | Body Status: Active Inmate |
| RLC: HV | Wrap-Around: Yes | Comm. Concern: Yes | Custody Level: Minimum 3 - Long Term Minimum | Location: WSP-IMU — IMS / MSD07 |
| ERD: 11/22/2022 | | ICOTS Victim Sensitive: Yes | | CC/CCO: Alaniz, Ricardo |
| ORCS: Unknown | | | | |

## Single Cell Screening

| | | |
|---|---|---|
| Assessment Date: 08/18/2020 Status: In-Effect | Reason For Screening: For Cause Status Date: 09/17/2020 | Assessor: McLaughlin, Cory F |

Single Cell Criteria

During any period of confinement, in an institutional setting, has this offender murdered another person who was assigned to his/her cell/room/dorm?     ○ Yes ◉ No

During any period of confinement, in an institutional setting, has this offender committed an aggravated assault of an individual assigned to his/her cell/room/dorm which resulted in life threatening injury?     ○ Yes ◉ No

During any period of confinement, in an institutional setting, has this offender committed a documented rape against a person who was assigned to his/her cell/room/dorm?     ○ Yes ◉ No

Assessor Narrative (2500 Characters Max):

DOC Policy 400.020 Section V (A) states "Single cell occupancy will be available to offenders meeting one or more of the following criteria 1) Severe medical disability 2) Serious mental illness 3) Sexual Predator 4) Likely to be exploited or victimized by others 5) Other special needs and 6) Maximum Custody".
Based on my assessment of Mr. Allen, and in consultation with our facility PREA Compliance Manager, Medical Director and Classification staff, I have determined this incarcerated individual not only meets the criteria of single cell occupancy but is in need of it. Mr. Allen's PREA Risk Assessment scores him as a potential victim. According to his current HSRs he requires a wheel chair, must be housed on a lower tier and not able to stand for more than 10 minutes. Mr. Allen also experiences mental health symptoms that are triggered by reminders of traumatic events that occurred in DOC housing. Mr. Allen's symptoms have significantly impaired his functioning, leading to placement in restrictive housing on multiple occasions. It is my professional opinion that this incarcerated individual has a high risk potential of being victimized again without single cell housing. He will also continue to experience a significant impairment in functioning that will be detrimental to his ability to program and promote and his ability to transition back to the community. A poor transition to the community will significantly increase the likelihood of recidivism. For these reasons we recommend assignment to single person housing.
Dr. Richard Baez, PsyD.
Psychologist 4
Luke Waggoner, MA
Psychology Associate
Bonnie Miller
PREA Compliance Manager

Submit for Review/Override:

Reviewer: Clark, Lynn I

CPM Review

CPM Notes (2500 Characters Max):

Based on the information provided above recommend Single Cell.                    Reviewer: Clark, Lynn I

◉ Recommend Single Cell

◯ Not Recommend Single Cell

─ HQ MDT Review ─

HQ MDT Notes (2500 Characters Max):

Max custody MDT Tim Thrasher,Kevin Bowen, Karie Rainer, Ryan Pfaff, Chris
Newton, LeAnne Fletcher, Don Feist, Jeri Newman, Jeremy Scott, Bryan Bechler,
Julie Smith                    HQ MDT Reviewer: Pfaff, Ryan A

◯ Approve Single Cell

◉ Deny Single Cell

Last Updated By: Pfaff, Ryan A   On: 09/17/2020

P-21314  000002

Exhibit D

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF

WASHINGTON AT TACOMA

_____

GREGORY ALLEN,                    )
                                  )
              Plaintiff,          )
                                  )
vs.                               )        NO. 3:23-cv-05746-BHS
                                  )
                                  )
                                  )
WASHINGTON STATE                  )
                                  )
DEPARTMENT OF CORRECTIONS;        )
                                  )
JASON KAEHLER; et. al,            )
                                  )
                                  )
                                  )
              Defendant.          )
                                  )

**CERTIFIED TRANSCRIPT**

_____

DEPOSITION UPON ORAL EXAMINATION OF
JENNIFER MEYERS, PA-C
June 12, 2024
(Via Zoom)
PAGES 1 through 98

_____

Taken Before:


Sayge E. Manley, RSR, CCR

Certified Stenographic Court Reporter

for

Capitol Pacific Reporting, Inc.

(800) 407-0148


www.capitolpacificreporting.com
scheduling@capitolpacificreporting.com



Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

your testimony today?

A  The ones that were provided, yes.

Q  Okay.  What documents did you look at?

A  There was document of -- I believe it was an IR, an incident report, an HSR, and then I would have to see it again, but it may have been a grievance.

Q  Okay.  Anything else?

A  No.

