THE HONORABLE BENJAMIN SETTLE

FEDERAL DISTRICT COURT

IN AND FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| Greg Allen  an individual, | ) | NO.:  3:23-cv-05746 |
| | ) | |
| Plaintiff, | ) | DECLARATION OF |
| | ) | GREGORY ALLEN |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF CORRECTIONS; and SGT. JASON | ) | |
| KAEHLER, individually and in his | ) | |
| marital community as well as in his | ) | |
| capacity as a Sargeant employed by the | ) | |
| Washington State Department of | ) | |
| Corrections; AND DOES 1-10. | ) | |
| | ) | |
| Defendants. | ) | |

The undersigned, Gregory Allen, under penalty of perjury under the laws of the State of Washington hereby states:

I am Greg Allen.  I am 58 years old.  The following information cited by Defendants as well as the underlying report of a person identified as their expert are factually incorrect. Writer (Mr. Throgmorton, Esq.) is relying upon conclusory statements written by someone (Mario Paparozzi, PhD) who has made errors in a paper review of my history.  The references that I am commenting on in this part of my Declaration all refer to the citations to the Declaration of Michael Throgmorton in Support of Defendants Motion for Summary Judgment at Exhibit A.

Declaration  - 1

**BONIN LAW, P.S.**
**P.O. Box 783 Shelton, WA 98584**
**(360)427-7474**
(360)427-7475

I respond to the way that information has been used in the Memorandum and where possible from the Memorandum itself. When I have to go into the exhibit I do so, but the exhibit is clearly flawed.

**Paragraph by paragraph review of Defendants "Facts."**

On page four of the Motion filed, Defense counsel references that his expert reports to him that I was sentenced for 240 months in the year 2000. This is incorrect. I was sentenced to 240 months on non-violent offenses in August of 2009. I was raped at DOC in 2009. This case is about the time from August of 2009 forward. My release date from prison was in January of 2023. I do not even know how I could begin to address all the report writer of exhibit A's summaries of numbers intermixed with his terms like "extreme outlier" because they are factually inaccurate, conclusory, contain errors and hearsay representations of disputed fact.

On page four of the Defendants' memorandum the state talks about Dr. MaryAnn Curl M.D. They use her on this page to try to discuss the committee procedures which existed when Dr. Curl served on a committee she identified as a single cell housing committee. Dr. Curl has nothing to do with the single cell housing issue in my case, and she even said she was not part of any single cell analysis for me. The only things Dr. Curl has to do with my case are two things: a) she appears to be in conflict with the sworn testimony of Ms. Meyers, PAC on contact issues with her before Sgt. Koehler took my wheelchair, and b) she is the medical professional who, after a lengthy time without my having that wheelchair, met with me personally and then reinstated my wheelchair. Her actions reinforced the fact that I should have been allowed to use my wheelchair in my cell, which meant I should have been in an ADA wheelchair compliant cell.

On page 5 of the Defendants memorandum the state says that I did not report the fact that I was raped in prison in August of 2009 until 2010. (lines 4-14). This is incorrect and is clearly error in analysis of the file. I reported an inmate forcing me to provide him oral services and then threatening to kill me if I did not keep my mouth shut approximately six

Declaration - 2

hours after it happened and the location of the rape was at the Washington State Correctional facility in Mason County, Washington, not Coyote Ridge. It did not take me a year.  It took me six hours because I had to wait until everyone else went to breakfast.  I immediately went to the Sargeant who immediately had me pack up all my belongings and moved me far away from that cell block. I always followed the medical policy after that of reporting what had happened under DOC policy 690.400 which told me I had to report the medical issues in association with my housing needs at every facility I went to, which was required.

Page 5 in the same section of the Defendants memorandum also says that I was infracted and placed in solitary confinement because I was refusing group housing at Coyote Ridge.  This is incorrect.  Per DOC policy 690.400 I identified my disability, the assault and my single cell ADA accommodation needs.  Staff refused to provide me with a single cell ADA accommodation and then retaliated by infracting me, placing me in solitary confinement and demoting me to closed custody, which is in direct violation of Federal ADA law 28 CFR 35.152, section B- 2.

At page 5 of the Defendants' Memorandum beginning at line 15 it appears that someone is trying to recreate my efforts to get ADA compliance through a paper review. The review appears to include an allegation that I made a death threat to kill anyone with whom I was housed.  That did not happen.  I never threatened to "kill anyone with whom I was housed."   I was there, so I can tell you that I was asking for single cell ADA accommodation under 28 CFR 35.152 (b)(2).  Disability Rights Washington sent me a copy of DOC Policy 400.020(V)(A); DOC Policy 690.400 and Federal ADA Law 28.CFR35.152.  I memorized them. I would quote it to them, sometimes orally and sometimes in writing.   I agree that I got an infraction for the alleged threat which then put me back into the improper security classification of solitary confinement.

On page 6 of the State's memorandum, they appear to try to summarize someone else's paper review summary of what is written to be "the next decade" of my efforts to get ADA single cell accommodation compliance and the DOC's refusals to do so.

Declaration  - 3

The summary relied upon for this is a summary of whatever is contained in other documents (I surmise), but somewhere between what factually happened and that summary and then the paragraph on page six talking about it all – there is incorrect information.

