1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

GREGORY ALLEN,

                         Plaintiff,

            v.

WASHINGTON STATE
DEPARTMENT OF CORRECTIONS;
and SGT. Jason Kaehler; and DOES 1-
10,

                         Defendant.

CASE NO. 23-CV-5746 BHS

ORDER

THIS MATTER is before the Court on defendant Washington State Department of

Corrections' (DOC) motion for summary judgment, Dkt. 45.

Plaintiff Gregory Allen was incarcerated in DOC facilities from 2000 to 2023.

Dkt. 47 at 2. He claims that he was raped in prison in 2009, and that he suffers from post-

traumatic stress disorder as a result. *Id.* He claims the Americans with Disabilities Act

(ADA) requires DOC to provide him a single cell as an accommodation for this

disability. Dkt. 21 at 3. Allen also claims DOC violated the ADA by denying him access

to a wheelchair. *Id.* at 3, 6–7. Allen asserts a separate 42 U.S.C. § 1983 claim based on

1    his allegation that former DOC Sergeant Jason Kaehler violated the Eighth Amendment

2    when he acted with deliberate indifference to Allen's serious medical needs, by

3    "depriv[ing] him of medical equipment for a protracted period of time." *Id.* at 5–6.

4         DOC seeks summary judgment on all three claims, asserting that Allen's ADA

5    claims fail because he did not identify a service, program, or activity from which he was

6    excluded based on his disability, and that he has no evidence that DOC intentionally

7    discriminated against him. Dkt. 45 at 2. It also contends that Allen's § 1983 claim fails

8    because Allen has no evidence that Kaehler acted with deliberate indifference when

9    removing his wheelchair pursuant to Allen's Health Status Report (HSR). It further

10   contends that, even if Kaehler had acted with such indifference, Kaehler is entitled to

11   qualified immunity because Allen has identified no authority clearly establishing that

12   Kaehler's conduct was unconstitutional. *Id.*

13                           **I.    BACKGROUND**

14        The following facts are taken from Allen's complaint, the parties' briefs,

15   deposition transcripts, and a report summarizing Allen's DOC records created by the

16   State's expert, Dr. Mario Paparozzi.[1]

17        Allen has been in and out of prison for at least 25 years. Dkt. 47 at 2. After he filed

18   this case, he has been released. *Id*. Allen alleges that when he returned to prison in

19

20        [1] Allen's declaration challenges DOC's version of the facts "paragraph by paragraph,"
     Dkt. 49 at 2, including its references to facts cited in Paparozzi's report. Allen asserts this report
21   is "factually inaccurate, conclusory, contain errors, and hearsay representations of disputed fact."
     *Id*. However, Allen submits no evidence supporting his version of the facts, and with few
     exceptions, Allen does not challenge the underlying facts but rather the conclusions drawn from
22   them.

1   August 2009, his cellmate sexually assaulted him.[2] *Id.* at 2. As a result of this alleged

2   incident, Allen's mental health provider declared that Allen experienced symptoms of

3   post-traumatic stress disorder.[3] Waggoner Deposition, Dkt. 48, Ex. A at 10–11. In May

4   2010, Allen requested single-cell housing in the general population, but DOC denied his

5   request. Dkt. 45 at 5; Allen Decl., Dkt. 49 at 3. He subsequently refused placement in a

6   shared-housing unit and, as a result, he received three disciplinary infractions and was

7   placed in solitary confinement. Allen Decl., Dkt. 49 at 3; Paparozzi Report, Dkt. 46, Ex.