Q  Okay.  So you identified an IR as an incident report.

A  Yes.

Q  And then you -- you looked at an -- an HSR?

A  An HSR.

Q  What's an HSR?

A  Oh, excuse me.  It's a health services report.

Q  Okay.

A  It's a modality that medical uses with custody to help communicate, like, a durable medical appointment.

Q  Okay.  What was the date of the HSR you looked at?

A  I'd have to see it again.  I don't recall.

Q  Do you have it with you right now?

A  I don't.  I have a -- it would be on an e-mail, but I don't have it present with me or right in front of me.

Q  Oh, okay.  It was one of a specific date though?

A  Yes.

Q  Okay.  What did you see in the HSR that you had looked


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

because it's all -- it's a -- consider it like a communication with custody.  So if custody needs something to approve it during a certain time, then nursing will write them.

Q    And they'll write them under your name?

A    They can, yes.

Q    They have the authority to the write it under your name?

A    I don't know.  They -- that would be up to their supervisor.  I'm not sure of the -- the policy or protocol for that one, but . . .

Q    Okay.  And you have the authority to write an HSR yourself?

A    Yes.

Q    Do you need to verify your HSR decisions with any medical provider?

A    No.

Q    Okay.  Can you recall any incidents with Greg Allen where you would contact a medical doctor or the lead medical staff to talk about an HSR?

A    Repeat that one more time.

Q    Can you recall, with respect to Greg Allen, ever making contact with whomever would be the head -- your superior to discuss an HSR from a medical point of view?

Capitol Pacific Reporting, Inc.        scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

Q   Do you contact your supervisor about that?  Like, if you were going to add something, you would call your supervisor.  If you were going to take something away would you call your supervisor?

A   No.

Q   Okay.  So what's the procedure in determining whether to take something away?

A   It depends on the situation.  It would be based on observation, evidence, and then the -- then my decision.

Q   Observation?  So how would you observe?

A   We use custody officers, nursing, and then myself for observations.

Q   Okay.  You use all of those things before you make the decision or do you sometimes use one, two, or three?

A   Depending on the situation.

Q   Okay.  So you have -- the custody officer reports in decisions to take -- to make modifications to HSR's?

A   Yes, it can happen.

Q   Okay.  How many times have you done that to your -- in your memory?

A   I don't -- I don't know.

Q   Okay.

A   It might happen one or two times a month.

Q   Okay.  So stated in even more laymen's terms, the guard -- or I can't say guard, the corrections



Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

Q   -- this guys scamming.  He's trying to get out of laundry duty.  What would be the next step you would do?

A   I mean, we -- we do a physical exam.  You know, and, again, it goes back to that observation.  I saw the patient walk over here to my exam room the 50 yards and he had, you know -- had no limitations, so I -- that's where I make my medical judgment there.  Or other options would be, "Let's start with 30 minutes.  Let's see how you do," and then we can progress from there, so nothing on these HSR's are solidified.  It's not a permanent decision by any means.

Q   And the next thing we have is the, "Durable Medical Equipment/Supplies."

A   Yep.

Q   Do you recall Greg Allen having compression stockings?

A   I actually do after reading this HSR right now.  I believe he wore one on one side of his leg.

Q   Okay.  Do you remember why?

A   My recollection, I think he had a burn but I don't recall the severity of it.

Q   Okay.  So I am unfortunately triggering your memory with respect to Greg now, so if you have more memories please share them.  I want to know as much as you can remember about Greg as you can, okay?

Page 45

 Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

Q   Oh --

A   I don't know who, it's always changing and there's a position slotted.  If I have an ADA question, that's who I send my request to, so . . .

     The specifics on it, I don't know.

Q   Understood.  That's what they say.  So sometimes you're sending requests out and never getting responses back and you don't know who you send it to?

A   I know who to send it to.  Whether it goes from my complaint or the patients complaint, I don't know where it goes from there.

Q   Okay.

A   But I put my -- I'll put my request or the patients -- I usually request it for the patients nine out of ten times, and then I don't know the outcome from there though.

Q   Okay.  Do you ever consult with the ADA coordinator about removing some type of accessibility equipment?

A   I haven't but you -- I could see a potential if there was a medical need for it.

Q   What kinds of potentials would you see where, "Well, I -- I see him -- I -- I -- I see him walking without his walker.  I saw him walk from here to here.  It says needs a walker, I really feel like, you know, I want to take that walker away, but he's --

Page 52


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

A    I wouldn't consult with ADA on that, no.

Q    Okay.  Why not?

A    I -- I -- because I will make the medical decision myself.  I don't need the -- the guidance of ADA at that time.

Q    Okay.