I could speak to every paragraph in that multi-page citation of "Exhibit A" on pg. 6 of that Memorandum, but I will focus only on what I think is most glaring and potentially impactful. I, for example, have never once refused permanent single-cell housing in general population as the summary indicates. I have never said that I preferred to remain in solitary confinement than in a single cell. I have, a few times, when given an option of having a specific cell mate or going back to solitary agreed to try and I did try. I managed for a brief period with one because this specific cellmate was much smaller than me and I did not feel threatened. When they moved him out of the cell they moved in a larger and more threatening person who was there for about a week and then they moved in a violent convicted murderer who was threatening me and discussing his violent murders graphically in the process. His name was Gordon Hammock.

Both new cellmates triggered me and everything I suffer from, and I was back to begging for my needed single cell accommodation. It is inaccurate to say that I was not in good faith trying to find a way to make DOC's refusal to accommodate my disabilities with single cell housing work. I did make effort several times. There were times when I was instructed to hunt for a suitable roommate while my mental health professionals had issued HSR's to allow me single cell on short term. See Exhibit H. I was supposed to go to common areas and see who I would be able to accept. In those efforts I witnessed violent fights in common areas, and I was even attacked in the day room by an inmate myself. I reported that one to the Sargeant and the Sargeant infracted me and sent me to solitary confinement. I have also noted all the conclusory assertions and opinions and statements in the summary which I factually dispute and believe a jury will also agree with me over in hearing the facts through witnesses, of "demanding" and "don't work with staff" and "purposeful intent to control his environment." My own reading of that summary is done with the knowledge of what was actually happening in areas I can identify as close to being correct at least as to timing, but I disagree with the factual portrayals.

Declaration - 4

Contrary to the statements in the Memorandum, I have been allowed to be placed in a single cell for up to six months in general population. This happened at Stafford Creek in 2019.  There are two HSR's on point signed by Elizabeth Zieger, a mental health professional at Stafford Creek.  They were approved by Headquarters' Director of Mental Health, Karie L. Rainer.  They put future conditions on them, but they were recognizing my needs.  I tried, but could meet the future conditions.

What I knew was that I was trying to follow the policies and rules to get what I need for my physical and mental health.  I can also add that I am not just mentally impacted, I am in fact physically disabled, and I have been classified as such for most of my life.  The impact of my anxiety attacks causes me physical manifestations of illness as well as flare up of the chronic pain related to my physical disability.

On page 6, at line 9 of the Motion, the factual assertion that I was released from custody in February of 2025 is not accurate.  I was released in January of 2023.

I next turn to page 6 lines 12-20 as follows:

 1)  The History of my Wheelchair:

 My chronic pain ebbs and flows.  I am in constant pain, but when I am doing well, I can walk approximately twenty to thirty feet without severe pain.  I am allowed to wheel the wheelchair myself for short distances, but for long distances the Department of Corrections authorized an access assistant (wheelchair pusher) for long distances only.  The situation existing at the time when Sgt. Kaehler violated my rights as follows:

*On August 24, 2020, Jennifer Meyers renewed my Health Status Report (HSR) for my wheelchair. See attached Exhibit A.

* On 10-27-2020 the DOC ADA Coordinator issued me an ADA Accommodation Report for an Access Assistant (wheelchair pusher) for long distances. See attached Exhibit B.

*On 12-30-2020, Jason Kaehler denied me access to my wheelchair to attend a classification hearing, and I was unable to go to that hearing.  After he denied my access he went and caused my HSR to be modified by physically taking and replacing it with a different one.  See attached Exhibit C; but compare to Exhibit A.

Declaration  - 5

Unit Sgt. Kaehler denied me access to the wheelchair for this classification meeting. It was not a distance where I would need an access assistant based upon distance, but when you are in solitary, you are put in handcuffs for transfer from your cell to the location for these meetings so I would not be able to wheel myself. Therefore, if they were going to allow me to use my wheelchair, they would either have to have someone push me or remove my handcuffs. The refusal to allow me the wheelchair caused me to miss the hearing and I had a right to be there, but because they denied me my wheelchair, they had the meeting without my attendance, and I wanted to be there.

I complained about this to Sgt. Kaehler, who responded that he saw me walking (to the door) and he demanded to know why I even had a wheelchair and asked me about my disability. I told him the law does not allow him to ask me things like that. He then looked at me red faced and ripped my HSR for my wheelchair off of my door and then stormed off to Jennifer Myers, PAC who, within mere minutes, modified the HSR to read that I was now only allowed to have the wheelchair (not just an access assistant) for long distances. See attached Exhibit B. I had to go through the grievance process for a period of about 6 months with no wheelchair for short distances. During the appeal process Kaehler wrote:

**"IM Allen claims he needs a wheelchair at all times but the whole time I was at his cell he was walking just fine and standing with no issues."**
See Exhibit D is a true and correct copy of Sgt. Kaehler's written statement.

About six months after I was deprived of my wheelchair. Dr. Curl came to my cell and met me, we had a long discussion about my medical needs, and she did a comprehensive review of my medical records. She came back with conclusions that my disabilities were pre-existing medical conditions and that I needed to be accommodated under Federal ADA law. See Exhibit E. Dr. Curl initially wrote the new HSR to indicate I could use the wheelchair everywhere except in my cell on 6/25/21, but then she modified it to include the fact that I could use my wheelchair in my cell by eliminating all the identified locations for use. See Exhibits E and F.

In response to the fact assertion made on page seven of the memorandum that PA Myers exercises her own independent judgment in placing and removing restrictions ( State

Declaration  - 6

Brief at pg. 7, line 3-5) I have personal knowledge that PA Myers had not seen me to make any assessment of my medical needs since 8/24/2020.  See attached HSR which includes my wheelchair needs at Exhibit A.   PA Myers did no physical exam, nor did she even come out to talk to me, before this change and it was minutes between a red-faced Sgt. Koehler ripping my HSR off the door and coming back from her office with one to support taking it away.