8   A at 37.

9          Allen continued to request single-cell accommodations throughout his

10  incarceration. Although he acknowledges that he was briefly placed in a single cell in

11  2019, Dkt. 49 at 5, DOC staff, administrators, and multiple committees repeatedly denied

12  his requests for reasons documented in Paparozzi's report:

13    - Mental health and medical staff determined "that there is no basis for a
         single cell housing assignment." Dkt. 46, Ex. A at 33.
14    - ADA compliance manager informed Allen "that there is no
         documentation to support the ADA accommodation as requested." *Id.* at
15        39.
      - An ADA facility coordinator stated "that [Allen] does not qualify for the
16        accommodation requested." *Id.*
      - An ADA headquarters classification officer reminded Allen that "these
17        same issues" have been addressed five times in the past six months. *Id.*
          at 41.
18

19        [2] Allen submits no evidence that the State knew about the alleged assault before he
      requested a single cell in 2010. Rather, the State's expert report shows that Allen did not report
20    the incident until his April 2011 classification appointment. Paparozzi Report, Dkt. 46, Ex. A at
      33. Even then, Allen did not provide specific details about the assault and there is no
21    documentation in Allen's files corroborating his claim. *Id.* at 38–39.

          [3] Allen submits no evidence that Waggoner was his treating provider near or at the time
22    of the incident, nor does he indicate when Waggoner first evaluated and treated his symptoms.

- A DOC deputy director reported that Allen had received mental health appraisals on three different dates, and "none of these assessments indicated the need for ADA accommodations." *Id.* at 43.
- A DOC facility superintendent informed Allen that his accommodation requests were reviewed, and it was decided that he "did not need ADA accommodations." *Id.* at 44.
- "Allen does not meet the criteria for single cell placement." *Id.* at 46.

DOC also continued to assign Allen to shared-cell housing, which he either refused or was unable to make work. Paparozzi Report, Dkt. 46 at 37-50; Allen Decl., Dkt. 49 at 4 ("It is inaccurate to say that I was not in good faith trying to find a way to make DOC's refusal to accommodate my disabilities with single cell housing work. I did make effort several times."). For reasons disputed by the parties, DOC punished Allen with disciplinary infractions and placed him in administrative segregation or the Intensive Management Unit (IMU), where he had a single-person cell, but was on 23-hour per day lockdown.[4] Dkt. 45 at 5; *Contrast* Dkt. 47 at 5 (Allen was "punished for *asserting his rights*.") (emphasis added) *with* Dkt. 45 at 5 (Allen was "repeatedly infracted for *refusing housing assignments*.") (emphasis added).

In August 2020, a committee composed of Allen's mental health, custody, and medical providers reversed their earlier position, and jointly recommended that he be assigned to a single cell. Throgmorton Decl., Dkt. 46 at 2; *id.*, Ex. C at 69. However,

---

[4] Between 2000-2023, Allen received 130 serious disciplinary infractions and was moved between prison facilities more than 500 times. Dkt. 46 at 35.

1    once again, the headquarters level, multidisciplinary panel reviewed and denied his

2    request. *Id.*, Ex. C at 71.

3        That same month, one of Allen's medical providers, Jennifer Meyers, PA, issued a

4    HSR approving Allen for access to compression stockings, the unrestricted use of a

5    wheelchair, and limiting his standing time to ten minutes. Allen Decl., Dkt. 49, Ex. A at

6    12. The HSR was set to expire one year later. *Id.* In October 2020, a DOC ADA

7    coordinator approved an assistant to push Allen in his wheelchair for long distances. *Id.*,

8    Ex. B at 14.

9        The incident at the center of this case occurred on December 30, 2020, when Allen

10   was housed in the IMU, also referred to as "solitary." Dkt. 49 at 6; Ex. D at 18. Allen's

11   account of the events has evolved over time. Allen's complaint alleges that Sgt. Kaehler

12   observed Allen walking in his cell and then "ran to" PA Meyers and "directed" her to

13   change his equipment needs." Dkt. 21 at 4. Allen claims that in response to Kaehler's

14   request, Meyers amended Allen's HSR—without conducting a physical exam—to limit

15   his wheelchair accommodation for only "long distances," denying Allen access to a

16   wheelchair for short distances and within his cell. *Id.*, Ex. C at 16, 18. Allen alleges that