A    You look more for ADA such as they need help with, like, a hearing device or somebody that needs special equipment because they can't see their TV from afar, but all durable, medical equipment we'll handle -- all the doctors and the medical -- the PA's and the NP's.

Q    Okay.  Sounds stupid to ask the question.  I know the answer, but I'm going to ask.  Are you familiar with the differences between, like, a permanent disability and a temporary disability?

A    Yes.

Q    Okay.  Do you apply different standards when making decisions for people with permanent disabilities versus people with temporary disabilities?

A    In regards to?

Q    Well, I mean we've been using the walker example.

A    The walker example?  It's -- it's -- again, it's so situational and it has to do with your medical diagnosis.

Q    So could be situational?

Page 53

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

A    They can -- they can request a renewal at any time or the provider can renew it when we're seeing them, so . . .

Q    But if it expires, it doesn't automatically renew?

A    Yes.  That's -- that's how the program is set up.

Q    So a corrections officer could determine that, "Oh, your HSR expired, I'm going to take your walker away and you can go talk to the -- you can go talk to the ADA coordinator or to the PA -- to the person in charge of -- the health care practitioner in your area if you want it back."  They could do that, couldn't they?

A    They could.

Q    Let's take a look at Page 8 of 9.  Do you see Section E there?

A    Yep.

Q    My read of it says, "Previously approved durable medical equipment prescribed under an HSR may be permanently removed only by order of a healthcare practitioner," right?

A    Yep.

Q    In that prior exhibit, there was a wheelchair on Greg Allen's accommodations, wasn't there?

A    Yes.

Q    Did you order it removed?

Page 65

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

A    I don't know.

Q    Did you contact the ADA coordinator prior to the issue after this HSR?

A    Not that I recall.

Q    Did Jason Kaehler approach you regarding Mr. Allen's HSR that was issued on August 24th, 2020?

A    Not that I recall.

Q    We've already discussed the differences between an HSR and an accommodation status report, or at least -- actually, if I understand it correctly, you've never seen an accommodation status report --

A    No.

Q    -- on anyone?

A    No.

Q    And there are people with disabilities in your care, right?

A    Yes.

Q    Disabilities that won't go away, right?

A    Yes.

Q    Disabilities that might make it painful to maybe not have -- this is a hypothetical, I can't -- you know, you're going to have to apply it to issues, but, you know . . .

          It might make it painful to, like, have a walker taken away from them?

 Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

Q    Nothing about Mr. Allen that day?

A    No.

Q    Have you ever been asked anything about Mr. Allen and that day?  Not by --

A    No.  Not what?  Excuse me.

                              (Cross-talk.)

Q    I don't want to know about Mr. Throgmorton.  I am asking if you had ever been asked about anything that took place with Mr. Allen on that day.

A    I don't recall this event.

Q    You recall ever being asked about it within a timeframe of a year to two years of the event?

A    No.

Q    Did you hear -- how far away are you from Mr. Allen's cell?  How far away is your office from Mr. Allen's cell?

A    It's in a whole different unit.

Q    Okay.  And if I understood you correctly, this area would have video, right?  There would be video cameras?

A    I don't know.  You would have to ask custody.

Q    Does it have audio too?  Those video cameras?

A    No, the security cameras don't.

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

Q    I'm going to guess --

A    And you would have -- I would have to physically see it to make -- to make the judgment.  We're changing the medical equipment all the time, so . . .

Q    What he says in his complaint is, "As a result of Stafford denying me access to my wheelchair," so he can't have crutches, he may or may not have the boot in there depending on what kind of boot it is, but he -- it says in here that he has a third-degree burns and you've -- you acknowledge he had burns on his legs?

A    I acknowledge that he said he had burns on his legs.  I had never physically seen it, that I recall.

Q    Did you ever physically examine him?

A    I don't recall.

Q    And he references that he has orthopedic disabilities. Do you remember seeing notes about orthopedic disabilities?

A    Again, I don't know what he's referring to when he says "orthopedic disabilities."

Q    Okay.  If he were an ADA qualified individual, shouldn't you have known that?

A    I'm not an ADA qualified individual.

Q    No, if he were an ADA --

Page 88

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jennifer Meyers, PA-C - June 12, 2024

C E R T I F I C A T E

I, SAYGE E. MANLEY, a Certified Stenographic Court Reporter in and for the State of Washington, residing at Montesano, do hereby certify;

That the foregoing proceedings were taken before me and thereafter reduced to a typed format under my direction; that the transcript is a full, true and complete transcript of said proceedings consisting of Pages 1 through 98;

That as a CCR in this state, I am bound by the Rules of Conduct as Codified in WAC 308-14-130; that court reporting arrangements and fees in this case are offered to all parties on equal terms;

That I am not a relative, employee, attorney or counsel of any party to this action, or relative or employee of any such attorney or counsel, and I am not financially interested in the said action or the outcome thereof;

That upon completion of signature, if required, the original transcript will be securely sealed and the same served upon the appropriate party.