He grabbed my wheelchair and as he was exiting my pod, he turned his head and smirked at me.  I can only describe what I was feeling when this happened like this:  I felt helpless and abandoned. I knew without it I was in for some serious physical pain.   That is how I was made to feel, and I felt that way for about six months until my wheelchair was returned and yes, it did cause me pain.

In the process of going through getting my wheelchair back I suffered fifteen days of punitive solitary confinement for speaking out about it and they denied  me access to commissary.  This was punishment over my disability and my accommodation needs.  I cannot control what Officers write to create the basis for these punishments, but that is what it was.

In response to Defendants memorandum at pg. 7 of the fact recitations at line 16, where the writer discusses how PA Meyer's office is in a different unit from the one where I was housed, what the writer is missing is the fact that PA Meyers was not in her office, but in the IMU CLINIC which is in the unit where I was housed.

In response to the statements made in the State's Memorandum for Summary Judgment at page 8, the writer of this Memorandum states that I cite to no program or service I was denied due to my medical provider's decision to limit my wheelchair to long distances only.  See pg. 8 at lines 1-9 of that Memorandum.

I have much to say about that.  My medical provider did not decide to prevent me from being able to use my wheelchair to go to the classification review that I had the right to attend.  **That decision was exclusively Sgt. Kaehler's because he saw me walking**.  He did not go to get a new HSR until after he had already refused the use of the wheelchair for my transport to the classification meeting.  He did not cause my HSR to change until after he asked me why I needed a wheelchair, and I responded that it was my private medical

Declaration  - 7

BONIN LAW, P.S.
P.O. Box 783 Shelton, WA 98584
(360)427-7474
(360)427-7475

information.  The red face in response to my protecting my private medical information and the smirk as he was wheeling my wheelchair away made it absolutely clear that what he was doing was entirely intentional and because he was mad and did not believe that I was disabled.

Also at pg. 8, line one of the fact section of this memorandum the writer tries to say that I can cite no program or service I was denied.  I have been fighting to try to get proper application of my disability needs with the Department of Corrections since August of 2009.  I have had to look at policies of the department as well as all the various codes of law I have included in this declaration so much that I pretty much have memorized them.  I can tell you that while I have been denied programs and services, it is not just program and services.  I am also entitled to <u>AUXILLARY AIDS</u>, SERVICES, and REASONABLE ACCOMODATION.  This is not even the first time this has happened to me. An Officer took a cane I was previously allowed to use while in the lunchroom in the Monroe facility in the year 2012 for the same reason (saw me walking).  See Exhibit L.  There was another incident involving my "boot."

In this situation, I was denied my auxiliary aid of a wheelchair, and it was very clearly done with malice.  DOC staff had made it clear to me that they had  long been sick to death of me constantly fighting to get what I needed.

I believe I have addressed everything that the writer of the State's memorandum has stated under the fact section of the state's memo, but I do think it is important to note that I saw in the Argument section on the next page on pg. 9 at line 5-6 that the writer again repeats that I was released in February of 2025.  Again, I was released from prison in January of 2023. It seems to me that a two-year mistake made once as a typo makes sense, but they keep repeating this statement.  I think that might relate to the dispute I had with DOC over whether I was or was not on "Community Supervision" since Mr. Throgmorton has orally raised the issue so much.  I am on Community Supervision.  At the same time, I have a letter from some time ago saying I am not supposed to be, but I am.  See Exhibit G.  In my classification reviews (every 6 months), I even asked and confirmed that I was not subject to community supervision because community supervision meant that I would get free housing.  In every

Declaration  - 8

review they told me I would not be on community supervision, and I was therefore not entitled to those services.  As I was leaving, they told me I was on community supervision, but for the crimes that the letter told me I was not on community supervision over.  Thus, I was still not entitled to a housing voucher.  Even so, with exception to medical issues, I have tried to be compliant with terms even though I should not be on Supervision.  But that is an entirely different matter and is not important in this one.

There are things I feel the Court should know about me as the information I convey here was known to the Defendants. I feel they tried to pick things from my past in terms of my criminal history that they clearly knew about because I was in prison as punishments related to guilty findings. I would like you to know what they already do:

I have an 8th grade education.  I had a difficult life growing up and suffered sexual abuse at the hands of an older sibling. I have been determined by providers and specialists, including in written testing as being someone highly susceptible to victimization. I have been physically disabled since the year 1980 when I suffered horrible burns over my body leaving me in chronic pain and with personal injury.  I have movement restrictions in relation to these injuries, and they are permanent.  I am in fact a qualified disabled person under the ADA. I am getting SSDI based on my disability which is documented with SSI as starting in 1980.

I have been diagnosed with mental disability under the DSM IV, again even by the defendants' own specialist. State providers for the prison system who worked with me were saying I should be getting a single cell in general population. It is my understanding that even Dr. Curl stated she agreed with that when deposed. I am currently getting mental health treatment through SeaMar and the Community for mental health and physical care. I continue to have nightmares of the rape in prison as well as being back in solitary confinement where I was placed with restrictions normally reserved for high violent offenders. I have suffered more than the average criminal because people have their own opinions on what "disabled" looks like – and they will use their powers to enforce their views.

Declaration  - 9

**BONIN LAW, P.S.**
**P.O. Box 783 Shelton, WA 98584**
**(360)427-7474**
(360)427-7475

I declare under penalty of perjury under the laws of the state of Washington that the foregoing statement is true and accurate.