17   only minutes later, Kaehler returned to his cell with the modified HSR and "laugh[ed]"

18   while "he exited" the cell with his leg brace and wheelchair. *Id.* Neither Kaehler nor

19   Meyers recall the circumstances surrounding the change in Allen's HSR. Kaehler

20   Deposition, Dkt. 48, Ex. D at 65–66, 73–74; Meyers Deposition, Dkt. 48, Ex. E at 130.

21       Allen's account changed in his declaration and response to the summary judgment

22   motion. He now claims that before Kaehler requested the HSR change from Meyers,

1    Kaehler denied him access to his wheelchair for a classification appointment. Dkt. 49 at

2    6. According to Allen, using the wheelchair required DOC to either remove his handcuffs

3    or have someone push him, which he did not qualify for. *Id.* at 6. Allen asserts he

4    complained, and Kaehler asked why he needed a wheelchair. *Id.* Allen refused to answer,

5    and Kaehler sought to have his accommodation changed. *Id.* Allen provides no evidence

6    that Kaehler failed to follow the original HSR or that he had the authority to change it.

7        In June 2021, Allen and his advanced care practitioner asked DOC's facility

8    medical director, Dr. MaryAnn Curl to help resolve a disagreement about Allen's care.

9    Curl Deposition, Dkt. 48, Ex. B at 34. Dr. Curl met with Allen to discuss his concerns. *Id.*

10    at 35. Following the meeting, Dr. Curl issued Allen a new HSR, approving

11    accommodations for housing—no stairs and no top bunk; work—lifting and standing

12    restrictions; and medical equipment—compression stockings, crutches, leg brace, shower

13    chair, and unlimited use of a wheelchair. Allen Decl., Dkt. 49, Ex. E at 20. The HSR also

14    expressly permitted Allen to use his shower chair and wheelchair in his cell while housed

15    in IMU. *Id.*

16        Allen claims DOC violated the ADA by failing to reasonably accommodate his

17    physical and mental disabilities, specifically by repeatedly denying him a single-cell, and

18    by depriving him of the use of a wheelchair for short distances and in his cell. Dkt. 21.

19    Allen's § 1983 claim asserts that Kaehler violated the Eighth Amendment when he was

20

21

22

1    deliberately indifferent to Allen's serious medical needs, by using his position to deprive

2    Allen of access to his wheelchair.[5] *Id.* at 5–6.

3        DOC argues Allen has provided no evidence to establish the essential elements of

4    any of his three claims. Dkt. 45.[6]

5                              **II.    DISCUSSION**

6    **A.    Summary Judgment Standard**

7        Summary judgment is proper if the pleadings, the discovery and disclosure

8    materials on file, and any affidavits show that "there is no genuine dispute as to any

9    material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

10   56(a). In determining whether an issue of fact exists, the Court must view all evidence in

11   the light most favorable to the nonmoving party and draw all reasonable inferences in that

12   party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A genuine

13   issue of material fact exists where there is sufficient evidence for a reasonable factfinder

14   to find for the nonmoving party. *Id.* at 248.

15       The moving party bears the initial burden of showing that there is no evidence that

16   supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477

17

18       [5] The Court previously dismissed Allen's state law claims for false imprisonment,
19   negligent infliction of emotional distress, intentional infliction of emotional distress, and
     negligence. Dkt. 40. Allen denies that he seeks a claim for injunctive relief. Dkt. 45.

20       [6] DOC moves to strike Allen's declaration and portions of his counsel's declaration that
     challenge Paparozzi's report or refer to records not before the Court. Dkt. 50 at 7. This motion is
21   DENIED. The Court notes that a "bald assertion" of fact is insufficient to defeat a motion for
     summary judgment. *See Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989). DOC also
     asserts that Allen's release from custody renders any claim for injunctive relief moot. Dkt. 45 at
22   2. Allen denies he seeks injunctive relief. Dkt. 47 at 6

1    U.S. 317, 322 (1986). A defendant may meet this burden by pointing out that there is an

2    absence of evidence necessary to support such claim. *Id.* at 325; *Nissan Fire & Marine*

3    *Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the movant has met this

4    burden, the "nonmoving party must produce evidence to support its claim or defense."