IN WITNESS WHEREOF, I have hereunto set my hand this 26th day of June, 2025.

_____
Sayge E. Manley, CCR No. 25008636
Certified Stenographic Reporter

Page 98

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Exhibit E



**Department of Corrections**
WASHINGTON STATE

OFFENDER I.D. DATA: **ALLEN, Gregory L.**
(Name, DOC#, DOB) **806649   9/1/1967**

## HEALTH STATUS REPORT

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| WSP-Main | WSP-Main-UND | 8/24/2020 |

### HOUSING RESTRICTIONS/LIMITATIONS

Lower Tier
Expires: 8/23/2021
No Upper Bunk
Expires: 8/23/2021

### ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS

Restrict  Standing - Time:10 minutes
Expires: 8/23/2021

### DURABLE MEDICAL EQUIPMENT/SUPPLIES

Compression Stockings - Specify  Remark: left thigh, #2
Expires: 8/23/2021
Wheelchair ID:1
Expires: 8/23/2021

### DIETARY NEEDS

### ALLERGIES

### OTHER

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Meyers, Jennifer L | 8/24/2020 | | |

DISTRIBUTION:  Original: ☐ Health Record
  Copy:  ☐ Offender   ☐ Control   ☐ Correctional Industries   ☐ Counselor/CUS   ☐ Dietary
    ☐ Education   ☐ Laundry/Clothing   ☐ Nursing   ☐ Recreation   ☐ Shift Sergeant
    ☐ Supply Tech   ☐ Unit Sergeant   ☐ Other:   ☐ Other:   ☐ Other:

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

Exhibit F



**Department of**
# Corrections
WASHINGTON STATE

OFFENDER I.D. DATA: ALLEN, Gregory L.
(Name, DOC#, DOB)   806649   9/1/1967

## HEALTH STATUS REPORT   MSDO7

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| WSP-Main | WSP-IMU-IMS | 12/30/2020 |

### HOUSING RESTRICTIONS/LIMITATIONS

### ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS

### DURABLE MEDICAL EQUIPMENT/SUPPLIES
Wheelchair ID:1   Remark: long distances
Expires: 12/29/2021

### DIETARY NEEDS

### ALLERGIES

### OTHER

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Meyers, Jennifer L | 12/30/2020 | | |

DISTRIBUTION:   Original: ☑ Health Record
Copy:   ☑ Offender   ☐ Control   ☐ Correctional Industries   ☐ Counselor/CUS   ☐ Dietary
☐ Education   ☐ Laundry/Clothing   ☐ Nursing   ☐ Recreation   ☐ Shift Sergeant
☐ Supply Tech   ☑ Unit Sergeant   ☐ Other:   ☐ Other:   ☐ Other:



OFFENDER COPY

COPIED AND DISTRIBUTED

JAN 13 2021

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-041 (draft Nov 2015)   Page 1 of 1   CORRESPONDENCE

Exhibit G

Allen vs Washington Dept. of Corrections, et al.
Jason Dean Koehler - April 17, 2025

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON AT TACOMA

_____

GREGORY ALLEN,                    )
                                  )
            Plaintiff,            )
                                  )
 vs.                              )     No. 3:23-cv-05746-BHS
                                  )
WASHINGTON STATE                  )
DEPARTMENT OF                     )
CORRECTIONS; JASON                )
KAEHLER; et al.,                  )
                                  )
            Defendants.           )

**CERTIFIED TRANSCRIPT**

_____

VIDEOCONFERENCE TESTIMONY UPON ORAL EXAMINATION OF
JASON DEAN KOEHLER
APRIL 17, 2025
141 Rogers Road
Prescott, Washington
Pages 1 through 81

_____

Taken before:

ChaRae Kent, CCR, RPR

Registered Professional Reporter and
Certified Court Reporter CCR #2408

For

Capitol Pacific Reporting, Inc.

800.407.0148

WWW.CapitolPacificReporting.com
Scheduling@CapitolPacificReporting.com



Allen vs Washington Dept. of Corrections, et al.
Jason Dean Koehler - April 17, 2025

Q. So you're saying that you don't think that you were the unit sergeant who got this document?

A. I never said that.

Q. Did you?

A. Can you repeat.  Did I what?

Q. Were you the unit sergeant who got a copy of this document?

A. Those documents are hung up in the sergeant's office.  I might have got a copy and hung it up.

Q. Hung it up.  Where?

A. To the right of the sergeant's desk.

Q. Are you the unit sergeant who gave a copy of this document to Offender Allen?

A. I can't guarantee yes or no.  I would have to see a time frame when I received it.

Q. Do you remember allegedly seeing Greg Allen standing up in his cell and allegedly determining that he didn't need a wheelchair?