Signed this 20th day of September 2025 in Mason County, WA.

_Greg Allen_

Gregory Allen

**BONIN LAW, P.S.**
P.O. Box 783 Shelton, WA 98584
**(360)427-7474**
(360)427-7475

# EXHIBIT

# A


**Department of**
## Corrections
WASHINGTON STATE

OFFENDER I.D. DATA: **ALLEN, Gregory L.**
(Name, DOC#, DOB)    **806649** ▇ **1967**

# HEALTH STATUS REPORT

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| WSP-Main | WSP-Main-UND | 8/24/2020 |

### HOUSING RESTRICTIONS/LIMITATIONS

Lower Tier
Expires: 8/23/2021
No Upper Bunk
Expires: 8/23/2021

### ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS

Restrict Standing - Time:10 minutes
Expires: 8/23/2021

### DURABLE MEDICAL EQUIPMENT/SUPPLIES

Compression Stockings - Specify  Remark: left thigh, #2
Expires: 8/23/2021
Wheelchair ID:1
Expires: 8/23/2021

### DIETARY NEEDS

### ALLERGIES

### OTHER

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Meyers, Jennifer L | 8/24/2020 | | |

**DISTRIBUTION:**  Original ☑ Health Record
Copy: ☐ Offender    ☐ Control    ☐ Correctional Industries    ☐ Counselor/CUS    ☐ Dietary
☐ Education    ☐ Laundry/Clothing    ☐ Nursing    ☐ Recreation    ☐ Shift Sergeant
☐ Supply Tech    ☐ Unit Sergeant    ☐ Other:    ☐ Other:    ☐ Other:

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

# EXHIBIT

# B



**Department of Corrections**
WASHINGTON STATE

PATIENT I.D. DATA: **ALLEN, GREGORY**
(name, DOC #, birthdate) 806649 ███ 1967

Housing Unit: UND/DE104

## ACCOMMODATION REVIEW COMMITTEE -- OFFENDER NOTIFICATION

DATE
October 27, 2020

Accommodation request for   Access Assistant for long distances only.

was reviewed by the Accommodation Review Committee on _____ October 27, 2020 _____ and was:

☒ Approved – See Comments.

☐ Not approved – See Comments.

☐ Deferred at this time – See Comments.

Comments:
Access assistant for long distances only.
Expiration date: 10/31/2021

PLEASE CONTACT YOUR FACILITY ADA COORDINATOR IF YOU HAVE ANY QUESTIONS

| ADA COORDINATOR SIGNATURE | DATE |
|---|---|
| *Karen Jorss, HSMI* | 10/28/20 |

Distribution:   **ORIGINAL** – Individual       **COPY** – ADA Coordinator, Health Record

State law and/or federal regulations prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-510 (04/17/2019)          DOC 690.400          CORRESPONDENCE: General Correspondence

# EXHIBIT

# C



**Department of Corrections**
WASHINGTON STATE

OFFENDER I.D. DATA:  ALLEN, Gregory L.
(Name, DOC#, DOB)    806649 ████ 1967

## HEALTH STATUS REPORT    *MSDO7*

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| WSP-Main | WSP-IMU-IMS | 12/30/2020 |

**HOUSING RESTRICTIONS/LIMITATIONS**



**ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS**

**DURABLE MEDICAL EQUIPMENT/SUPPLIES**

Wheelchair ID:1   Remark: long distances
Expires: 12/29/2021

**DIETARY NEEDS**

**ALLERGIES**

**OTHER**

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Meyers, Jennifer L | 12/30/2020 | | |

DISTRIBUTION:   Original: ☑ Health Record
Copy:   ☑ Offender    ☐ Control    ☐ Correctional Industries    ☐ Counselor/CUS    ☐ Dietary
☐ Education    ☐ Laundry/Clothing    ☐ Nursing    ☐ Recreation    ☐ Shift Sergeant
☐ Supply Tech    ☑ Unit Sergeant    ☐ Other:    ☐ Other:    ☐ Other:

OFFENDER
COPY

COPIED AND DISTRIBUTED

JAN 13 2021

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-041 (draft Nov 2015)                Page 1 of 1                CORRESPONDENCE

# EXHIBIT

# D

/12

JAN 0 6 2021

# Department of Corrections
WASHINGTON STATE

# INITIAL SERIOUS INFRACTION REPORT

# 126

Allen, Gregory
Offender name

806649
DOC number

D7 IMU S
Facility/housing assignment

12/30/20
Infraction date

12/30/20
Incident date

1025
Incident time

IMU S D7
Incident place

506, 600
Rule violations

Witnesses

## NARRATIVE

State a concise description of the rule violations, (e.g., injuries, property damage, use of force) and answering the questions of When? Where? Who? What? Why? and How? Attach all related reports.
*(Work Release offenders may submit written comments to their case manager)*

On 12/30/20 at approx.. 1025 I, SGT Kaehler 7253, was giving IM Allen, Gregory 806649 an updated HSR staying "Wheel chair for long distant." When I gave IM Allen the HSR he became verbally aggressive to me saying "Why the fuck did you contact medical and manipulate them into changing my HSR." I told IM Allen "You told me earlier that medical was lying saying that you needed the wheel chair at all times and medical said you only need it for long distant. So I was double checking with medical and they wanted the HSR to say "For long distant"". IM Allen was standing pacing back and forth the whole time he was yelling at me and cursing at me. IM Allen then got close to the window and said "When I get out of here I am going to kick your ass you mother fucker." Then he punched the door. IM Allen claims he needs a wheelchair at all times but the whole time I was at his cell he was walking just fine and standing with no issues. IM Allen attempts to manipulate people with his attitude and being argumentative. When I was walking away from IM Allen he yelled "Go get me fucking medical now mother fucker!"