5    *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1188 (9th Cir. 2016) (internal

6    citations omitted).

7         To avoid summary judgment, the nonmoving party must do more than simply

8    show that there is some metaphysical doubt as to the material facts. See *Matsushita Elec.*

9    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56(e) requires that the

10   nonmoving party identify, with reasonable particularity, the specific facts showing that

11   there is a genuine issue for trial. *Anderson, 477 U.S. at 256*; *see also Galen v. Cty. of Los*

12   *Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) ("Bald assertions that genuine issues of

13   material fact exist are insufficient."). It is not the task of the Court to scour the record in

14   search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.

15   1996).

16        Allen argues that DOC failed to meet its "initial burden" of showing that there are

17   no disputes of material fact, primarily contending that the defendant's expert report is

18   inaccurate. Dkt. 47 at 11. However, Allen misconstrues the summary judgment standard.

19   DOC need only "point out" that there is an *absence* of evidence to support Allen's

20   claims. *See Celotex,* 477 U.S. at 325.  It need not introduce evidence that affirmatively

21   negates a defendant's claim. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

22   DOC is entitled to judgment as a matter of law if Allen fails to make a sufficient showing

1    on an essential element of his claim, upon which he bears the burden of proof. *See*

2    *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

3    **B.    ADA Claims against DOC**

4           The ADA prohibits discrimination on the basis of disability. *Lovell v. Chandler*,

5    303 F.3d 1039, 1052 (9th Cir. 2002); *see* 42 U.S.C. § 12132. To prevail on his claim

6    under Title II of the ADA, Allen must prove: (1) he is an individual with a disability; (2)

7    he is otherwise qualified to participate in or receive the benefit of DOC's services,

8    programs, or activities; (3) he is either excluded from or denied these benefits or was

9    otherwise discriminated against by DOC; and (4) such exclusion, denial of benefits, or

10   discrimination was by reason of his disability. *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d

11   1011, 1022 (9th Cir. 2010) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1265

12   (9th Cir. 2004)). To recover damages, as opposed to injunctive relief, Allen must further

13   demonstrate that DOC acted with deliberate indifference to his need for accommodation.

14   *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference,

15   in this context, requires that the defendant "knew that harm to a federally protected right

16   was substantially likely and failed to act upon that likelihood." *Id.* at 1139. A failure to

17   act "must be a result of conduct that is more than negligent, and involves an element of

18   deliberateness." *Id.*

19          Allen argues that DOC violated the ADA by refusing to assign him to a single-

20   person cell and by denying him access to a wheelchair. Dkt. 47 at 2. Specifically, he

21   contends that DOC's denial of his wheelchair caused him to miss a "call-out for

22   classification," an appointment where inmates and DOC staff review the inmate's

behavior and determine if a change in classification—including accommodations—is necessary. *Id.* at 9. Assuming without deciding that Allen is a qualified individual with a disability for purposes of the ADA, the primary issues in dispute are (1) whether the ADA required DOC to provide Allen with single-cell accommodation, and (2) whether the ADA required DOC to provide Allen with unrestricted access to his wheelchair.

**1. Allen has not established that DOC's refusal to house him in a single cell violated the ADA.**

As an initial matter, DOC argues that single-cell accommodations do not qualify as services, programs, or activities under the ADA. *See* 42 U.S.C. § 12132. The Court disagrees. The statutory phrase "services, programs, or activities" is to be construed broadly. *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002). The Ninth Circuit has cautioned district courts against "hair-splitting arguments" in deciding whether discrete functions of government entities come within the scope of ADA liability, and instead focus on whether it is a "'normal function of a governmental entity.'" *Id.* at 1076 (quoting *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999)).