A. I don't recall that.

Q. Are you saying it didn't happen?

A. I didn't say that.

Q. Okay.  How about, do you remember, after observing Greg Allen standing up, going and telling Jennifer Meyers that you saw him walking in the cell and he didn't need a wheelchair?


Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jason Dean Koehler - April 17, 2025

A.   Are you asking me if I remember this?

Q.   Yes.

A.   I don't remember.

Q.   Did it happen?

A.   I'm not saying it could not have happened.  I'm just saying I don't recall doing it.

Q.   Is that something that you might do if you see an inmate standing up when there is a wheelchair in this cell? Would you end up going to somebody like Jennifer Meyers and say, Hey, I just saw this guy standing up.  He doesn't need a wheelchair.  Is that something you might to?

          MR. THROGMORTON:  Object to form.  Calls for speculation.

BY MR. BONIN: (Continuing)

Q.   Go ahead.

          MR. THROGMORTON:  Go ahead.

A.   If you're asking me if we use a flow of information to talk to our medical staff, yes, we do.

BY MR. BONIN:  (Continuing)

Q.   Is that something you might do if you saw Greg Allen standing up?  Would you go to Jennifer Meyers and say, Hey, I just saw him standing up, he doesn't need a wheelchair?

          MR. THROGMORTON:  Same objection.  Calls for speculation.  Go ahead and answer, if you remember.

Capitol Pacific Reporting, Inc.                    scheduling@capitolpacificreporting.com
                                                                  800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jason Dean Koehler - April 17, 2025

Q. Have you ever requested that an HSR be modified for an inmate?

A. Not -- I don't believe I specifically have.  But again, like I said earlier, we rely on a flow of information.

Q. Okay.  So if you see something, you're going to go to them and say, Hey, I think this is an alleged issue that we might want to modify allegedly, right?

A. Again, I can't modify --

     MR. THROGMORTON:  Object to form.

A. Sorry.

     MR. THROGMORTON:  Sorry.  Go ahead.

A. I don't have the authorization to modify anything for HSRs.

BY MR. BONIN: (Continuing)

Q. But you have the authorization to report your beliefs to someone else, right?

     MR. THROGMORTON:  Object to form.  Go ahead.

A. We have the authorization to talk to staff about what is going on in the institution, yes.

BY MR. BONIN:  (Continuing)

Q. So there are different types of callouts.  How about classification callouts, do you know what that is?

A. Yes.  Are you asking me if I know what a classification callout is?

Q. Yes.

Page 48

Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

MR. BONIN:  Let's mark this, Madam Reporter.  I think we're at four.

(Exhibit No. 4 marked;

Description:  Initial Complaint.)

A.  Okay.

BY MR. BONIN:  (Continuing)

Q.  Does that refresh your memory with respect to what happened on December 30th, 2020?

A.  It doesn't refresh my memory, but I can read that, what that says.

Q.  What is your understanding of the complaint?

A.  It says that allegedly Jason Kaehler --

Q.  I'm sorry.  Where does it say allegedly?

A.  It says security guard, but I'm not a security guard either.  So I'm just saying -- this says security guard Jason Kaehler denied him access to a wheelchair and then he claims I went directly to Jennifer Meyers to have it altered.

Q.  Okay.  So do you deny that you denied him access to his wheelchair?

A.  I am denying that -- well, I'm not denying anything.  I'm just saying I don't recall this.  And if he was in his cell, how would he be able to observe me going directly to Jennifer Meyers.  That's why I'm confused.

Q.  Are you denying that you did not -- it says here, and



had it on the record.  But we are discussing the fact that there are some documents that I just got.  I'm pretty well done with the information that I have actually received in discovery and had time to review today.  But I am reserving the right to recall you.  But I'm done questioning you for today.

A.  Okay.

EXAMINATION

BY MR. THROGMORTON:

Q.  Jason, can I ask you a few?

A.  Yes, sir.

Q.  Are medical staff the only ones who can make an HSR?

A.  Yes, sir.

Q.  And they're the only ones that can change it?

A.  Yes, sir.

Q.  Were you ever in any position with DOC where you made or were responsible for making medical decisions like HSRs?

A.  No, sir.

Q.  And I wanted to ask you about administrative grievances, if I can.  Are there levels of review, like appellate review?

A.  Are you asking if, like, it gets investigated, then if an inmate appeals it, it goes to another level to be interviewed again?  Sorry.  You cut out.