Evidence: ☐ Yes ☒ No    Photo(s)/video: ☐ Yes ☒ No    Evidence locker number: _____

Evidence case number: _____    Description of evidence: _____

Offender placed in: ☐ Pre-Hearing Confinement ☐ Administrative Segregation  Date: _____

Recommended sanctions: _____

## ALLEGED VICTIMS

Name: _____    ☐ Employee/contract staff  ☐ Volunteer/visitor/other  ☐ Offender DOC #

Name: _____    ☐ Employee/contract staff  ☐ Volunteer/visitor/other  ☐ Offender DOC #

Related reports attached: ☐ Supplemental ☐ Medical ☐ Witness statements ☐ Other: Specify _____

## APPROVALS

Kaehler, Jason
Reporting employee/contract staff

Signature

2 FS
Shift/days off

Infraction Reviewer

Signature

Date

DOC 17-076 (Rev. 06/01/18)
Scan Code IF01

Page 1 of 2

DOC 320.200, DOC 460.000,
DOC 580.655, DOC 780.200

# EXHIBIT

# E



**Department of Corrections**
WASHINGTON STATE

OFFENDER I.D. DATA: ALLEN, Gregory L.
(Name, DOC#, DOB)   806649 ██ 1967

## HEALTH STATUS REPORT

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| WSP-IMU | WSP-IMU-IMS | 6/25/2021 |

### HOUSING RESTRICTIONS/LIMITATIONS

Lower Tier
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs
No stairs, may do limited steps
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs
No Upper Bunk
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs

### ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS

Restrict Lifting - Lbs:2
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs
Restrict Standing - Time:10 minutes
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs

### DURABLE MEDICAL EQUIPMENT/SUPPLIES

Compression Stockings - Specify  Remark: Left leg thigh high 15-20 mmHg;
right leg as current
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs
Crutches Quantity:2 ID:N/A  Remark: Not to be used while in IMU.  ADA
accommodation to be renewed annually
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs
Brace  Remark: Not to be used while in IMU.  Walking boot (MED) ADA
accommodation to be renewed annually
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs
Shower Chair ID:N/A  Remark: To be used while in IMU
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs
Wheelchair ID:No   Remark: To be used while in IMU.  Use whenever
outside of cell (in POD, MOD, elsewhere) and for transport
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs

### DIETARY NEEDS

### ALLERGIES

### OTHER

Two extra blankets
Expires: 6/24/2022      ☒ Meets Disability Accommodation Needs

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Curl, MaryAnn W | 6/25/2021 | | |

**DISTRIBUTION:** Original: ☐ Health Record
Copy:  ☑ Offender    ☐ Control    ☐ Correctional Industries    ☐ Counselor/CUS    ☐ Dietary
       ☐ Education    ☐ Laundry/Clothing    ☐ Nursing    ☐ Recreation    ☐ Shift Sergeant
       ☐ Supply Tech    ☐ Unit Sergeant    ☐ Other:    ☐ Other:    ☐ Other:

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written
consent of the person to whom it pertains, or as otherwise permitted by law.*

# EXHIBIT

# F



**Department of Corrections**
WASHINGTON STATE

## HEALTH STATUS REPORT

OFFENDER I.D. DATA: **ALLEN, Gregory L.**
(Name, DOC#, DOB)    **806649** ■ **1967**

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| WSP-Main | WSP-IMU-IMS | 11/22/2021 |

### HOUSING RESTRICTIONS/LIMITATIONS

Lower Tier
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs
No stairs, may do limited steps
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs
No Upper Bunk
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs

### ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS

Restrict Lifting - Lbs:2
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs
Restrict Standing - Time:10 minutes
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs

### DURABLE MEDICAL EQUIPMENT/SUPPLIES

Crutches Quantity:2 ID:N/A  Remark: ADA accommodation for annual
renewal
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs
Compression Stockings - Specify  Remark: Left leg thigh high 15-20 mmHg;
right leg as current
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs
Brace  Remark: Walking boot (medical); ADA accommodation for annual
renewal
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs
Shower Chair ID:0
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs
Wheelchair ID:No
Expires: 11/21/2022                         ☒ Meets Disability Accommodation Needs

### DIETARY NEEDS

### ALLERGIES

### OTHER

Two extra blankets
Expires: 11/22/2022                         ☒ Meets Disability Accommodation Needs

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Curl, MaryAnn W | 11/22/2021 | | |

**DISTRIBUTION:** Original: ☐ Health Record
Copy: ☐ Offender    ☐ Control    ☐ Correctional Industries    ☐ Counselor/CUS    ☐ Dietary
☐ Education    ☐ Laundry/Clothing    ☐ Nursing    ☐ Recreation    ☐ Shift Sergeant
☐ Supply Tech    ☐ Unit Sergeant    ☐ Other:    ☐ Other:    ☐ Other:

State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-041 (draft Nov 2015)                    Page 1 of 1                    CORRESPONDENCE

# EXHIBIT G



**Department of**
**Corrections**
WASHINGTON STATE



**To:**          Gregory Allen 806649 - MCC-SEG S-248

**From:**       Archibald, Harold P. (DOC)
**Sent:**        04/12/12

**Subject:**    Message from Records Staff – You have no DOC
Supervision upon release to community.

I have been asked by Correctional Records staff in Olympia
to inform you that you will not have DOC Supervision when
you release to the community.