DOC offers a limited number of single-cell housing accommodations. Curl Deposition, Dkt. 46, Ex. B at 63–64. Single-cell requests are evaluated by a DOC committee based on multiple objective factors, including "severe medical disability; serious mental illness; sexual predator; likely to be exploited or victimized by others; other special needs; and/or maximum custody." Paparozzi Report, Dkt. 46 at 42 (citing DOC Policy 400.020); Curl Deposition, Dkt. 46, Ex. B at 63–64 (explaining that the

1    single cell committee considers an inmate's "potential for violence," "medical issues,"

2    and inmates who have "an absolute inability to house with someone else," such as those

3    with autism spectrum disorder). Although these assignments are often used to

4    accommodate inmates with qualifying disabilities, DOC could, in theory, violate the

5    ADA by excluding an inmate from single-cell housing solely because of that inmate's

6    disability. The Court therefore finds that assigning single-cell accommodations is a

7    normal function of DOC that clearly falls within the scope of the ADA.

8        However, Allen has no evidence that DOC violated the ADA by denying him

9    access to a single cell. DOC's records indicate that Allen's requests for single-cell

10   accommodations were consistently, appropriately reviewed by staff and administrators.

11   The decisions to deny Allen's requests were not made by a single staff member, but by

12   multiple committees, administrators, and medical personnel over a period of more than

13   ten years. *See* Paparozzi Report, Dkt. 46, Ex. A at 37-50. Allen has provided no evidence

14   suggesting that DOC procedures were improper in any way; rather, he merely disputes

15   the outcome of those determinations as discriminatory.

16       In addition, Allen provides no evidence that he was precluded from single-cell

17   assignment on the basis of his disability. Allen only asserts that his mental disabilities

18   "qualified" him for a single-cell. Dkt. 47 at 10. This is not enough. *See Arpin v. Santa*

19   *Clara Valley Transportation Agency*, 261 F.3d 912, 922 (9th Cir.2001) (Conclusory

20   statements unsupported by the record are insufficient to defeat a motion for summary

21   judgment). A prison does not violate the ADA by "simply failing to attend to the medical

22   needs of disabled prisoners." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Allen

1  must identify sufficient facts that show he was denied single-cell accommodations

2  because of his disability. He fails to make that connection here.

3       Even viewed in the light most favorable to him, the evidence does not support

4  Allen's claim that DOC's denial of a single-cell accommodation violated the ADA.

5  DOC's motion for summary judgment on Allen's single-cell ADA claim is **GRANTED**,

6  and this claim **DISMISSED** with prejudice.

7       **2.  Allen has not provided sufficient evidence to show that DOC violated the
         ADA by modifying his HSR to approve a wheelchair accommodation for long

8        distances only.**

9       Allen claims that DOC violated the ADA by modifying his HSR to deny him

10 access to medically necessary items, including unlimited access to a wheelchair and a leg

11 brace, for a period of approximately six months. Dkt. 21 at 4. For support, Allen relies on

12 the circumstances and timing of PA Meyers's decision to modify his HSR, noting that the

13 restriction on his wheelchair was made without a physical exam and occurred only after

14 the custody officer, Kaehler, noticed him walking in his cell. Dkt. 47 at 9 ("[I]n this

15 situation, the qualified medical provider based her revocation upon hearsay statements

16 rather than direct examination."). He contends that his HSRs issued before and after the

17 change demonstrate that he needed these medical accommodations the entire time. *Id.* at

18 9–10. Allen emphasizes that DOC's medical director, Dr. Curl, "confirmed Allen's

19 conditions and ultimately restored accommodations." Dkt. 47 at 5; *see* Allen Decl., Dkt.

20 49, Ex. E at 19.

21      However, Allen submits no evidence that DOC's decision to limit his wheelchair

22 access, while housed in the IMU, was an unreasonable accommodation under the ADA.