Allen vs Washington Dept. of Corrections, et al.
Jason Dean Koehler - April 17, 2025

Q. Yeah.  How many levels of review are there if an inmate doesn't like the answer to a grievance?

A. I think it goes depending on what the grievance was, I'm pretty sure, like, medical, if I remember correctly, would usually go to a CUS.  And then maybe, obviously, for that for a CPM.  But I was always under the assumption that medical grievances also went through medical.  So they would investigate their own medical grievances.  So two, possibly three, if the inmate is pushing to appeal the decision.  But sometimes inmates just don't appeal it and just don't follow-up on it.

Q. And if they don't participate in the process, what happens to the grievances?  Does it just get closed?

A. Yes, I think it just -- I think it just...

          MR. BONIN:  Objection, calls for speculation.

A. From what I understand, it just goes to -- yes, it's closed if the inmate wasn't willing to talk about it, if I remember correctly.

BY MR. THROGMORTON:  (Continuing)

Q. Okay.  Okay.  As a correctional officer, when you're in the Washington State Penitentiary, a big part of your job is to observe the inmates, right?

A. Yes, sir.

Q. And to report your observations?

A. Yes, sir.



Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Q.  Okay.  That's all I've got.  Thank you.

        MR. BONIN:  Follow-up.

                        FURTHER EXAMINATION

BY MR. BONIN:  (Continuing)

Q.  Is your memory better for Mr. Throgmorton than it is for me?

A.  It is the same memory.

Q.  Thank you.

        Do you know whether my client ever got his wheelchair back?

A.  I don't remember.

Q.  Do you know how many months he went without his wheelchair?

A.  I don't remember.

Q.  And your memory is that you don't remember, but cannot deny the allegations that my client made that you observed him without his wheelchair, and then you went to talk to Ms. Meyers?

A.  Not specifically, I don't recall that.

Q.  But you can't deny that?

A.  I can't deny it.  I don't remember.  I'm not denying it. I'm not saying yes or no.

Q.  Okay.  So really what the policy is doesn't change whether that fact happened or not, does it?

Page 79

 

scheduling@capitolpacificreporting.com
800.407.0148

Allen vs Washington Dept. of Corrections, et al.
Jason Dean Koehler - April 17, 2025

C E R T I F I C A T E

STATE OF IDAHO              )
                           )  ss.
COUNTY OF BONNER           )

        This is to certify that I, ChaRae Kent, the undersigned Washington Certified Court Reporter, residing at West Richland, reported the within and foregoing deposition on the date herein set forth; that the deponent was first by me duly sworn pursuant to RCW 5.28.010, which authorizes me to administer oaths and affirmations; that said examination was taken by me in shorthand and thereafter transcribed, and that same is a full, true, and correct record of the testimony of said witness, including all questions, answers and objections, if any, of counsel.

        I further certify that I am not a relative or employee or attorney or counsel of any the parties, nor am I financially interested in the outcome of the cause.

        This transcript and invoice have been prepared and submitted for final production and delivery in accordance with all Washington State laws, rules and regulations, including WAC-308-14-130, WAC 308-14-135, RCW 18-145, and applicable court rules regulating formatting and equal terms requirements.  Alterations, changes, fees or charges that violate any of these provisions are not authorized by me.

        This certification does not apply to reproduction of this transcript by any means unless under my direct supervision and control.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Washington State CCR number this 28th day of August, 2025.


                        _____
                        CHARAE KENT, RPR, CCR
                        Certified Court Reporter in
                        The State of Washington
                        License CCR No. 2408

 Capitol Pacific Reporting, Inc.

scheduling@capitolpacificreporting.com
800.407.0148

Exhibit H

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

_____

GREGORY ALLEN,                    )
                                  )
              Plaintiff,          )
                                  )
         vs.                      )  NO. 3:23-cv-05746-BHS
                                  )
WASHINGTON STATE DEPARTMENT OF)
CORRECTIONS,                      )
                                  )
              Defendants.         )
_____

DEPOSITION UPON ORAL EXAMINATION OF GREGORY ALLEN
_____

August 1, 2025

Via Zoom Videoconference

GREGORY ALLEN vs WASHINGTON STATE DEPARTMENT OF CORRECTIONS
Gregory Allen, 08/01/2025

Washington.

A     Okay.

      MR. BONIN:  Object to form.

A     So, again, intimidation of a judge, theft 2.  There's a forgery, possession of stolen property, low-level property offenses.  I can't remember all.

Q     (By Mr. Throgmorton)  And did these occur between approximately 1982 and 2007?

A     No.  This was between 2000 and 2004.

Q     Okay.  Any criminal convictions that you can recall from prior to the year 2000?

A     Not felony.