If you have further questions – please Kite Records staff.

To summarize what was passed on to me – state law 5891
says "the department shall supervise every felony offender
sentenced to community custody pursuant to RCW
9.94A.701 or 9.94A.702 whose risk assessment classifies
the offender as one who is at a high risk to reoffend."

Records staff indicates this means the DOC now does not
have the authority to supervise offenders that do not meet
these criteria – even if a court ordered supervision. In your
case – Records staff in Olympia reviewed your sentencing
and found you were not sentenced per RCW 9.94A.701 or
9.94A.702 (violent crime, crime against a person, sex
offense, DOSA, eligible drug offense etc.) therefore DOC
cannot supervise you in the community – even on the
causes which you were ordered by a judge to have
supervision on.

I am not an expert on Records issues, so this is the most I
can pass on to you so, again, further questions regarding
this should be directed to Records staff. CRT 1 Danielle
Hedblum in Olympia is the Records staff that asked me to
forward this info to you.

Harold Archibald, CC3
MCC SEG-IMU

# EXHIBIT H



**Department of**
**Corrections**
WASHINGTON STATE

**HEALTH STATUS REPORT**

OFFENDER I.D. DATA: **ALLEN, Gregory L.**
(Name, DOC#, DOB)  **806649** ▬ **1967**

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| SCCC | SCCC-IMU-F | 10/16/2018 |

**HOUSING RESTRICTIONS/LIMITATIONS**

Single Cell  Remark: Mr. Allen is expected to find a cellie by 4/16/19. If he doesn't one will be selected for him.
Expires: 4/16/2019

**ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS**

**DURABLE MEDICAL EQUIPMENT/SUPPLIES**

**DIETARY NEEDS**

**ALLERGIES**

**OTHER**

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Rainer, Karie L | 10/16/2018 | | |

DISTRIBUTION:  Original: ☐ Health Record
          Copy:  ☐ Offender      ☐ Control          ☐ Correctional Industries   ☐ Counselor/CUS   ☐ Dietary
               ☐ Education     ☐ Laundry/Clothing  ☐ Nursing               ☐ Recreation     ☐ Shift Sergeant
               ☐ Supply Tech   ☐ Unit Sergeant    ☐ Other:                ☐ Other:         ☐ Other:

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-041 (draft Nov 2015)                    Page 1 of 1                    CORRESPONDENCE



**Department of Corrections**
WASHINGTON STATE

OFFENDER I.D. DATA: **ALLEN, Gregory L.**
(Name, DOC#, DOB)    806649 ███ 967

## HEALTH STATUS REPORT

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| SCCC-IMU | SCCC-IMU-F | 11/7/2018 |

### HOUSING RESTRICTIONS/LIMITATIONS

Single Cell  Remark: Mr. Allen is expected to find a cellmate by 5/14/2019. If he does not, one will be selected for him.
Expires: 5/14/2019

### ASSIGNMENT/WORK/TRANSPORTATION/ACTIVITY RESTRICTIONS/LIMITATIONS

### DURABLE MEDICAL EQUIPMENT/SUPPLIES

### DIETARY NEEDS

### ALLERGIES

### OTHER

Approved by K. Rainer, PhD, Director of Mental Health

| HEALTH SERVICES PROVIDER (Stamp/Print and Initial) | DATE | ALTERNATE HEALTH SERVICES STAFF (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Zeiger, Elizabeth A  Psych 4 | 11/7/2018 | | |

DISTRIBUTION:   Original: ☐ Health Record
Copy:  ☐ Offender   ☐ Control   ☐ Correctional Industries   ☐ Counselor/CUS   ☐ Dietary
☐ Education   ☐ Laundry/Clothing   ☐ Nursing   ☐ Recreation   ☐ Shift Sergeant
☐ Supply Tech   ☐ Unit Sergeant   ☐ Other:   ☐ Other:   ☐ Other:

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

# EXHIBIT I

Aris #

# BADLANDS HUMAN SERVICE CENTER
Pulver Hall
Dickinson, ND 58601

## PSYCHIATRIC EVALUATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CLIENT NAME: GREGORY ALLEN          DATE OF EVALUATION: 09/23/98

DOB:                                PSYCHIATRIST: LEONARD CONRADSON

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IDENTIFYING INFORMATION:

Gregory Allen is a 31 year old inmate brought from the Hettinger County Jail by the Adams County Sheriff for this evaluation.

## HISTORY:

Greg had attempted to hang himself while being in jail last night. He indicates that he is sorry that they found him. He wished they would not have as then he would be with his father in a better place. His father died on September 14th. At that time, Gregory was in jail in Seattle, where he had been living with his father. He wanted to get out of jail, so that he could care for his father as his father was elderly and suffering with caner. The Judge would not release him for that reason. His father, subsequently, was found dead in his bathroom. The Judge did allow Gregory out of jail to attend his father's funeral. After attending the funeral, Gregory did not return to the jail, but instead jumped in his car and left the state. He came to North Dakota, because his mother lives here in Hettinger. He did let an uncle know of his plan, so the police in Hettinger were keeping an eye out for him. Shortly after driving into town, he was stopped and arrested for driving without a license and also for being at large from his incarceration in Seattle. Gregory states he cannot handle living in the city anymore, particularly now that his father has died and his memories of the city are connected to his father. He swears he will kill himself before he will return to Washington. Washington is indicating that they do want him back to serve out his time. He states he is in jail for traffic offenses and does not feel it reasonable that he be sent back there to finish any time. As mentioned, he is threatening suicide, before he will return.