1    Allen relies solely on his other HSRs that granted an unlimited wheelchair

2    accommodation. Dkt. 47 at 3. But Allen acknowledges that HSRs are not binding medical

3    determinations but are temporary, and subject to change by a qualified medical provider.

4    Dkt. 47 at 9. A decision to modify a HSR may be based on observations—including those

5    made by custody officers—and supporting evidence, with the final decision made by

6    healthcare practitioners. Meyers Decl., Dkt. 46, Ex. D at 78, 81.

7         Allen asserts that Kaehler observed him walking in his cell; that a qualified

8    medical provider, Meyers, modified his HSR; and that Kaehler removed the wheelchair

9    in accordance with it. This is not sufficient to show an ADA violation. Allen's

10   speculation as to why Meyers made the change is not evidence of what Meyers and

11   Kaehler discussed or why. Moreover, even if Meyers changed Allen's HSR based only

12   on Kaehler's observations, inadequate medical care, by itself, does not constitute

13   actionable disability discrimination under the ADA. *Simmons*, 609 F.3d at 1022 ("The

14   ADA prohibits discrimination because of disability, not inadequate treatment for

15   disability."); *see Bryant*, 84 F.3d at 249 ("[T]he Act would not be violated by a prison's

16   simply failing to attend to the medical needs of its disabled prisoners.).

17        In addition, the HSR issued in June 2021—which approved his full request for

18   accommodations—was not written by his "treating health provider," but rather the DOC

19   medical director, Dr. Curl. *See* Curl Deposition, Dkt. 48, Ex. B 46 ("I was not his treating

20   physician. . . . I was not evaluating him as a psychiatrist, and I was not labeling anything

21   as permanent or temporary."). Dr. Curl declared that she "intervene[d]" in Allen's request

22   for accommodations after she was asked by both Allen *and his advanced care*

1  *practitioner* to resolve whether Allen should receive "an exception" to IMU's "very

2  restrictive" policy of not allowing medical equipment inside his cell. *Id.* at 38. Dr. Curl

3  explained that she met with Allen "to help him feel less distressed and . . . come to

4  reasonable kind of resolution to his distress." *Id.* at 46. Dr. Curl never declared that the

5  advanced care practitioner provided Allen with unreasonable or medically inappropriate

6  care nor that this was anything more than a disagreement over accommodations. *Id.*

7  Furthermore, Allen fails to identify facts that show DOC acted with deliberate

8  indifference when modifying his HSR, as required to recover damages under the ADA.

9  Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060

10  (9th Cir. 2004). A prison official acts with "'deliberate indifference . . . only if the [prison

11  official] knows of and disregards an excessive risk to inmate health and safety.'" *Id.*

12  (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1187 (9th Cir. 2002)). A

13  showing of medical malpractice or negligence is insufficient to establish deliberate

14  indifference. *Id*. Likewise, a mere difference of opinion between an inmate and medical

15  providers regarding the appropriate course of treatment does not meet this standard. *See*

16  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

17  Allen asserts that the Kaehler acted with deliberate indifference when he returned

18  to Allen's cell with the modified HSR and removed his wheelchair with a "triumphant

19  look and "swagger." Dkt. 47 at 10. He contends that Kaehler deprived him of the "right

20  to use his wheelchair before getting a medical opinion." *Id.*

21  However, Kaehler did not modify his HSR; Meyers did. Even viewed in the light

22  most favorable to Allen, the evidence demonstrates only that Kaehler removed the

ORDER - 14

1  wheelchair in compliance with the HSR. Moreover, even if were true that Meyers

2  changed Allen's HSR solely based on Kaehler's observations, this is not enough to prove

3  an ADA violation. *See Toguchi*, 391 F.3d at 1060. Notably, there is no evidence or even

4  argument that Kaehler removed Allen's wheelchair to retaliate against him, to

5  purposefully inflict harm, or to discriminate against him for his disabilities.