Q     Okay.  Did you spend time in prison from 1982 to 2007?

A     Well, my first stay at the DOC was back in 2000 with the intimidation of a judge, and I was booked and released.  I was only there for a few hours.

Q     Okay.  Do any of your past crimes involve drug or alcohol offenses?

A     There was a DU- -- maybe a couple DUIs but -- yeah.

Q     How about vehicle offenses?

A     Well, I think the -- one of the theft 2s may have been one of the vehicle offenses.

Q     Okay.  So you stole a car or something?

      MR. BONIN:  Object to form.

A     No.  I didn't steal the car.  I had the keys to the car.

GREGORY ALLEN vs WASHINGTON STATE DEPARTMENT OF CORRECTIONS
Gregory Allen, 08/01/2025

The guy gave me the keys to the car.  I didn't want to plead guilty.  I just pled guilty to get out of jail.

Q   (By Mr. Throgmorton)  Do you have a conviction for resisting arrest?

A   I do believe there may be an old resisting arrest, which was a misdemeanor.

Q   Okay.  How about for eluding?

A   Yes, or attempted -- I think it was -- they said it was attempted eluding or something like that.

Q   Of a --

A   Attempting to elude --

Q   -- police vehicle?

A   Yeah.  I think it said attempting to elude a police vehicle or something like that, yeah.

Q   And then you mentioned -- I heard you say you were charged and convicted of intimidating a judge?

A   That's correct.

Q   Okay.  When did that occur?

A   That occurred -- well, the incident, I believe, was in 1999, and I believe I was convicted and sentenced in May or June of 2000.

Q   Okay.  Was that a felony or misdemeanor?

A   The intimidation of a judge is a felony, and I was given a DOSA sentence, although the alleged crime was not directly related, and I later had -- because my housing situation

GREGORY ALLEN vs WASHINGTON STATE DEPARTMENT OF CORRECTIONS
Gregory Allen, 08/01/2025

plea?

A   Trial.  And they paraded me before the jury in jail garb because my attorney didn't get me clothes.

Q   Was the crime for when you served 18.9 years?

A   They -- no.  I served from May of 2004 to December of 2007, then, like I said, I was taken -- I remained in custody.  I was taken back to the King County Jail.  Then, after I was convicted for that, I got four- or five-year consecutive sentences on that.  So I -- since I hadn't been released, I'm including the two counts of theft 1 and the felony elude with the allegedly making that threat to the attorney.

Q   Okay.  So --

A   I --

Q   I'm just trying to figure out the dates of continuous incarceration.

A   Well, I was in from May of 2004 all the way to, I believe, January of 2023.

Q   Okay.  That's the 18.9 years?

A   That's correct.

Q   Okay.  And it sounds like that was for multiple things, multiple different things?

        MR. BONIN:  Object to form.

Q   (By Mr. Throgmorton)  Okay.  Was that when you were most recently released was in February of 2023?

A   Well, I thought it was more towards the end of January, but

GREGORY ALLEN vs WASHINGTON STATE DEPARTMENT OF CORRECTIONS
Gregory Allen, 08/01/2025

it might have been February.

Q   Okay.  Since your most recent release from prison, have you sought any mental health treatment?

A   Yes.

Q   Okay.  From who?

A   The community.

Q   The community?

A   Yeah.

Q   Is that a place?

A   Well, I --

Q   I'm just trying to figure out if you went to see a physician.

A   What are you talking about?

Q   Did you go see a doctor or a therapist?

A   Both.

Q   Okay.  What was the name of the doctor that you went and saw?

A   Is that a HIPAA violation?

        MR. BONIN:  He's entitled to ask you that.

A   Well, I went to SeaMar.

Q   (By Mr. Throgmorton)  Okay.

A   And it was the University of Washington outpatient clinic in Federal Way.  The guy's name was -- goodness sakes.  I think it was -- no.  God, I just can't remember the guy's name.

Q   Okay.  Was it a therapist or a psychiatrist?

GREGORY ALLEN vs WASHINGTON STATE DEPARTMENT OF CORRECTIONS
Gregory Allen, 08/01/2025

testified under oath in this exhibit that Sergeant Kaehler, "Observed me not utilizing my wheelchair for a small function, which is within my medical ability." Did I read that correctly?

MR. BONIN: What page, what line, Counsel?

MR. THROGMORTON: This would be on page 1 of Exhibit 2, starting line 26.

A    Yeah, yeah, yeah. I see it.

Q    (By Mr. Throgmorton) Okay. Was that small function walking?

A    That small function was taking five steps from my bunk to the door.