## PERSONAL AND FAMILY HISTORY:

Greg grew up in Washington. He is the second youngest in a sibship of five. His mother left his father when he was 13 years old. Gregory had been adopted by his parents. He is very angry with his mother for having left and for what he calls her abusive treatment towards him and the family when she was with them. He has been living with his father, looking after him for the past 10 or 15 years as his father has become elderly and as mentioned was suffering with cancer. Gregory does have a history of some

"THIS REPORT IS CONFIDENTIAL. It is not to be copied or made available to any person or agency without the written consent of the client or the client's parent or guardian."

GREGORY ALLEN
Psychiatric Evaluation
Page 2

depression.   He checked himself into the hospital in 1985.   He was in St. Frances Hospital in Federal
way, Washington.   He has also been hospitalized at Valley General Hospital in Kent, Washington.   He
was placed on Klonopin and Depakote in 1985. He took it for a couple of years and then discontinued it.
He states he went back last year for a renewal of his prescription.   He has not been taking any
medications in the past several months.   He denies that he drinks or uses any street drugs.   His sister,
who is younger than he, lives in California.   He has two older brothers in Washington.   He states he was
wanting to get a fresh start in North Dakota and is very angry about Washington wanting him back.

## MENTAL STATUS EXAM:

Greg was interviewed in handcuffs and angle shackles.   He was alert and oriented.   His affect was
reactive.   His mood was depressed.   He was tearful several times during the interview.   He also
displayed a fair amount of anger.   He did not show any signs of a thought disorder.   His cognitive skills
appear to be intact.   His judgment is poor.   His insight is poor.   His intelligence level is average.   He
admits to recent suicidal thoughts and attempts and threatens to repeat his attempts, if he is forced to
return to Washington.

## DIAGNOSIS:

Axis I      Adjustment reaction with depression
            Major depression, recurrent, moderate severity
Axis II     Personality disorder, NOS with antisocial and dependent features
Axis III    No diagnosis
Axis IV     Stress relative to recent loss of father, legal problems resulting in incarceration, relative
            estrangement from family of origin
Axis V      Current GAF:  15

## TREATMENT PLAN:

Gregory is to appear in court this afternoon to face charges relative to his being extradited back to
Washington state.   He states he plans to fight his return to Washington.   He continues to be quite
unstable and making suicidal threats.   It is recommended that he be committed for further assessment
and treatment at the forensic unit at the North Dakota State Hospital in Jamestown from where he can
continue to fight his extradition back to Washington if he so choses.

Leonard Conradson, M.D.
Psychiatrist

dh

"THIS REPORT IS CONFIDENTIAL. It is not to be copied or made available to any person
or agency without the written consent of the client or the client's parent or guardian."

# EXHIBIT J

ALLEN, GREGORY LEE

**REPORT OF EXAMINATION**

SFN 17244 (1-90) [F-2]

STATE OF NORTH DAKOTA

County of

DOB: ▮ 1967

SEX: M

Pearl MRN#:    1A-090394

Civil Case Number

## IN THE INTEREST OF

Name of respondent  Gregory Allen ▮ 67

## REPORT OF EXAMINATION

Name of expert examiner  LEONARD    CONRADSON

Address  Badlands Human Service Center    City  Dickinson    State  ND    Zip  58601

Expert examiner is a licensed    ☐ physician    ☒ psychiatrist    ☐ clinical psychologist    ☐ addiction counselor

Date responent appeared in your office for examination  9.24.98

As an expert examiner licensed in the State of North Dakota as listed above, I state that I have examined this respondent on the date listed above and submit the following report:

1. Evaluation of physical and mental condition of respondent:

Pt. is 31 yr old single male who has made a suicide attempt in jail and now states he wishes he had been successful in killing himself. He vows he will kill himself before returning to WA. He has a history of depression c̄ 2 hospital admissions in WA. He lost his father Sept. 14 and blames the courts for having him in jail and not allowing him to care for father (who was elderly and had cancer). He is depressed and shows poor judgment.

2. It is concluded that the respondent (Check all that apply):

☒ is an individual with an organic, mental, or emotional disorder which substantially impairs the capacity to use self-control, judgment, and discretion in the conduct of personal affairs and social relations, and is a mentally ill person,

☐ is an individual with an illness or disorder characterized by a maladaptive pattern of usage of alcohol or drugs, or combination thereof, resulting in social, occupational, psychological or physical problems and is a chemically dependent person.

☐ may be mentally ill or chemically dependent but no conclusion is drawn by this examiner whether the foregoing statutory criteria are met.

☐ does not meet the foregoing statutory criteria for mental illness or chemical dependency and does not require involuntary commitment.

NDCC 25-03 1-11

SFN 17244 (1-90) IF-21. Page 2

3.  It is further concluded that as a result of the illness or dependency identified in item #2, there exists a serious risk of harm to the respondent, others, or property and a substantial likelihood of (check all that apply):

☒ suicide as manifested by suicidal threats, attempts, or significant depression relevant to suicidal potential.

☐ killing or inflicting serious bodily harm on another person, inflicting significant property damage, as manifested by acts or threats;

☐ substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing for one's shelter, nutrition, or personal care.

☐ substantial deterioration in mental health which would predictably result in dangerousness to that person, others, or property based upon acts, threats, or patterns in the person's treatment history, current condition, and other relevant factors.