6        In response to DOC's summary judgment motion, Allen alleges, for the first time,

7  that DOC also violated the ADA when it denied him wheelchair access to attend a

8  classification appointment. Dkt. 47 at 1, 9. Specifically, he asserts that while housed in

9  IMU, DOC refused to let him remain unrestrained during transport to his appointment

10  and denied him a wheelchair assistant. *Id.* at 9. He contends that these decisions

11  effectively denied him the use of his wheelchair and resulted him missing the

12  appointment. *Id.*

13        A party cannot assert unpled theories and claims for the first time in response to a

14  motion for summary judgment. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-

15  69 (9th Cir. 2006). Federal Rule of Civil Procedure 8(a)(2) requires "that the allegations

16  in the complaint 'give the defendant fair notice of what the plaintiff's claim is and the

17  grounds upon which it rests.'" *Id.* at 968 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S.

18  506, 512 (2002)). A response to a summary judgment motion is not a second chance to

19  fix inadequate pleadings. *Cf. Wasco Prods., Inc. v. Southwall Techs.*, Inc., 435 F.3d 989,

20  992 (9th Cir. 2006).

21        Allen did not allege these facts or assert an ADA claim based on them in his

22  amended complaint.

1    Even if the Court considered it, Allen's new claim is insufficient as a matter of

2    law. Allen has not alleged or provided evidence that *DOC* denied him a wheelchair on

3    that day; he alleges that Sgt. Kaehler did, for reasons or personal animus. Allen concedes

4    that IMU procedures required him to be restrained while being transported. Medical

5    accommodations in the IMU are "very restrictive." Curl Deposition, Dkt. 48, Ex. B at 38.

6    Unlike his June 2021 HSR, which expressly allowed wheelchair access even while

7    housed in the IMU, his HSR at the time of the incident did not include that language.

8    Allen has cited no authority for the proposition that DOC violated the ADA by adhering

9    to the rules and procedures regarding the transport of IMU prisoners, instead of making

10   an exception for him. *See* Curl Deposition, Dkt. 48, Ex. B at 46. Nor does Allen provide

11   any evidence about the location, timing, or frequency of classification appointments. His

12   conclusory allegations that his rights were denied are not sufficient. Allen must identify

13   specific facts showing that there is a genuine issue for trial. *Anderson, 477 U.S. at 256*;

14   *see* Fed. R. Civ. P. 56(c) (The opposing party must set out specific facts showing a

15   genuine issue for trial and cannot rely merely on allegations or denials contained in the

16   pleadings).

17    Even viewed in the light most favorable to Allen, the evidence does not support

18   his claim that DOC violated the ADA by limiting Allen's wheelchair accommodation to

19   only long distances. DOC's motion for summary judgment on Allen's ADA wheelchair

20   claim is **GRANTED**, and Allen's claim is **DISMISSED** with prejudice.

21

22

1
**C.     Allen's § 1983 Eighth Amendment claim against Kaehler**

2          To prevail on a § 1983 claim, a plaintiff must prove that they suffered: (1) a

3   violation of rights protected by the Constitution or created by federal statute, (2) that was

4   proximately caused (3) by conduct of a person (4) acting under color of state law.

5   *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Allen asserts that Kaehler

6   violated the Eighth Amendment when he deprived him of his wheelchair. Dkt. 47.

7          To succeed on an Eighth Amendment claim based on prison medical treatment,

8   "an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*,

9   439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104

10  (1976)). This requires the plaintiff to first show "a serious medical need" and second, that

11  "the defendant's response to the need was deliberately indifferent." *Id*. (internal quotation

12  marks omitted) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). If

13  a defendant has not violated a plaintiff's constitutional rights, no claim exists under §

14  1983.