Q    Okay. And you went on to state under oath that, "Sergeant Kaehler improperly surmised from his personal observation that I did not require a wheelchair because he observed me using my legs, and he intervened in my medical care by instructing the medical staff at the facility, mainly Jennifer Meyers PA-C, to remove my wheelchair by demanding a new health status report." Did I read that right?

A    Yes.

Q    All right. Did you go with Sergeant Kaehler when he went to speak to PA-C Jennifer Meyers?

A    I did not.

Q    Where were you while Sergeant Kaehler was talking to Jennifer Meyers?

A    I was in a solitary confinement.

Q    So you were in a cell?

A    Correct.

Q    You were not present for their conversation?

A    No.

Q    You don't know what was said between them?

        MR. BONIN:  Object to the form.

A    No.

Q    (By Mr. Throgmorton)  And neither one of them later told you what was said between them?

        MR. BONIN:  Object to the form.

A    Now, I just can't -- I don't want to be speculating on anything so -- well, no.  To be clear, I was not there for their conversation.  However, I had a valid health status report for my medical devices.

Q    (By Mr. Throgmorton)  Okay.

A    And what happened was I had a classification hearing and a staff member -- a couple staff members came to get me from my classification hearing.  I told them I needed my wheelchair, which is right there in front of my door, and they said, "You don't need it."

        And I go, "What do you mean I don't need it?"

        And they said, "Well, we were told by Kaehler that you don't need your wheelchair."

        And I objected to that.  So they went and got Kaehler,

Kaehler came back.  He took my wheelchair and went directly to medical to Jennifer Meyers, and about maybe 8 minutes later, 10 minutes later, he came back with another HSR and my wheelchair was gone.  And he went in there and told her that he felt that I did not need my medical aids so she removed it.

Q  Okay.

A  And this is not uncommon at DOC.  Staff members -- I don't know what it is with some of these people that work there, but they scrutinize your every move.  Okay?  The correctional staff I'm talking about.  If they -- if the corrections staff, not knowing you or your medical condition or why you need this or that, in their own mind they think, well, he doesn't need this because I seen him do that.  But they don't know what your disability is and what your physical limitations are and they have -- they're not supposed to be going to medical and telling staff to take your medical aids.  Okay?  That's just completely crossing the line.

Q  Okay.  But you weren't there so you don't know what he said.  Correct?

        MR. BONIN:  Object to the form of the question; asked and answered.  He's provided information related to the facts as he knows them.

A  Well, I tell you what.  I do know what he said.  I had -- I

spoke with other medical staff there, like the nursing staff in pill line, and they all told me Jason Kaehler told her to remove it -- Jennifer Meyers to remove my wheelchair from HSR.  Keep in mind he's only gone a few minutes.  Okay?  He leaves with my wheelchair, my HSR intact.  He comes back without my wheelchair and my wheelchair missing from my HSR.  So it doesn't take a rocket scientist to figure out what happened.  He went and told her to take that off my HSR.

And I tell you, medical staff there, they do not argue with correctional staff no matter what level they are.  Okay?  They just don't want to have any part of it.

Q   (By Mr. Throgmorton)  Okay.

A   Jennifer Meyers, had she been responsible, she could have come to me right away right then and addressed this issue or she -- what she actually should have done was told him to mind his own business.

Q   Which members of the prison medical staff told you that Jason Kaehler told Jennifer Meyers to remove your wheelchair?

A   It was the pill line staff.

Q   What was the name of the staff member?

A   I don't recall, but, you know, they talk, you know, and they're not going to lie to me.  Plus, I know what happened.  Okay?  I'm not stupid.

Q   Well, you weren't there so --

GREGORY ALLEN vs WASHINGTON STATE DEPARTMENT OF CORRECTIONS
Gregory Allen, 08/01/2025

C E R T I F I C A T E

I, REBECCA S. LINDAUER, a Certified Court Reporter in and for the State of Washington, residing at Lacey, do hereby certify:

That the foregoing deposition of GREGORY ALLEN was taken before me and completed on the 1st day of August 2025, and thereafter transcribed by me by means of computer-aided transcription; that the deposition is a full, true, and complete transcript of the testimony of said witness;

That the witness, before examination, was by me duly sworn to testify the truth, the whole truth, and nothing but the truth, and that the witness reserved signature;

That I am not a relative, employee, attorney, or counsel of any party to this action or relative or employee of any such attorney or counsel, and I am not financially interested in the said action or the outcome thereof;

That I am herewith securely sealing the deposition of GREGORY ALLEN and promptly mailing the same to MR. MICHAEL THROGMORTON.

IN WITNESS HEREOF, I have hereunto set my hand this 18th day of August 2025.

_____
Rebecca S. Lindauer, CSR#2402
Certified Court Reporter, in and for the
State of Washington, residing at Lacey.