4.  The above conclusions are based upon the following tests, facts, circumstances, and observations:

Pt. threaten to kill himself before returing to WA to face charges there.

5.  List the form of care and treatment that may serve as alternatives to involuntary hospitalization:

ALLEN, GREGORY LEE
DOB: ▮▮▮ 1967
SEX: M
Pearl MRN#:    1A-090394          Pr1Nn2

6.  Alternative treatment    ☐ is ☒ is not  in the best interests of the respondent or others and the respondent
☒ is ☐ is not  in need of hospitalization for the following reasons:

Pt. is fighting the system and is putting his life on the line.

7.  The following mental health professional    ☐ was consulted:    ☐ participated in the examination:

Name of mental health professional

| Address | City | State | Zip |
|---|---|---|---|
|  |  |  |  |

Findings/conclusions of consulted mental health professional

Date    9.24.98

Signature of examiner preparing report
X _Edmund Chinook_

# EXHIBIT K



Hang this from the rearview mirror.
Remove it before you drive.

| JAN | **EXPIRES** | JUL |
| FEB | State of Washington | AUG |
| MAR | Department of Licensing | SEP |
| APR | Individual with Disabilities | OCT |
| [ ] | Parking Placard | NOV |
| JUN | | DEC |

## Y481835

| 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |

NGTON
...sing
...Parking Privilege

NT
ORY L
967

678529



STATE OF WASHINGTON
Department of Licensing
Individual With Disabilities Parking Privilege

## PERMANENT
## ALLEN, GREGORY L

Date of Birth: ████████/1967
Privilege Exp.: 05/2030
Placard #1: Y481835
Placard #2: Y481836
Plate #:
ID #: /* DPID0678529

# EXHIBIT L

OFFENDER I.D. DATA: ALLEN, GREGORY
(Name, DOC#, DOB)   806649   09/01/1967


Department of
**Corrections**
WASHINGTON STATE

# HEALTH STATUS REPORT

| FACILITY | LIVING UNIT | DATE |
|---|---|---|
| WSr | | 12/18/2012 |

## 1. PURPOSE (Check one box for A and one box for B)

A. ☐ Initial Evaluation  ☒ Change in Status  ☐ Work/School/Assignment  ☐ Transfer/Transport  ☐ Other

B. ☒ Medical  ☐ Dental  ☐ Mental Health  ☐ Food Service  ☐ DNR  ☐ Camp  ☐ Work Release
☐ Other (specify):

## 2. RESTRICTIONS/LIMITATIONS (Check as applicable – Use Comments section for additional clarification)

**A. Housing Restrictions/Limitations**
☐ Single Cell
☐ No Upper Bunk
☐ Lower Tier
☐ Limited Stairs – Specify in Comments (3) if needed
☐ No Stairs, may do limited steps
☐ No Steps

**B. Assignment/Work/School Recommendations**
☐ No Lifting more than _____ pounds
☐ No Vigorous Activity
☐ No Standing more than _____ minutes
☐ No Sitting more than _____ minutes
☐ No Machine Operation
☐ No Work on Scaffolding/Ladders
☐ No Uneven Ground or Steep Hills
☐ No DNR (Dept. of Natural Resources)
☐ No Food Service
☐ Work-hour Adjustment – Specify in Comments (3)

**C. Daily Routine**
☐ Bed rest
☐ Meals In
☐ Restricted to Living Area/Unit

**D. Dietary**
☐ Clear Liquid
☐ Full Liquid
☐ Puree
☐ Mechanical Soft
☐ Gluten Free
☐ Mainline Alternative
☐ Food Allergy – Specify in Comments (3)
☐ Snack  ☐Green ☐Yellow ☐Blue
 – Specify time and quantity in Comments (3)

**E. Durable Medical Equipment**
☐ Crutches #: _____
☒ Cane #: **1**
☐ Walker #: _____
☐ Wheel Chair #: _____   ☐ Pusher required
☒ Extra Pillow(s) x **2**
☐ Glucometer/Sharps Container/Lancets/Test Strips

**F. Transport**
☐ No Restrictions/Limitations/Holds
☐ Restrictions/Special Requirements – Specify in Comments (3)

**G. Other**
☐ Metal Implant(s) – Specify in Comments (3)
☐ See Comments (3)

## 3. COMMENTS (e.g., restrictions not listed above, equipment issue date if different than date of HSR, multiple expirations)

RESCIND HSR'S FOR CANE AND EXTRA PILLOWS

## 4. EXPIRATION DATE: 12/18/2013

List multiple expirations above

Unless otherwise indicated, HSRs expire one (1) year from the date written. It is the offender's responsibility to request renewal of an HSR at least 30 days before expiration.

| MEDICAL CARE PROVIDER (Stamp/Print and Initial) | DATE | DENTAL CARE PROVIDER (Stamp/Print and Initial) | DATE |
|---|---|---|---|
| Lopin | 12/18/12 | | |
| MENTAL HEALTH CARE PROVIDER (Stamp/Print and Initial) | DATE | HEALTH CARE MGR/AUTHORITY/DESIGNEE (Stamp/Print and Initial)   DATE | |

**DISTRIBUTION:** ☒ Health Record (Original)  ☒ Offender  ☐ Shift Sergeant  ☐ Laundry/Clothing  ☐ Supply Tech
☐ Central File  ☐ Recreation  ☐ Unit Sergeant  ☐ Dietary  ☐ Other:
☐ Counselor/CUS  ☐ Control  ☐ Education  ☐ Correctional Industries  ☐ Other:

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.