15         The first flaw in Allen's § 1983 claim against Kaehler is that Kaeler was not

16  Allen's prison medical provider. There is no evidence and no claim that Kaehler had

17  authority to alter Allen's HSR. Even if he was, Allen has provided no evidence that

18  Kaehler acted with the deliberate indifference required to violate the Eighth Amendment.

19  The facts of this case are similar to those in *Hunt v. Pierson*, 730 Fed. Appx. 210 (5th

20  Cir. 2018).

21         In *Hunt*, an inmate sued a medical service provider under § 1983, arguing that she

22  violated his Eighth Amendment rights by ordering the removal of his cane after

1   "observing him for mere seconds while he draped his cane on his wrist." *Id.* at 213. The

2   inmate contended that provider's decision to remove his cane "without assessing his

3   physical condition or reviewing his medical records" constituted deliberate indifference.

4   *Id*. The Fifth Circuit affirmed the district court's dismissal on summary judgment,

5   holding that Hunt's "disagreement over the type of medical care he received" is not

6   sufficient to prove a § 1983 claim. *Id.* at 214. The court reasoned that although the

7   provider's acts could be considered "medical malpractice or negligence," such an act "did

8   not constitute deliberate indifference." *Id.*

9       Like in *Hunt*, Allen claims that Kaehler acted with deliberate indifference by

10  denying him his medical equipment based on only observations. However, Kaehler did

11  not make the ultimate decision to remove his equipment—Meyers did. Even if Kaehler

12  informed or even influenced Meyers's decision, he had no authority to remove the

13  wheelchair on his own, nor did he claim to do so. Allen does not show that Meyers

14  conduct was intentionally discriminatory or anything more than more than a

15  disagreement over medical care. *See Toguchi*, 391 F.3d at 1060 (Medical malpractice or

16  negligence is insufficient to establish deliberate indifference.). The circumstances

17  surrounding Kaehler's decision to follow the amended HSR and remove Allen's

18  wheelchair does not by itself, meet the "high legal standard" required to establish

19  deliberate indifference under the Eighth Amendment. *Id*. The Court concludes that Allen

20  has no evidence to state a claim under § 1983.

21      Furthermore, and in any event, even if Kaehler acted with deliberate indifference

22  to Allen's medical needs, he is entitled to qualified immunity. Under qualified immunity,

1    a public official is protected from suit when he or she "makes a decision that, even if

2    constitutionally deficient, reasonably misapprehends the law governing the

3    circumstances." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Supreme Court has

4    endorsed a two-part test to resolve claims of qualified immunity: a court must decide (1)

5    whether the facts that a plaintiff has alleged "make out a violation of a constitutional

6    right," and (2) whether the "right at issue was 'clearly established' at the time of

7    defendant's alleged misconduct." *Pearson v. Callahan*, 553 U.S. 223, 232 (2009).

8         To be clearly established, "a right must be sufficiently clear that every reasonable

9    official would have understood that what he is doing violates that right." *Taylor v.*

10   *Barkes*, 575 U.S. 822, 825 (2015) (per curiam). "[A] court must define the right at issue

11   with 'specificity' and 'not . . . at a high level of generality.'" *Gordon v. Cnty. of Orange*,

12   6 F.4th 961, 968 (9th Cir. 2021) (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42

13   (2019) (per curiam)). "A constitutional right is clearly established if every reasonable

14   official would have understood that what he is doing violates that right at the time of his

15   conduct." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018–19 (9th Cir. 2020)

16   (citation and internal quotation marks omitted).

17        Here, Allen has not met his burden to show that complying with an inmate's HSR,

18   as modified, violates a clearly established constitutional right. Because Allen cites no

19   supporting case law creating a clearly established right, Kaehler is entitled to qualified

20   immunity.

21        Even viewed in the light most favorable to Allen, the evidence does not support

22   Allen's § 1983 claim against Kaehler. Allen has not established that any violation was

clearly established. Kaehler's motion for summary judgment on Allen's § 1983 claim against him is **GRANTED** and that claim **DISMISSED** with prejudice.

The parties' pending motions, Dkts. 51 and 52, are **DENIED** as moot.

**IT IS SO ORDERED**.

Dated this 7th day of November, 2025.

BENJAMIN H. SETTLE
United States District Judge